PAUL J. ANDRE (State Bar No. 196585)
pandre@kramerlevin.com
LISA KOBIALKA (State Bar No. 191404)
lkobialka@kramerlevin.com
JAMES HANNAH (State Bar No. 237978)
jhannah@kramerlevin.com
AUSTIN MANES (State Bar No. 284065)
amanes@kramerlevin.com
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800

*Attorneys for Plaintiff*
FINJAN, INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FINJAN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>QUALYS INC.,<br><br>Defendant. | Case No.: 4:18-cv-07229-YGR<br><br>**PLAINTIFF FINJAN, INC.'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date:  May 1, 2020<br>Time:  10:00 AM<br>Place:  Courtroom 1, 4th Floor<br>Before:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................... 1

II.  STATEMENT OF FACTS ........................................................................................ 1

   A.   The '408 Patent ............................................................................................... 2

   B.   The '968 Patent ............................................................................................... 2

   C.   The '731 Patent ............................................................................................... 2

   D.   The '844 Patent ............................................................................................... 2

   E.   The '154 Patent ............................................................................................... 3

   F.   The '494 Patent ............................................................................................... 3

III. ARGUMENT ............................................................................................................ 3

   A.   Term in the '408 Patent .................................................................................. 3

        Term 1.   "instantiating, by the computer, a scanner for the specific
                  programming language" (Claim 1) ................................................... 3

   B.   Terms in the '968 Patent ................................................................................ 6

        Term 2.   "dynamically generating a policy index" (Claims 26, 32, and 33) ............... 6

        Term 3.   "known to be allowable relative to a given policy" / "allowable
                  relative to a given policy" (Claims 1, 12, 13, 23, 26, 32, and 33) ................ 7

        Term 4.   "memory storing a cache of digital content" (Claims 1, 13, 23, 26,
                  and 32) ............................................................................................ 8

   C.   Term in the '731 Patent .................................................................................. 9

        Term 5.   "incoming files from the internet" (Claim 1) ................................. 9

   D.   Term in the '844 Patent ................................................................................ 10

        Term 6.   "web client" (Claims 1, 15, 22, 23, 32, and 41-44) ..................... 10

   E.   Terms in the '154 Patent .............................................................................. 10

        Term 7.   "a content processor" (Claims 1 and 6) ....................................... 10

        Term 8.   "security computer" (Claims 1 and 6) .......................................... 13

   F.   Terms in the '494 Patent, '968 Patent, and '154 Patent .............................. 14

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Term 9.    "receiver" ('494 Patent, Claim 10; '968 Patent Claim 7; '154 Patent, Claims 1-2 and 6-7) .................................................................................... 14

    1.    Structure for "receiver" in the '494 Patent ...................................... 16

    2.    Structure for "receiver" in the '968 Patent ...................................... 16

    3.    Structure for "receiver" in the '154 Patent ...................................... 17

Term 10.    "transmitter" ('968 Patent Claim 6; '154 Patent, Claims 1-3 and 6-8)........ 17

    1.    Structure for "transmitter" in the '968 Patent .................................. 18

    2.    Structure for "transmitter" in the '154 Patent .................................. 18

IV.    CONCLUSION.................................................................................................... 19

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF              CASE NO.: 4:18-cv-07229-YGR

## __TABLE OF AUTHORITIES__

**Page(s)**

**Federal Cases**

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*,
 616 F.3d 1283 (Fed. Cir. 2010)..................................................................................6

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
 358 F.3d 1371 (Fed. Cir. 2004).............................................................................*passim*

*EnOcean GmbH v. Face Int'l Corp.*,
 742 F.3d 955 (Fed. Cir. 2014).......................................................................14, 15, 17

*Finjan, Inc. v. Bitdefender Inc.*,
 No. 17-cv-04790 HSG, 2019 WL 634985 (N.D. Cal. Feb. 14, 2019)...................11, 15, 18

*Finjan, Inc. v. Cisco Sys., Inc.*,
 No. 17-cv-00072-BLF, 2018 WL 3537142 (N.D. Cal. Jul. 23, 2018).........................15, 18

*Finjan, Inc. v. Eset, LLC*,
 No. 17-cv-0183-CAB-(BGS), 2017 WL 5501338 (S.D. Cal. Nov. 14, 2017) ..................18

*Finjan, Inc. v. Proofpoint, Inc.*,
 No. 3:13-cv-05808-HSG, 2015 WL 7770208 (N.D. Cal. Dec. 3, 2015) ...................*passim*

*Finjan, Inc. v. Rapid7, Inc.*,
 No. 18-1519 (MN), 2020 WL 565377 (D. Del. Feb. 5, 2020).................................5, 11, 12

*Finjan, Inc. v. Sonicwall, Inc.*,
 No. 17-cv-04467-BLF, 2019 WL 1369938 (N.D. Cal. Mar. 26, 2019).........................5, 18

*Finjan, Inc. v. Symantec Corp.*,
 No. 14-cv-02998-HSG, 2017 WL 550453 (N.D. Cal. Feb. 10, 2017).......................5, 6, 11

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
 755 F.3d 1367 (Fed. Cir. 2014).................................................................................14

*Markman v. Westview Instruments, Inc.*,
 517 U.S. 370 (1996).................................................................................................5

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*,
 403 F.3d 1364 (Fed. Cir. 2005).................................................................................11

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc).................................................................4, 7

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
 711 F.3d 1348 (Fed. Cir. 2013).................................................................................15

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F. 2d 1107 (Fed. Cir. 1985)..........................................................................................12

*Superguide Corp. v. DirecTV Enters., Inc.*,
   358 F.3d 870 (Fed. Cir. 2004)...............................................................................................7

*Thorner v. Sony Computer Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012).................................................................................4, 7, 13

*Visto Corp. v. Sproqit Techs., Inc.*,
   445 F. Supp. 2d 1104 (N.D. Cal. 2006) ................................................................................5

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015).................................................................................14, 15, 17

**Federal Statutes**

35 U.S.C. § 112(6) ......................................................................................................14, 15, 17

**Rules**

Patent Local Rule 4-3..............................................................................................................1

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

I.   **INTRODUCTION**

The Court should give each of the ten disputed terms a plain and ordinary meaning construction because they have a readily understood meaning to one of ordinary skill in the art at the time of the invention and the intrinsic record does not support a departure from that plain and ordinary meaning. For example, the jury does not need a construction of "incoming files from the Internet" or "transmitter," and there is not any intrinsic evidence to suggest a departure from their plain and ordinary meaning, which is used consistently throughout the intrinsic evidence.

Qualys Inc. ("Qualys") invites error in asking the Court to import unsupported limitations into each of these terms. Qualys fails to carry its burden to overcome the presumption that the plain and ordinary meaning controls for these terms, and there is no basis for the Court to find that the inventors acted as their own lexicographers or disavowed claim scope, limiting the scope of these terms. For this reason, multiple Courts have already rejected many of the arguments that Qualys advances, and there is no reason for the Court to take a different approach here. Thus, the Court should construe each of the terms as having its plain and ordinary meaning and reject Qualys' proposed constructions.

II.   **STATEMENT OF FACTS**

Finjan, Inc. ("Finjan")  asserts seven patents against Qualys: U.S. Patent Nos. 8,677,494 (Ex. 1, the "'494 Patent"); 6,154,844 (Ex. 2, the "'844 Patent"); 8,141,154 (Ex. 3, the "'154 Patent"); 6,965,968 (Ex. 4, the "'968 Patent"); 7,418,731 (Ex. 5, the "'731 Patent"); 7,975,305 (Ex. 6, the "'305 Patent"); and 8,225,408 (Ex. 7, the "'408 Patent").[1]  With the exception of the '305 Patent, each of these patents includes terms that are at issue for claim construction.

Pursuant to the Scheduling Order (Dkt. No. 39) and Patent Local Rule 4-3, the parties submitted a Joint Claim Construction and Pre-Hearing Statement (Dkt. No. 40) setting forth their nine agreed constructions, providing competing proposed constructions for ten disputed terms, and identifying supporting intrinsic and extrinsic evidence.  Finjan proposes that the Court adopt a plain and ordinary

---

[1] Unless otherwise noted, all exhibits cited are attached to the Declaration of Austin Manes in Support of Finjan's Opening Claim Construction Brief, filed herewith.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

meaning construction for all terms at issue, as there is no specialized meaning for these terms that require departing from the plain and ordinary meaning of these terms.

### A.    The '408 Patent

The '408 Patent provides a method and system for scanning content to produce an analysis of potential exploits (malicious portions of the code) within the content.  '408 Patent at 1:59–61.  The invention uses scanners that can be configured based on the programming language of the content, and that dynamically scan and diagnose the content.  *Id.* at 1:65–2:24.  The system generates a parse tree based on tokens and patterns of tokens it identifies in the programming language, then identifies exploits within the parse tree.  *See id.* at 2:25–57.

### B.    The '968 Patent

The '968 Patent is directed to managing content from the Internet, which can be cached so that the same web page does not have to be retrieved each time a user on the network requests the page.  The '968 Patent provides a system and method of managing cached content in relation to multiple security policies by, inter alia, providing a "policy-based index . . . indicating allowability of cached content relative to a plurality of policies."  *See* '968 Patent at 1:63–2:7.  A cache manager may then utilize the policy-based index to determine whether cached content is allowable for a different user than the original user who requested it and block cached content from being delivered to users for whom it is not allowed.  *Id.* at 2:7–11.

### C.    The '731 Patent

The '731 Patent describes systems and methods of operating computer and network gateways that protect computers.  The claimed inventions provide for caching of security information and policies at the gateway.  '731 Patent at Abstract.  This caching mitigates delays in the transmission of data over a network that are caused when the gateway processes downloadable information.  *Id.* at 1:65-67.

### D.    The '844 Patent

The '844 Patent claims systems and methods for inspecting Downloadables for suspicious code or behavior according to a set of rules, and generating a profile of the results from that inspection.  *See, e.g.*, '844 Patent at 1:62–3:7.  In some embodiments, a content inspection engine generates a security profile

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF        CASE NO.: 4:18-cv-07229-YGR

and links that profile to a Downloadable.  *Id.* at 2:3–11.  By providing verifiable profiles, the claimed systems and methods may efficiently protect computer systems from hostile Downloadables.  *Id.* at 2:61–3:7.

### E.   The '154 Patent

The '154 Patent provides protection by offloading the processing of security decisions to a security computer.  Specifically, the '154 Patent teaches that incoming software is analyzed and aspects of the software are checked against a security computer to determine whether the software is malicious or not.  If the software is not deemed malicious, it is allowed to execute.  *See* '154 Patent, Abstract.

### F.   The '494 Patent

The '494 Patent covers a system for receiving a Downloadable and creating a profile for the Downloadable to be stored in a database.  *See* '494 Patent.  The system derives a security profile that includes a list of suspicious operations that the Downloadable may attempt.  The database can also hold additional information about the Downloadable, such as the date and time the profile was derived and the URL from which the Downloadable originated.  *Id.*, at 21:26-28.

## III.   ARGUMENT

### A.   Term in the '408 Patent

### Term 1.   "instantiating, by the computer, a scanner for the specific programming language" (Claim 1)

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | substituting specific data, instructions, or both into a scanner to make it usable for scanning the specific programming language |

"Instantiating" does not require construction because it is easily understood by a person of ordinary skill in the art of computer security.  "Instantiating" is a computing term that means creating an instance of something.  *See, e.g.,* whatis.techtarget.com/definition/instantiation ("In computer science, instantiation is the realization of a predefined object… a class of object may be defined… An instance of that object may then be declared, giving it a unique, named identity so that it may be used in the program. This process is called 'instantiation.'").  The object at issue in the '408 Patent is a scanner, so

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

"instantiating" here means setting up an instance of a scanner process. Qualys seeks to inject a requirement that the substantiation process involves "substituting specific data, instructions or both." Two courts have already rejected Qualys' narrow and unsupported construction.

Because "instantiating" has a clear, plain and ordinary meaning, it needs no further construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). "Generally, claim terms should be given their ordinary and customary meaning–*i.e.*, the meaning that the terms would have to a person of ordinary skill in the art at the time of the invention." *Finjan, Inc. v. Proofpoint, Inc.*, No. 3:13-cv-05808-HSG, 2015 WL 7770208, at *1 (N.D. Cal. Dec. 3, 2015) (citing *Phillips*, 415 F.3d at 1312-13; *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("The words of a claim are generally given their ordinary and customary meaning"). The '408 Patent's claims use "instantiating" consistent with this plain and ordinary meaning, describing the act of creating an instance of a scanner to scan a file. *See* '408 Patent at Claims 1, 9, and 22 ("instantiating, by the computer, a scanner for the specific programming language, in response to said determining [the programming language]").

Qualys' proposed construction would improperly narrow the claim to require "substituting specific data, instructions, or both into a scanner to make it usable for scanning the specific programming language," but there is no basis in the intrinsic record to do so. Qualys is relying on citations to discussions in the specification of adapting the scanner to scan a specific type of content by using rules files for the particular language (serving as "adaptors"), but the '408 Patent does not disclose, let alone require substituting data or instructions into the scanner. *See, e.g.,* '408 Patent at 1:65-2:15. Indeed, the words "substitute" and "substituting" do not even appear in the '408 Patent.

Qualys also cites generally to the joint claim construction briefing in *Finjan, Inc. v. Rapid7, Inc.*, No. 18-cv-01519-MN (D. Del.) as support for its proposed construction. Dkt. No. 40, Ex. A at 24. However, the *Rapid7* case lends no support to Qualys. In fact, in that case Judge Noreika of the District of Delaware rejected the same construction that Qualys offers here (and gave the term its plain and ordinary meaning, as Finjan proposes), finding the construction "substituting specific data, instructions, or both" unsupported by and inconsistent with the intrinsic record:

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

> ***The word "substituting," which Defendants propose, is not in the '408 Patent.*** Defendants took that word from the PTAB. But the PTAB used a different standard and its statements are not binding on this Court . . . Additionally, I find that ***the concept of requiring substitution appears to be inconsistent*** with the description of a scanner repository as referenced in the '408 Patent.

*Finjan, Inc. v. Rapid7, Inc.*, No. 18-1519 (MN), 2020 WL 565377, at *13 (D. Del. Feb. 5, 2020) (emphasis added).  The Supreme Court has stressed the importance of uniformity in claim construction, and as a result "district courts have granted 'reasoned deference' to claim construction orders outside their jurisdiction that address the same term in the same patent."  *Finjan, Inc. v. Symantec Corp.*, No. 14-cv-02998-HSG, 2017 WL 550453, at *3 (N.D. Cal. Feb. 10, 2017) (citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390–91 (1996)).

Similarly, Qualys cited to the March 26, 2019 claim construction decision in *Finjan, Inc. v. SonicWall, Inc.* as evidence supporting its proposed construction.  Dkt. No. 40, Ex. A at 24.  Judge Freeman rejected the same construction in the *SonicWall* case that Qualys proposes here, finding that the patentees used "instantiating" to describe "a procedure of ***customizing or setting up*** 'a scanner for the specific programming language.'"  *Finjan, Inc. v. Sonicwall, Inc.*, No. 17-cv-04467-BLF, 2019 WL 1369938, at *16 (N.D. Cal. Mar. 26, 2019) (citing '408 Patent at Claims 1 and 9) (emphasis added).  In so construing the claims, Judge Freeman rejected SonicWall's proposal to add a limitation of "***substituting specific data, instructions, or both into a generic program unit*** to make it usable for scanning the specific programming language," essentially the same infirm construction Qualys proposes here.  *Id.* (emphasis added).  Courts grant even more deference to prior claim constructions from within their Districts, as is the case here.  *Symantec*, 2017 WL 550453, at *3 (citing *Visto Corp. v. Sproqit Techs., Inc.*, 445 F. Supp. 2d 1104, 1107–08 (N.D. Cal. 2006)).

Thus, the Court should give "instantiating" its plain and ordinary meaning.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

**B.**   **Terms in the '968 Patent**

**Term 2.**   **"dynamically generating a policy index" (Claims 26, 32, and 33)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | creating or updating a policy index in response to user requests for cached or non-cached content |

There is no need to construe the term "dynamically generating a policy index" because in the context of the claims it is easily understood by a person of ordinary skill in the art of computer security. Specifically, the claim explains that "dynamically generating a policy index of the cached contents" is accomplished by "by indicating pieces of cached content known to be allowable relative to a given policy." '968 Patent at Claim 26. Thus, the context of the claim and how it is used provides the meaning of the term, i.e., how the policy index is generated.

Qualys' construction is erroneous in importing unsupported limitations. Qualys would limit the definition of "dynamically generating" to "creating or updating." But the specification describes alternative situations where the policy index may have already been "created" but is empty ('968 Patent at 5:64-6:13), may be "built up on-the-fly as content filter analyzes specific content relative to specific policies" (*id.* at 6:7-13), or may be synchronized or "reset" (*id.* at 7:57-63). All of these descriptions go beyond the "creating or updating" limitation that Qualys proposes, and therefore Qualys' construction is contrary to the intrinsic record. Claim constructions that exclude embodiments are "rarely, if ever, correct." *Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1290 (Fed. Cir. 2010).

Qualys' proposed construction is also flawed in that it would limit the time when a policy index is generated to only "in response to user requests" and further mandates that those user requests be "for cached or non-cached content." But while Qualys apparently took this language from a preferred embodiment of the invention, none of these limitations made it into the claim language and Qualys' proposed construction is not permitted to import limitations from the specification into the claims. *Proofpoint*, 2015 WL 7770208, at *1 (holding the Court may look to the specification of the patent at issue for help construing a disputed term, but "it is improper to read limitations from the specification

into the claims"); *Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (accord: "Specifications teach.  Claims claim.").

Finally, there is no need for Qualys' proposal because it does not shed any light on what it means to "dynamically generat[e] a policy index."  Qualys proposes defining "generating a policy index" as "creating or updating a policy index," essentially just replacing "dynamically generated" with "creating or updating."  Qualys confusingly further proposes that the term be limited to acting in response to "user requests for cached or non-cached content."  Because "cached or non-cached content" would seem to cover all content, adding this to the construction does nothing to define the scope of the claim and only elongates the construction.

Thus, the Court should reject Qualys' proposal because it would improperly limit the claims and would not aid the jury in understanding the claims' scope.  Instead, the Court should give this term a plain and ordinary meaning construction.

**Term 3.**   **"known to be allowable relative to a given policy" / "allowable relative to a given policy" (Claims 1, 12, 13, 23, 26, 32, and 33)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | Whether the given digital content may be sent to the web client |

"Known to be allowable relative to a given policy" and "allowable relative to a given policy" should be given their plain and ordinary meaning: content that has the property of being allowable by a policy or that is known to be allowable by a policy.  The '968 Patent discloses an invention for caching and indexing digital content based on multiple security policies.  The claims set forth that "allowable relative to a given policy" refers to indicating which items of content are allowed.  *See, e.g.*, '968 Patent, Claim 26 ("the policy index including entries that relate cached content and policies, by indicating pieces of cached content known to be allowable relative to a given policy").  Thus, the meaning of terms in the context of the claim is clear and they do not need to and should not be construed.  *Phillips*, 415 F.3d at 1312-13.

Qualys seeks to depart from this plain and ordinary meaning, but fails to overcome the presumption that the terms' plain and ordinary meaning should control.  *Thorner*, 669 F.3d at 1365.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

Qualys' construction is further flawed in injecting two unsupported requirements into the claims. *First*, Qualys' construction includes a requirement that digital content is sent somewhere else with the additional limitation of "may be sent." But the claims are directed to a cache manager and do not contain a transmission requirement. The Court should not read one into the claim, as there is no support for including such a limitation into the scope of the claim, where it is not specifically recited.

*Second*, Qualys proposes that the recipient of the transmission must be a web client, another limitation not supported by the claims or the specification. Indeed the term "web client" does not appear anywhere in the claim language. To the contrary, the claim language and specification both make clear that the "content" that is allowable can be transmitted to a "user," to multiple different "users," or to a "client computer," with no limitation on the type of client or application that it may be transmitted to. *See* '968 Patent at Claim 6, 2:3-11, 5:39-45.

**Term 4.**    **"memory storing a cache of digital content" (Claims 1, 13, 23, 26, and 32)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | a memory storing [memory for storing] a collection of digital content previously requested and retrieved for a web client |

The term "memory storing a cache of digital content" should be given its plain and ordinary meaning — memory that stores digital content. *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1373–76 (Fed. Cir. 2004) (claim terms should be given their plain and ordinary meaning in the absence of evidence that the applicant intended for them to have a different meaning.) Reading this term in the context of the '968 Patent, which discloses an invention that caches digital content, makes clear that the cached content is stored in a computer memory. This is a basic computing function (storing data in memory) that even laypersons understand, and, as such, this term needs no construction.

The first half of Qualys' construction is unnecessary because it simple restates the already-present claim language, replacing "memory storing a cache of digital content" with "a memory storing a collection of digital content." This will not assist the jury to understand the scope of these claims.

The second half of Qualys' construction is unsupported. The claims are not limited to "digital content previously requested and retrieved for a web client," and should not be so construed. Qualys

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

appears to be relying on Figure 1 and the associated discussion in the specification, which show a cache manager receiving content from a web client, but the '968 Patent states that this is only a "preferred embodiment," and thus it is not a definitional statement that should be imported into the claims.  '968 Patent at 3:20-3:30; *Proofpoint*, 2015 WL 7770208, at *1 ("it is improper to read limitations from the specification into the claims").

Therefore, the Court should deny Qualys' construction and retain the plain and ordinary meaning of this term.

**C.    Term in the '731 Patent**

**Term 5.    "incoming files from the internet" (Claim 1)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | Internet files requested by an intranet computer |

As with the other disputed terms, "incoming files from the internet" should be given its plain and ordinary meaning.  The '731 Patent is directed to securing a computer network from threats, such as from downloaded viruses.  Claim 1 discloses a computer gateway that contains "a scanner for scanning incoming files from the Internet and deriving security profiles for the incoming files."  '731 Patent, Claim 1.  Thus, reading this term in the context of the claim, this term simply means files coming in from the internet that will be scanned by the scanner, and no construction is necessary for the jury to understand this term.  *See Chef Am.*, 358 F.3d at 1373.

Qualys' proposed construction is improper because it is unnecessary to construe this term, given its plain and ordinary meaning, and because it is inconsistent with the claims.  Qualys would limit the scanner to scanning "***Internet files*** requested by an ***intranet*** computer."  But Claim 6, which depends from Claim 1 (where Term 5 is recited), provides that the computer gateway can receive a "request for a file stored among the ***intranet*** of computers."[2]  If that requested file is not already resident in a file cache, it will be passed to the scanner to be scanned.  Thus, the scanner can scan files from both the Internet and an intranet, and the term cannot be limited to scanning files from the Internet, as Qualys

---

[2] An intranet is a local private network, usually segregated from the public Internet. *See* Ex. 10 (https://www.computer-dictionary-online.org/definitions-i/intranet.html).

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

proposes, as this would contradict Claim 6.  Accordingly, the Court should give Term 5 its plain and ordinary meaning and reject Qualys' proposed construction.

### D.    Term in the '844 Patent

**Term 6.**    **"web client" (Claims 1, 15, 22, 23, 32, and 41-44)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | an application on the end-user's computer that requests a downloadable from the web server |

The term "web client" is a well-known computing term that needs no construction because any person of ordinary skill in the art understands it.  Specifically, "web client" broadly refers to a web browser, and "may imply the entire user machine or refer to a handheld device that provides Web access."  Ex. 8 (https://www.pcmag.com/encyclopedia/term/web-client).  The asserted claims refer to a web server making the Downloadable "available to web clients," and there is no basis to narrow that term from its broad plain and ordinary meaning.

Qualys asks the Court to limit this term to (1) an application (2) on an end-user's computer, but there is nothing in the claims or the specification that supports reading in these limitations.  In the specification, the web client is described broadly as a "process" (not limited to an application on an end-user's computer) that can receive a Downloadable.  '844 Patent at 1:45-50, 5:59-64.  Thus, there is no reason for the Court to narrow "web client" as Qualys proposes.

### E.    Terms in the '154 Patent

**Term 7.**    **"a content processor" (Claims 1 and 6)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | a processor that processes modified content; the content processor is part of the computer being protected from dynamically generated malicious content |

The term "a content processor" should retain its plain and ordinary meaning: a processor that processes content.  The words "processor" and "content" are straightforward computing terms that the jury can understand without a construction.  *See Chef Am.*, 358 F.3d at 1373.  And reading this term in the context of the claims, the content processor processes content received over a network and it can

invoke functions with that input if it is safe to do so.  Thus, there is no necessity to construe this typical computing term.

Four judges have agreed and held that "a content processor" should be given its plain and ordinary meaning.  *See Proofpoint*, 2015 WL 7770208, at *11 (construing this entire element finding "the term does not require any construction beyond its plain and ordinary meaning"); *see also Symantec*, 2017 WL 550453, at *11 (N.D. Cal. Feb. 10, 2017) ("Accordingly, the Court finds that 'content processor' should be given its plain and ordinary meaning."); *Finjan, Inc. v. Bitdefender Inc.*, No. 17-cv-04790 HSG, 2019 WL 634985, at *11–12 (N.D. Cal. Feb. 14, 2019) ("In turn, the Court again finds that no construction is necessary for this term and that 'content processor' has sufficiently specific structure based on the claim language and specification."); *Rapid7*, 2020 WL 565377, at *1, *7–8 ("content processor" means "a processor that processes content," consistent with "its plain and ordinary meaning").

There are multiple flaws with Qualys' proposed construction.  *First*, Qualys would limit this term to a processor that processes "modified" content (as opposed to unmodified content).  There is no basis to do so, and Judge Noreika recently rejected this exact construction.[3]  *Rapid7*, 2020 WL 565377, at *7–8.  Further, such a construction would violate the doctrine of claim differentiation.  *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*, 403 F.3d 1364, 1370 (Fed. Cir. 2005) (the doctrine of claim differentiation "means that limitations stated in dependent claims are not to be read into the independent claim from which they depend") (citations omitted).  In fact, Judge Noreika relied on claim differentiation (noting that Finjan included a "modified content" limitation in different claims in a different patent) and the fact that Finjan expressly *removed* the word "modified" from Claims 1 and 6 as confirming that it would be an error to import "modified" into these claims:

> I note that near the end of prosecution, ***Finjan [amended] claim 2 to remove the reference to "modified" content***, because there was no antecedent basis for "modified content."  And claims of the '289 Patent

---

[3] Qualys appears to be relying on citations to embodiments in the '154 Patent specification where the content processor processes modified content, but in each such instance the patent explicitly states that it is only describing an embodiment.  *See, e.g.,* '154 Patent at 5:25-5:52 (describing a "preferred embodiment").

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

include an express requirement that the content is modified. ***The inclusion of this limitation in '289 Patent claims confirms it should not be read into the claims of the '154 Patent that do not include (and, in fact, removed) this limitation.")***.

*Rapid7*, 2020 WL 565377, at *8 (emphasis added, alteration in original); *see also* Ex. 9, '154 Patent File History, Oct. 5, 2011 Response to Office Action at 12 (striking out "modified" from "content" in dependent claim 2).

The other claims of the '154 Patent further confirm that the content does not have to be modified, because claims 6, 7, 9, and 10 of the '154 Patent explicitly use "modified" to cover data that was modified from its original form, which is proof that the inventors could have expressly included "modified" to limit "content" (rather than removing the word if they wanted to so limit the claims). The Court should reject Qualys' attempt to import the word "modified" into the claim language where the inventors expressly chose to omit it. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F. 2d 1107, 1122 (Fed. Cir. 1985) ("It is settled law that when a patent claim does not contain a certain limitation and another claim does, that limitation cannot be read into the former claim").

*Second,* to the extent the meaning of "content processor" is unclear to the jury, Qualys' proposed construction does nothing to clarify the term, because it effectively states that a "content processor" is "a processor that processes … content," adding nothing.

*Third*, there is no basis for Qualys' proposed limitation that the content processor must reside on the computer being protected. Neither the claim language nor the intrinsic record support reading that limitation into the claim. To the contrary, the '154 Patent discloses a series of four embodiments simply stating that the processor is run on a computer, but limiting the computer to the specific computer that will ultimately receive the content. '154 Patent at 6:27-34; 6:66–7:7; 7:8-19; 7:20-31; and 7:32-43.

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF                    CASE NO.: 4:18-cv-07229-YGR

1

**Term 8.      "security computer" (Claims 1 and 6)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | a computer that determines whether the content received by the content processor is malicious |

The term "security computer" should retain its plain and ordinary meaning because it consists of only two "ordinary, simple English words whose meaning is clear and unquestionable . . . They mean exactly what they say" a computer that provides a security function.  *See Chef Am.*, 358 F.3d at 1373. Consistent with this plain and ordinary meaning, the claims set forth that the security computer receives the input from the transmitter, inspects the input, and sends an indication to the receiver indicating whether the input is safe.  '154 Patent, Claim 1.

Qualys cannot overcome the plain and ordinary meaning presumption because it cannot show that the inventors acted as their own lexicographer or disavowed claim scope, to limit the scope of security computer.  *Thorner*, 669 F.3d at 1365.  The citations to the specification that Qualys relies upon do not include any definitional statements to support their construction.  *See* Dkt. No. 40, Ex. A at 19, *citing, e.g.*, '154 Patent at 4:35-43.  Indeed, this term has already been given its plain and ordinary meaning by another judge in this District.  *See Proofpoint*, 2015 WL 7770208, at *9-11 (giving plain and ordinary meaning to "content processor ….. for invoking a second function …. Only if a ***security computer*** indicates that such invocation is safe.") (emphasis added).

In addition to being unnecessary, Qualys' proposed construction adds the limitation that the security computer must determine if content is *malicious*.  But the specification discloses that the security computer has a broader functionality, and can also determine if something is *potentially* malicious or dangerous, and can also change its definition of what is safe based on different security policies.  '154 Patent at 11:10-15 and 40-46.  Thus, Qualys' proposed construction is contrary to the intrinsic record and should be denied.

13

**F.    Terms in the '494 Patent, '968 Patent, and '154 Patent**

**Term 9.    "receiver" ('494 Patent, Claim 10; '968 Patent Claim 7; '154 Patent, Claims 1-2 and 6-7)**

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | Governed by 35 U.S.C. § 112(6) without corresponding structure. |

The term "receiver" in all three of these patents should retain its plain and ordinary meaning, something that receives, because it is an "ordinary, simple English" word "whose meaning is clear and unquestionable." *Chef Am.*, 358 F.3d at 1373.

There is no merit to Qualys' contention that this term is invalid under 35 U.S.C. § 112(6). *First,* "receiver" is not subject to 35 U.S.C. § 112(6). There is a presumption against invoking 35 U.S.C. § 112(6) for this term because the inventors did not use the word "means" in the claim language. *EnOcean GmbH v. Face Int'l Corp.*, 742 F.3d 955, 958 (Fed. Cir. 2014) (holding where "the claim language does not recite the term 'means,' we presume that the limitation does not invoke § 112, ¶ 6."). Qualys cannot overcome this presumption because it cannot show that "receiver" is not "understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure" and "'that the claim term fails to recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349 (Fed. Cir. 2015) (citations omitted). Neither exception applies here, where receiver is well understood in the computer context.

The mere fact that the word "receiver" also connotes a function does not make a means-plus-function element, as "defining a particular claim term by its function is not improper and is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of [35 U.S.C. § 112, ¶ 6]." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1374–75 (Fed. Cir. 2014) (also holding that similar "examples [of functional terms that are not subject to 112¶ 6] are innumerable, such as filter, brake, clamp, screwdriver, or lock.") (internal quotations and citation omitted). Thus, given that "receiver" is a broadly understood term, the inquiry

1   into whether the Court should invoke 35 U.S.C. § 112(6) for the term "receiver" in these three patents

2   should end here.

3       Consistent with Finjan's construction, another Judge in this District construed this term without

4   finding it to be a means-plus-function element.  *See Bitdefender*, 2019 WL 634985, at *4–6 (rejecting

5   the argument that "Downloadable scanner coupled with said ***receiver***, for deriving security profile data

6   for the Downloadable" in the '494 Patent should be construed as a means-plus-function claim)

7   (emphasis added).  And many judges have construed claims in these patents that use the term receiver

8   but none have found those related claim terms indefinite.  *See, e.g.*, *Proofpoint*, 2015 WL 7770208, at

9   *11 (construing the '154 Patent and noting how certain elements interact with the receiver); *Finjan, Inc.*

10  *v. Cisco Sys., Inc.*, No. 17-cv-00072-BLF, 2018 WL 3537142, at *11–13, *20–23 (N.D. Cal. Jul. 23,

11  2018) (construing claims in the '154 and '494 Patents).  In declining to find the term to be a mean-plus-

12  function limitation, Judge Gilliam first noted the presumption against doing so given that it was drafted

13  without using the signal word "means" and found that a person of ordinary skill in the art would

14  understand the structure that it connotes.  *Bitdefender*, 2019 WL 634985, at *4–6.

15      Furthermore, "receiver" is not indefinite because a person of ordinary skill can recognize the

16  intended structure from that term alone.  The Federal Circuit expressly found "a receiver for receiving"

17  not indefinite because the term "receiver" by itself connotes sufficient structure to a person of ordinary

18  skill in the art.  *EnOcean*, 742 F.3d at 958; *see also Williamson*, 792 F.3d at 1352 (holding the standard

19  for definiteness is whether a person of ordinary skill can recognize the structure in the specification and

20  associate it with the function in the claim).  In *EnOcean*, the Federal Circuit found that claims reciting a

21  number of different types of receivers, including for receiving electromagnetic, wireless, and

22  radiofrequency signals, conveyed "known structure to the skilled person," and therefore were not

23  means-plus-function limitations.  742 F.3d at 959.  The Federal Circuit also rejected the argument that

24  the term "receiver" referred to an overbroad class of structures: "[W]e require only that the claim term

25  be used in common parlance or by ordinarily skilled artisans to designate *sufficiently definite* structure,

26  even if the term covers a broad class of structures."  *Id.* at 960 (emphasis original) (quoting *Power*

27  *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1365 (Fed. Cir. 2013)).  Thus,

28

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

the Federal Circuit found that the term "receiver" connotes sufficient structure to those of skill in the art to not fall under the ambit of 112 ¶6, and the same result should apply here.

At the very least, each of the three patents containing "receiver" includes sufficient structure that the term should be found definite.

### 1. Structure for "receiver" in the '494 Patent

The specification of the '494 Patent discloses structures for "receiver" sufficient to support the term, even if it is found to be a means-plus-function element. The '494 Patent provides that the function of the receiver is to receive incoming downloadables. '494 Patent at Claim 10. The '494 Patent also provides structure by disclosing that the receiver may reside within "one or more network 'servers' (e.g., firewalls, resources, gateways, email relays or other devices/processes that are capable of receiving-and-transferring a Downloadable)." '494 Patent at 3:4-8. The '494 Patent also provides that the receiver must be of a type that is capable of receiving data or information including executable code. *Id.* at 3:4-13. The specification further describes that the receiver structurally can be a server or firewall that receives a combination of data, including non-executable information and one or more executable code portions, such as a Trojan Horse. '494 Patent at 9:38-46. Finally, the '494 Patent's claim language describes that the receiver must be a receiver for receiving Downloadables and that it must be coupled with a Downloadable scanner, all of which are limitations that demonstrate what the "receiver" is and that it is not indefinite to a person skilled in the art of computer security. *See* '494 Patent at Claim 10. Thus, persons skilled in the art of computer security would understand that the '494 Patent connotes the structure of a receiver for receiving incoming Downloadables.

### 2. Structure for "receiver" in the '968 Patent

Claim 7 of the '968 Patent is the only claim that uses the word "receiver." The language of Claim 7 describes that the function of the receiver is to receive "digital content from a web server." Claim 7. Claim 7 also provides structure by informing that the receiver must be connected to "the policy-based cache manager of claim 1." '968 Patent at Claim 7. The specification also supports this structure. *Id.* at 3:36-40 (describing "content received from web servers"). Thus, persons skilled in the

art of computer security would understand that the receiver connotes the structure of a receiver for digital content from a web server, which informs the term's structural character.

### 3. Structure for "receiver" in the '154 Patent

The '154 Patent describes that the function of the receiver is to receive data over a communications channel. For example, Claims 1 and 2 describe that the receiver receives "an indicator from the security computer." '154 Patent at Claims 1-2. Claims 6 and 7 also specify that the receiver must be of a type to receive a "modified input variable." The specification supports this function and identifies structure by providing specific examples of what can act as the receiver. *See, e.g.,* '154 Patent at 2:54-63 (specifically naming types of receivers, including receivers in a gateway and receivers in a client computer for receiving data over a communications channel). All of these descriptions provide structure for the "receiver," such that persons skilled in the art of computer security reading this patent would understand that the receiver connotes the structure of a receiver for data over a communications channel.

### Term 10.   "transmitter" ('968 Patent Claim 6; '154 Patent, Claims 1-3 and 6-8)

| Finjan's Proposed Construction | Qualys' Proposed Construction |
|---|---|
| No construction necessary – Plain and ordinary meaning. | Governed by 35 U.S.C. § 112(6) without corresponding structure. |

The term "transmitter" in the '968 Patent and '154 Patent should retain its plain and ordinary meaning because it is a plain English word, meaning something that transmits. *See Chef Am.*, 358 F.3d at 1373.

"Transmitter" is not a means-plus-function element because a person of ordinary skill is able to recognize the structure of a "transmitter" and associate it with the function in the claim, and further because of the presumption against invoking § 112(6) where "transmitter" does not recite the word "means." *EnOcean*, 742 F.3d at 958–59 (presumption against invoking § 112(6) if the word "means" is absent); *Williamson*, 792 F.3d at 1352 (a term is not indefinite where a person of ordinary skill can recognize the structure). For this reason, Judge Bencivengo, construing another of Finjan's patents, denied application of 35 U.S.C. § 112(6) to the term "transmitter" because it is "a common name for a

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

known program construct that would be familiar to one of skill in the art." *Finjan, Inc. v. Eset, LLC*, No. 17-cv-0183-CAB-(BGS), 2017 WL 5501338, at *3 (S.D. Cal. Nov. 14, 2017) (finding "transmitter" in Finjan's U.S. Patent No. 8,079,086 is not a mean-plus-function element). Additionally, multiple courts have construed terms in the '968 Patent and '154 Patent, and none have ever found that any term from those patents should be construed as a means-plus-function element. *See, e.g., Proofpoint*, 2015 WL 7770208, at *9–11 (construing the '154 Patent); *Cisco*, 2018 WL 3537142, at *20–23 (construing the '154 Patent); *Sonicwall*, 2019 WL 1369938, at *20–22 (construing the '968 Patent); *Bitdefender*, 2019 WL 634985, at *4–6 (construing the '154 Patent).

At the very least, both the '968 and '154 Patents provide sufficient structure to overcome Qualys' indefiniteness challenge, as shown below:

### 1.  Structure for "transmitter" in the '968 Patent

Claim 6 of the '968 Patent is the only claim that uses the word "transmitter." Claim 6 describes that the function of the transmitter is to transmit digital content from a cache of such content to a client computer. '968 Patent at Claim 6. The specification states that this transmitter must be of a structure to communicate with the client computer and the cache, and be structurally able to transmit digital web content from one to the other. '968 Patent at 3:41-50; 5:39-42. Thus, persons skilled in the art of computer security would understand that the transmitter connotes the structure of a transmitter of digital web content to a client computer.

### 2.  Structure for "transmitter" in the '154 Patent

The '154 Patent describes that the function of the transmitter is to transmit computer inputs for inspection. *See* Claims 1-8 and 10-11. The specification provides structure by describing how the transmitter interacts with the invention's other components, including the content processor and security computer, which informs its structural function. '154 Patent at 6:50-65 (describing how the transmitter works with the other components). Claims 1-3 support this structure by describing *inter alia* that the transmitter can transmit inputs that were dynamically generated before transmission by the content processor. The specification provides further structure by explaining that the transmitter must also be able to transmit an identification of the client computer. '154 Patent at 14:4-8. Thus, persons skilled in

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR

the art, reading the patent, understand that the transmitter connotes the structure of transmitting inputs for inspection.

## IV.     CONCLUSION

For the reasons set forth above, Finjan respectfully requests that the Court adopt Finjan's constructions.

Respectfully submitted,

Dated:  February 10, 2020          By:  */s/ James Hannah*
                                        Paul J. Andre (State Bar No. 196585)
                                        Lisa Kobialka (State Bar No. 191404)
                                        James Hannah (State Bar No. 237978)
                                        Austin Manes (State Bar No. 284065)
                                        KRAMER LEVIN NAFTALIS
                                        & FRANKEL LLP
                                        990 Marsh Road
                                        Menlo Park, CA 94025
                                        Telephone: (650) 752-1700
                                        Facsimile: (650) 752-1800
                                        pandre@kramerlevin.com
                                        lkobialka@kramerlevin.com
                                        jhannah@kramerlevin.com
                                        amanes@kramerlevin.com

                                        *Attorneys for Plaintiff*
                                        FINJAN, INC.

19

FINJAN'S OPENING CLAIM CONSTRUCTION BRIEF          CASE NO.: 4:18-cv-07229-YGR