EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2901
Facsimile:  (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| FINJAN, INC., a Delaware Corporation, | CASE NO.:  4:18-cv-07229-YGR |
| Plaintiff, | **DEFENDANT QUALYS INC.'S MOTION FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES** |
| v. | |
| QUALYS INC., a Delaware Corporation, | Judge:     Hon. Yvonne Gonzalez Rogers |
| Defendant. | Date:      April 7, 2020<br>Time:      2:00 pm<br>Location: Courtroom 1, 4th Floor |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on April 7, 2020 at 2:00 pm or as soon thereafter as this matter may be heard before Judge Gonzales Rogers of the United States District Court for the Northern District of California in Courtroom 1, 4th Floor, of 1301 Clay Street in Oakland, California, defendant Qualys, Inc. ("Qualys") will move to file an Amended Answer and Affirmative Defenses pursuant to Federal Rule of Civil Procedure 15(a)(2).

For the reasons set forth below, Qualys requests that the Court grant this motion and allow Qualys to file additional defenses for patent exhaustion, implied license, and preclusion.

**MEMORANDUM OF POINTS AND AUTHORIES**

**I.    INTRODUCTION[1]**

Qualys brings this Motion seeking leave to file a Second Amended Answer. This proposed amendment would add three new affirmative defenses: patent exhaustion, implied license, and preclusion.

After filing its First Amended Answer in March 2019, Qualys subsequently learned of new facts supporting these defenses. For example, in January 2020, the United States Patent and Trademark Office ("Patent Office") confirmed that several claims of U.S. Patent No. 7,975,305 ("the '305 Patent") were invalid and issued a Reexamination Certificate canceling them. However, these claims (which until recently plaintiff Finjan, Inc. ("Finjan") asserted against Qualys) are immaterially different from the remaining '305 patent claims Finjan continues to assert against Qualys. Because Finjan is precluded from continuing to assert these claims, Qualys seeks to add collateral estoppel as an affirmative defense.

Additionally, on September 3, 2019, Finjan produced a license agreement between it and a third party, Trend Micro Inc. ("Trend Micro"). In this agreement (the "Trend Micro License"), Finjan licensed every Trend Micro product to Finjan's entire patent portfolio (which includes the Patents-in-Suit here). Finjan nonetheless accuses Qualys products, including functionality of those products that incorporate licensed Trend Micro software, of patent infringement. This gives rise

---

[1] Unless stated otherwise, all emphasis in quotes is added.

to both a patent exhaustion and an implied license defense, and Qualys seeks to add these as affirmative defenses.

Qualys only brings this motion after having gone to great lengths to seek an agreement from Finjan on these defenses. For example, Qualys asked Finjan to confirm that it would not accuse any Trend Micro software (as found in Qualys products) of infringement in this case. Finjan eventually declined to confirm this, but did hold out the possibility that it would stipulate to the amended answer if Qualys produced relevant documents showing its use of Trend Micro's software. Qualys spent the next two months searching, collecting, and producing technical documents (including software source code) showing precisely how it uses Trend Micro's software. Finjan's response was to demand yet more documents. Qualys has acted in good faith to informally resolve these issues, and only brings this Motion after months of meet and confer efforts with Finjan resulted in an impasse.

## II. ISSUES TO BE DECIDED

Whether the Court shall grant leave for Qualys to file its proposed Second Amended Answer, which adds affirmative defenses under patent exhaustion, implied license, and preclusion.

## III. FACTUAL BACKGROUND

### A. Preclusion: The Patent Office Invalidated Claims of the '305 Patent That Are Immaterially Different From Claims Finjan Still Asserts

On December 11, 2015, an *Ex Parte* Reexamination Request ("Request") was filed with the Patent Office. *See* Ex. B.[2] The Request asked the Patent Office to reconsider the validity of claims 1, 2, 5, and 13 of the '305 Patent. *Id.* The Patent Office granted this request. On January 29, 2020 the Patent Office issued an *Ex Parte* Reexamination Certificate that canceled claims 1, 2, 5, and 13.[3] *Id.* at 1:10. As pled in the proposed Second Amended Answer, the canceled '305

---

[2] All exhibits are attached to the Declaration of Christopher Mays in Support of Qualys's Motion Seeking Leave to Amend its Answer ("Mays Decl."), filed concurrently herewith.

[3] For the sake of brevity, Qualys omits the details of these lengthy *Ex Parte* Reexamination proceedings, which culminated in a Federal Circuit decision affirming the Patent Office.

claims are not materially different from '305 claims 6-12, 14, and 17-25 that Finjan continues to assert against Qualys.[4] *See* Ex. A at ¶ 317. Finjan is therefore collaterally estopped from asserting these additional claims.

### B. Patent Exhaustion and Implied License: Finjan Accuses of Infringement Software It Previously Licensed

Qualys' patent exhaustion and implied license defenses share the same common set of facts. In 2011, Qualys and Trend Micro announced a business partnership and product integration. *See* Ex. A. at ¶ 309; Ex. C. Through this partnership, Trend Micro provided software to Qualys, who then integrated that software into Qualys' own products. Ex. A. at ¶ 309. For example, Qualys uses Trend Micro's antivirus software in its products. *Id.*

Before this litigation even began, however, Finjan gave Trend Micro a license covering every Trend Micro product for every Patent-in-Suit. *See* Ex. A at ¶ 308; Ex. D at -4294. In exchange for this license, Finjan received $13.4 million from Trend Micro and ownership of Trend Micro patents. Ex. D at -4292, 4294 at § 3.1(a), -4313.

Finjan sued Qualys for patent infringement on November 29, 2018, five months after licensing Trend Micro to the Patents-in-Suit. On April 19, 2019, Finjan filed its "Initial Disclosure of Asserted Claims and Infringement Contentions" pursuant to Patent Local Rule 3-1 ("Infringement Contentions"). Mays Decl. ¶ 5. Finjan's infringement contentions accuse, among other things, "antivirus operations" that "download[] and scan[] documents such as PDFs on the site using antivirus software." Ex. E at 2 (referencing anti-virus functionality) (emphasis in original); *see also id.* at 35-36; Ex. F at 5, 8 (same); Ex. G- at 5, 27, 42, 43, 66, 105, 111 (same); Ex. H at 6 (same). Qualys' proposed Second Amended Answer pleads that these "antivirus operations" refer to Trend Micro's antivirus software that is already licensed under the Patents-in-Suit. *See* Ex. A at ¶ 310. The defenses of patent exhaustion and implied license therefore apply.

### IV. ARGUMENT

---

[4] Finjan previously also asserted claims 1, 2, 5, and 13, but withdrew these in light of the '305 Reexamination proceedings.

Rule 15(a) permits a party to seek leave of Court to amend its pleadings. FED. R. CIV. P. 15(a). Courts freely grant leave when justice so requires, and public policy strongly encourages courts to permit amendments. *Id.*; *Outdoor Sys., Inc. v. City of Mesa*, 997 F.2d 604, 614 (9th Cir.1993). The policy of allowing amendments "is to be applied with extreme liberality." *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir.2001). As this Court has stated,

> Courts may decline to grant leave to amend only if there is **_strong evidence_** of **_undue delay_**, **_bad faith_** or **_dilatory motive_** on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, **_undue prejudice_** to the opposing party by virtue of allowance of the amendment, or **_futility_** of amendment, etc.

*Buchanan v. Tata Consultancy Servs., Ltd.*, No. 15-CV-01696-YGR, 2017 WL 6611653, at *4 (N.D. Cal. Dec. 27, 2017) (citing and quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Sonoma County. Ass'n of Retired Emps. v. Sonoma County.*, 708 F.3d 1109, 1117 (9th Cir. 2013)). "Absent prejudice, or a strong showing of any of the remaining . . . factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 1455333, at *2 (N.D. Cal. Apr. 2, 2019) (quoting *Eminence*, 316 F.3d at 1052) (emphasis in original). Each of these factors weighs in favor of granting Qualys leave to amend.

### A. Qualys's Proposed Second Amended Answer is not Futile

"If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility requires a finding that "the pleading could not possibly be cured by the allegation of other facts." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2003) (citing *Doe v. U.S.*, 58 F.3d 494, 497 (9th Cir.1995)). Qualys's proposed defenses for patent exhaustion, implied license, and preclusion are not futile.

#### 1. Qualys's Preclusion Defense Is Not Futile

Preclusion prevents a party from relitigating an issue from a prior litigation where three elements are met:

> (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action.

*Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (quotations omitted).

In Patent Law, a final judgment of invalidity in a Patent Office proceeding "has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent." *XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018). "A patentee, having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his day in court, and a defendant should not have to continue defending a suit for infringement of an adjudged invalid patent." *Id.* (citations omitted); *see also MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("[W]here a single issue is before a court and an administrative agency, preclusion also often applies.").

Preclusion applies even where there is not complete overlap between patent claims cancelled by the Patent Office and the ones asserted in litigation. "Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt.*, LLC, 778 F.3d 1311, 1319 (Fed. Cir. 2015). Preclusion applies where the differences between the claims canceled in the patent office and the claims asserted in litigation "do not ***materially alter the question of invalidity***." *Id.*; *see also Ohio Willow Wood Co. v. Alps South., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (preclusion applies where the claims invalidated in the Patent Office use "slightly different language to describe substantially the same invention").

Here, the proposed Second Amended Answer properly states a claim for preclusion barring Finjan from asserting claims 6-12, 14, and 17-25 of the '305 Patent against Qualys. The differences between these claims and the ones canceled in the Patent Office (claims 1, 2, 5, and 13) do not materially alter the question of invalidity. Ex. A at ¶ 317. For example, the following table shows that claim 2 (invalidated) and 14 of the '305 Patent are materially identical:

| Claim 2<br>(invalidated by Patent Office) | Claim 14<br>(presently asserted by Finjan) |
|---|---|
| 2. The security system of claim 1 wherein said database of parser and analyzer rules stores parser and analyzer rules in the form of pattern-matching engines. | 14. The method of claim 13 wherein said database of parser and analyzer rules stores parser and analyzer rules in the form of pattern-matching engines.[5] |

*Compare* Ex. I at 30:48-50 *with id.* at 31:30-32.

Preclusion also applies to other final adjudications. One example is the pending Federal Circuit appeal in the *Finjan v. Juniper* case. In that case, the Federal Circuit is considering the proper construction of the term "content processor." *See* D.I. 41 at 1. Finjan has appealed a construction of that term adopted by another court within this district. *Id.* Assuming the Federal Circuit rejects Finjan's arguments, preclusion will apply. *See, e.g., Hemphill v. Proctor & Gamble Co.*, 85 F. App'x 765, 767 (Fed. Cir. 2004) (affirming district court's use of collateral estoppel in applying construction of terms from one claim of a patent made in a prior decision that the patentee lost to the identical terms as present in another claim).

### 2.  Qualys's Proposed Patent Exhaustion and Implied License Defenses Are Not Futile

The Patent Act grants patentees the "right to exclude others from making, using, offering for sale, or selling [their] invention[s]." 35 U.S.C. § 154(a). However, the doctrine of patent exhaustion "limits that right to exclude." *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 at 1531 (2017). "Once a patentee decides to sell—whether on its own or through a licensee— that sale exhausts its patent rights, regardless of any post-sale restrictions the patentee purports to impose, either directly or through a license." *Id.* at 1535.

> So long as a licensee complies with the license when selling an item, the patentee has, in effect, authorized the sale. That licensee's sale is treated, for purposes of patent exhaustion, as if the patentee made the sale itself. The result: The sale exhausts the patentee's rights in that item.

*Id.* at 1535; *see also Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008). ("an initial ***authorized*** sale of a patented item terminates ***all*** patent rights to that item."); *TransCore,*

---

[5] The fact that claim 2 states that it depends on claim 1 while claim 14 depends on claim 13 is of no moment. The Patent Office found both Claim 1 and 13 invalid as well. Ex. B at 1:10.

1  *LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1277 (Fed. Cir. 2009) ("The only issue relevant to patent exhaustion is whether [licensee's] sales were authorized, not whether [patentee] and [licensee] intended, expressly or impliedly, for the covenant to extend to [licensee's] customers."). Implied license, a related doctrine, estops a patentee from asserting infringement where the patentee "licensed or assigned a right, received consideration, and then sought to derogate from the right granted." *Id.* at 1279 (citing *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1581 (Fed.Cir.1997)).

Here, Finjan's actions give rise to a patent exhaustion defense. <u>First</u>, Finjan authorized Trend Micro's sales to Qualys. *See* Ex. A at ¶ 308. <u>Second</u>, Finjan licensed all of Trend Micro's products to every Patent-in-Suit. *See id.*; Ex. D at -4294 (§ 3.2), -4291. It permitted Trend Micro to sell licensed software to third parties and allowed those customers to use that software and combine it with their own respective. Ex. A at ¶ 308; Ex. D at -4294 (§ 3.2), -4296 (§§ 3.5(b), 3.5(c)), and -4291 (§ 1.12). <u>Third</u>, Finjan now accuses that licensed Trend Micro software of infringing the Patents-in-Suit when incorporated into Qualys' products. Ex. A at ¶ 310. This adequately states a claim for patent exhaustion.

Neither is Qualys' proposed implied license futile. In addition to the above facts, Finjan received valuable consideration—$13.4 million dollars and Trend Micro patents—in exchange for its license. *See* Ex. A at ¶ 312; Ex. D at -4292, -4294, and -4313. Finjan now seeks to derogate from the rights it granted by accusing licensed Trend Micro software of infringement simply because that software is used in Qualys' own products. Ex. A at ¶ 313.

Consequently, none of Qualys's proposed new defenses are futile.

**B.     There is No Prejudice to Finjan**

"Prejudice to the opposing party carries the 'greatest weight' in the leave to amend inquiry." *Buchanan*, 2017 WL 6611653, at *4 (quoting *Dupree v. Apple, Inc.*, 2017 U.S. Dist. LEXIS 7765 at *12; *Eminence*, 316 F.3d at 1048, 1052). The party opposing the amendment bears the burden of showing prejudice. *Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, 2019 WL 1455333, at *2 (N.D. Cal. Apr. 2, 2019) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)). "[T]he prospect of additional discovery needed by

the non-moving party does not in itself constitute a sufficient showing of prejudice." *Finjan*, 2019 WL 1455333 at *3 (quoting *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1158 (N.D. Cal. 2010). Prejudice is particularly difficult to show where fact discovery remains open and the claim construction phase has not completed. *See id.* ("This case is still in an early stage: no claims have been construed, there is not an operative set of infringement contentions, fact discovery does not close until December 13, 2019, and trial is not until the end of January 2021.").

Finjan will not be prejudiced by Qualys' proposed Second Amended Answer. First, this case is still in its early stages. The claim construction hearing is not for several months. *See* D.I. 39 at 1. Also, fact discovery remains open. *See id.* In fact, no depositions have been taken, the parties have not completed their respective document productions, and email discovery has not been exchanged. Mays Decl. ¶ 3.

Second, the new defenses pled in Qualys' proposed Second Amended Answer will not substantially increase Finjan's burden of discovery in this case. Many of the relevant documents – such as the Trend Micro License, Qualys' technical documents showing its use of Trend Micro's software, and documents relating to the Patent Office's cancellation of the '305 claims – are already in Finjan's possession, thus commensurately reducing any burden of discovery to Finjan. Mays Decl. ¶ 4. Also, because no depositions have yet occurred, no witnesses need be recalled.

Finally, Finjan itself appears to concede that it would not be prejudiced. In the parties' meet and confer efforts subject to this issue, Finjan never articulated any prejudice that it would suffer from this amendment. *See generally* Ex. J (saying nothing about prejudice to Finjan). Accordingly, this factor favors granting Qualys' motion.

### C.  There is No Undue Delay, Bad Faith, or Dilatory Motive

After prejudice, "[u]ndue delay is the next factor a court considers in deciding whether to grant leave to amend." *Buchanan*, 2017 WL 6611653, at *6 (quoting *Dupree*, 2017 U.S. Dist. LEXIS at *12). Undue delay "cannot alone justify the denial of a motion to amend." *Id.* (citing *Square 1 Bank v. Lo*, 2014 WL 1154031, at *1 (N.D. Cal. 2014); *Owens*, 244 F.3d at 712-13). To evaluate undue delay, courts must determine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (internal citations omitted).

Here, there is no undue delay, bad faith, or dilatory motive. Qualys could not have brought its proposed exhaustion, implied license, and preclusion defenses when it served its First Amended Answer on March 6, 2019. *See* D.I. 26. Finjan did not produce the Trend Micro License until about six months ago, on September 3, 2019.[6] And, as to Qualys' preclusion defense, the Patent Office issued the Reexamination Certificate for the '305 Patent less than a month ago, on January 29, 2020. These predicate documents were not available to Qualys when it served its First Amended Answer. Once it became aware of the relevant documents, Qualys acted diligently in preparing these defenses and seeking leave to amend. This factor, therefore, weighs in favor of granting Qualys's motion.

Qualys understands that Finjan contends that this motion is untimely. Not so. In addition to the fact that these issues only recently came to Qualys' knowledge, Qualys sought to resolve this dispute without motion practice. When Qualys raised these issues with Finjan, Finjan responded by peppering Qualys with demands for technical documents showing Qualys's use of Trend Micro's antivirus software. *See* Ex. J at 5 ("once Finjan requested that we search for and identify relevant technical documents, we immediately began such a search…"). Qualys complied with these demands, only for Finjan to then refuse to consent to the proposed Second Amended Answer because Qualys did not produce a different document – namely, a license agreement between Qualys and Trend Micro. *Id.* at 2. Finjan provided no explanation for this demand.[7] Qualys diligently sought an informal resolution to this dispute with Finjan. When that attempt failed, Qualys was also diligent in bringing this Motion.

---

[6] Finjan produced the Trend Micro License several months late. Patent L.R. 3-2 requires that Finjan produce all licenses alongside its Infringement Contentions. Patent L.R. 3-2(f). However, Finjan produced the Trend Micro License on September 3, 2019, **_five months_** after serving its Infringement Contentions on April 19. Mays Decl. ¶ 5.

[7] An agreement between Qualys and Trend Micro has limited relevance. Patent exhaustion focuses on **_Finjan's_** license with Trend Micro, not Trend Micro's agreements with its downstream customers. *See TransCore*, 563 F.3d at 1277 ("The only issue relevant to patent exhaustion is whether [licensee's] sales were authorized [by patent owner]"). In any event, Finjan's document demands are a matter for discovery, and are not a proper basis to refuse to consent to the filing of an amended pleading.

## V. CONCLUSION

For the foregoing reasons, Qualys's motion should be granted.

DATED: February 28, 2020     By:  /s/ Christopher D. Mays
                                  EDWARD G. POPLAWSKI (SBN 113590)
                                  epoplawski@wsgr.com
                                  OLIVIA M. KIM (SBN 228382)
                                  okim@wsgr.com
                                  WILSON SONSINI GOODRICH & ROSATI
                                  Professional Corporation
                                  633 West Fifth Street, Suite 1550
                                  Los Angeles, CA 90071
                                  Telephone: (323) 210-2901
                                  Facsimile: (866) 974-7329

                                  RYAN R. SMITH (SBN 229323)
                                  rsmith@wsgr.com
                                  CHRISTOPHER D. MAYS (SBN 266510)
                                  cmays@wsgr.com
                                  WILSON SONSINI GOODRICH & ROSATI
                                  Professional Corporation
                                  650 Page Mill Road
                                  Palo Alto, CA 94304-1050
                                  Telephone: (650) 493-9300
                                  Facsimile: (650) 493-6811

                                  *Counsel for Defendant*
                                  QUALYS INC.