| | |
|---|---|
| EDWARD G. POPLAWSKI (SBN 113590) | RYAN R. SMITH (SBN 229323) |
| epoplawski@wsgr.com | rsmith@wsgr.com |
| OLIVIA M. KIM (SBN 228382) | CHRISTOPHER D. MAYS (SBN 266510) |
| okim@wsgr.com | cmays@wsgr.com |
| WILSON SONSINI GOODRICH & ROSATI, P.C. | WILSON SONSINI GOODRICH & ROSATI, P.C. |
| 633 West Fifth Street, Suite 1550 | 650 Page Mill Road |
| Los Angeles, CA 90071 | Palo Alto, CA 94304-1050 |
| Telephone: (323) 210-2900 | Telephone: (650) 493-9300 |
| Facsimile: (866) 974-7329 | Facsimile: (650) 493-6811 |

*Attorneys for Defendant*
QUALYS INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | | |
|---|---|---|
| FINJAN, INC., | ) | CASE NO.: 4:18-cv-07229-YGR |
| Plaintiff, | ) ) ) | **DEFENDANT QUALYS INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES** |
| v. | ) ) ) | |
| QUALYS INC., | ) ) | |
| Defendant. | ) ) ) ) ) | Date: N/A[1] <br> Time: N/A <br> Place: Courtroom 1, 4th Floor <br> Before: Hon. Yvonne Gonzalez Rogers |

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

**REDACTED VERSION OF DOCUMENTS SOUGHT TO BE SEALED**

---

[1] Subject to the Court's March 12, 2020 Order (D.I. 48) suspending in-person appearances.

## I.      INTRODUCTION

Finjan's Opposition ("Opp.") ignores material facts and fails to overcome the strong presumption to grant amendments "with extreme liberality." *Waldrip v. Hall*, 548 F.3d 729, 732 (9th Cir. 2008). Nor does Finjan satisfy this Court's prior precedent granting leave to amend unless "there is strong evidence" of undue delay, bad faith, dilatory motive, undue prejudice, or futility. *Buchanan v. Tata Consultancy Servs., Ltd.*, No. 15-CV-01696-YGR, 2017 WL 6611653, at *4 (N.D. Cal. Dec. 27, 2017). Finjan does not even argue that either bad faith or dilatory motive exists. Instead, it argues only delay, prejudice, and futility, but each of these arguments are factually and legally flawed.

## II.     ARGUMENT

### A.      Qualys' Preclusion Defense Is Not Futile, Untimely, or Prejudicial

#### 1.      Finjan Has Not Shown Undue Delay

Qualys did not unduly delay in seeking to assert preclusion as an affirmative defense. *See* Opp. at 6. Qualys was not a party to the reexamination proceedings or the subsequent Federal Circuit appeal. And Finjan did not apprise Qualys regarding the status of those proceedings. To the contrary, Finjan took steps to conceal the pendency of the reexamination. Specifically, on March 4, 2019, the Court requested a "chart that I can look at that gives me all of this information in terms of the other cases, where it's pending, which have constructions, which are terminated. That's one chart." D.I. 24, CMC Tr. at 11:18-23. Finjan then submitted a chart, which purported to identify all proceedings involving the patents-in-suit. *See* D.I. 30-1. However, Finjan *omitted* the '305 reexamination and the ongoing Federal Circuit appeal from its chart. Finjan should not now benefit from its omission.

Although Qualys learned of the Federal Circuit opinion shortly after its issuance in September 2019, at that junction Finjan could still seek an *en banc* rehearing or Supreme Court review. The last deadline for doing so elapsed in December 2019, less than three months before Qualys filed this Motion. And more importantly, the issuance of the Reexamination Certificate in January 2020 (only a month before this Motion) is the ***legal act*** by which the Patent Office formally canceled the Reexamination Claims. *See* 35 U.S.C. § 307 ("In a reexamination

proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director will *issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable*…).[2]  Before that certificate, the Reexamination Claims had not yet been finally canceled.

### 2. Finjan Has Not Shown Futility

Finjan's futility argument fares no better.[3]  Here, Qualys' preclusion defense is based on the Patent Office's cancellation of the '305 Reexamination Claims.  The Federal Circuit has explained that preclusion applies if the differences between the claims canceled during Reexamination (here, '305 claims 1, 2, 5, and 13, or the "Reexamination Claims") and the claims being asserted for infringement "do not materially alter the question of invalidity." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015); *see also Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (preclusion applies where the claims invalidated in the Patent Office use "slightly different language to describe substantially the same invention").  In other words, it is not required for Finjan to assert the *same claims* or claims with *identical* terms, as Finjan argues.  *See* Opp. at 4.  The Federal Circuit expressly rejected this argument.  *See Soverain Software*, 778 F.3d at 1319 ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion.").

Finjan fails to cite a single case from the Federal Circuit and ignores the authority that Qualys cited in its Motion.  Instead, Finjan cites non-binding authority from the District of Delaware and general Ninth Circuit cases reciting the overall standard for preclusion.  But it is Federal Circuit law that applies to "issues of issue preclusion that implicate substantive patent law issues." *Soverain*, 778 F.3d at 1319-1320.  In *Soverain*, for example, the Federal Circuit applied its own standards to determine that "[t]he invalidity of the asserted claims . . . is

---

[2] Unless stated otherwise, all emphasis in quotes is added.

[3] Finjan did not raise futility during the parties' meet and confer efforts.

1  established by issue preclusion." *Id.* at 1320.  Qualys' proposed Second Amended Answer
2  adequately pleads preclusion under *Soverain* by alleging that the asserted claims of the '305
3  Patent do not materially alter the question of invalidity.  This is sufficient to overcome Finjan's
4  futility arguments.  In any event, Finjan's argument that the Reexamination Claims differ in
5  scope with the asserted '305 claim is a factual argument properly the subject of fact and expert
6  discovery and not a basis for finding futility.

7  Finjan also argues that certain of the '305 Patent's claims were found valid in a separate
8  Patent Office proceeding before the Patent Trials and Appeals Board ("PTAB") in 2017.  As a
9  preliminary matter, Finjan's reliance on materials outside the pleadings is inappropriate.  *See*
10 *Nordyke v. King*, 644 F. 3d 776, 799 (9th Cir. 2011) ("In evaluating whether the district court
11 should have granted the [Plaintiffs'] motion for leave to amend, therefore, we look only to facts
12 pled in the Proposed Second Amended Complaint.").  Moreover, as with the Reexamination
13 proceedings, Qualys was not a party to the PTAB's proceedings.  Accordingly, the Court should
14 not consider the PTAB's 2017 opinion at the pleadings stage.

15 And even if the Court were to consider the PTAB materials submitted by Finjan, they do
16 not establish futility.  Indeed, other than noting the existence of this other proceeding, Finjan
17 says nothing about how that proceeding bears any relevance to Qualys' proposed preclusion
18 defense.  For example, Finjan does not identify the claims, the legal issues, or the invalidity
19 theories involved there.  That the Patent Office rejected some other invalidity argument in a
20 totally different proceeding says nothing about the preclusive effect of the Reexamination
21 proceedings at issue here.  It is also worth noting that this other proceeding concluded in January
22 2019, months before the Federal Circuit affirmed the invalidity of the Reexamination Claims and
23 a year before the Patent Office canceled those claims through the Reexamination Certificate.
24 Those proceedings, therefore, have no bearing on Qualys' preclusion defense.

25 In support of its futility argument, Finjan criticizes Qualys for "discuss[ing] only one
26 claim as supposedly immaterially different from an invalidated claim…". Opp. at 5.  But even if
27 only one asserted claim of the '305 patent were precluded by patent exhaustion, that would
28 constitute a non-futile affirmative defense.  Finjan cites no authority to the contrary.

### 3. Finjan Has Not Shown Prejudice

Finjan finally argues that it would be prejudiced in discovery by Qualys' preclusion defense. But Finjan fails to explain the nature of this prejudice, nor does it explain how permitting Qualys' amendment would materially increase Finjan's burden of discovery. Opp. at 7. For example, Finjan does not identify any particular claim of the '305 patent that it would have asserted had it known of the preclusion defense. In any event, discovery does not close for many months, no depositions have been taken, and there is no claim construction order.

Qualys' proposed preclusion defense is not futile, untimely, or prejudicial, and amendment allowing it should therefore be granted in the interests of justice.

### B. Qualys' Exhaustion/Implied License Defenses Are Not Futile, Untimely, or Prejudicial

#### 1. Finjan Has Not Shown Futility

As to exhaustion, Finjan does not dispute that [1] it previously authorized Trend Micro to sell its software to customers and [2] that it now accuses licensed Trend Micro software residing in Qualys' products of infringement. This alone shows Qualys' defense is not futile.

Instead, Finjan principally argues that the Trend Micro Agreement did not ████████ ████████████████████████████████████████ But Finjan's argument misapplies the law. Patent exhaustion focuses only on the nature of Finjan's authorization to Trend Micro. *See Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008) ("the initial authorized sale of a patented item terminates all patent rights to that item."); *Impression Prods. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523 at 1535 (2017) ("So long as a licensee complies with the license when selling an item, the patentee has, in effect, authorized the sale. That licensee's sale is treated, for purposes of patent exhaustion, as if the patentee made the sale itself. The result: The sale exhausts the patentee's rights in that item."). Because Finjan ████████████████ ████████████████████████████████, Finjan's patent rights with respect to any Trend Micro software in Qualys' products are exhausted. It is immaterial whether ████████ ████████████████████████

1  Finjan attempts to distinguish *Quanta* by ████████████████████████████
2  ████████████████████████████████████ Opp. at 9. This is a misstatement. In
3  *Quanta*, the patent owner (LGE) argued that patent exhaustion did not apply vis-à-vis its
4  licensee's (Intel) customer (Quanta) because the license at issue "specifically disclaimed any
5  license to third parties to practice the patents by combining licensed products with other
6  components." 553 U.S. at 637. The Supreme Court rejected this argument and held that it is
7  irrelevant ████████████████████████████████

> LGE points out that the License Agreement specifically disclaimed any license to third parties to practice the patents by combining licensed products with other components. Brief for Petitioners 8. But the question whether third parties received implied licenses is ***irrelevant*** because Quanta asserts its right to practice the patents based not on implied license but on exhaustion. And exhaustion turns only on Intel's own license to sell products practicing the LGE Patents.

*Quanta*, 553 U.S. at 637 (2008); *see also id.* ("The License Agreement authorized Intel to sell products that practiced the LGE Patents. No conditions limited Intel's authority to sell products substantially embodying the patents. Because Intel was authorized to sell its products to Quanta, the doctrine of patent exhaustion prevents LGE from further asserting its patent rights with respect to the patents substantially embodied by those products.").

Finjan also ignores the similar result reached in *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1276-1277 (Fed. Cir. 2009). There, the Federal Circuit examined a covenant not to sue. The *TransCore* covenant stated that "[TransCore] agrees and covenants not to bring any demand, claim, lawsuit, or action against Mark IV for future infringement...." *Id*. The Federal Circuit held that because the covenant permitted the licensee to sell its products to third party customers, patent exhaustion applied:

> This term, without apparent restriction or limitation, thus authorizes all acts that would otherwise be infringements: making, using, offering for sale, selling, or importing. TransCore did not, as it could have, limit this authorization to, for example, "making" or "using." And indeed, at oral argument, TransCore conceded that the TransCore—Mark IV settlement agreement does not include a restriction on sales.

*TransCore*, 563 F.3d at 1276; *see also id.* at 1277 ("As a result, the district court correctly found that Mark IV's sales to ISTHA were authorized and that TransCore's patent rights are

1  exhausted."). As in the *Quanta* case, the Federal Circuit reiterated that "The only issue relevant
2  to patent exhaustion is whether Mark IV's sales were authorized, ***not whether TransCore and***
3  ***Mark IV intended, expressly or impliedly, for the covenant to extend to Mark IV's customers***."
4  *Id.* ███████████████████████████████████████████████████████████████████
5  ████████ "irrelevant and could not impact the outcome." *Id.*
6  ███████████████████████████████████████████████████████████████████████
7  ███████████████████████████████████████████████████████████████████████
8  ███████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████ Here, as in those two cases,
10 Finjan ████████████████████████████████████████████████████████████████
11 ███████████████████████████████████████████████████████████████████████
12 ██████████ *See* D.I. 43-4, Trend Micro Agreement § 3.2 (████████████████
13 ███████████████████████████████████████████████████████████████████████
14 ███████████████████████████████████████████████████████████████████████
15 ███████████████████████████████████████████████████████████████████████
16 ██████████ But, Finjan went even further by ████████████████████████████
17 ███████████████████████████████████████████████████████████████████████
18 ██████████████████████████████████████
19 ███████████████████████████████████████████████████████████████████████
20 ███████████████████████████████████████████████████████████████████████
21 ███████████████████████████████████████████████████████████████████████.
22 D.I. 43-4, Trend Micro Agreement, § 3.5(b); *see also id.* § 1.12 ██████████
23 ███████████████████████████████████████████████████████████████████████
24 ███████████████████████████████████████████████████████████████████████
25 ███████████████████████████████████████████████████████████████████████
26 ███████████████████████████████████████████████████████████████████████
27 ███████████████████████████████████████████████████████████████████████
28 ███████████████████████████████████████████████████████████████████████

1   Finjan also characterizes its Agreement with Trend Micro as ▓▓▓▓
2   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Opp. at 8. This tortured
3   reading of the Trend Micro Agreement is inconsistent with its plain terms, which expressly states
4   that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
5   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ D.I. 43-4, Trend Micro Agreement § 3.5(c).
7   Stated differently, Finjan expressly authorized ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
8   ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id.* At a minimum,
9   Qualys should be permitted to explore in discovery the veracity of Finjan's interpretation of the
10  contract and alleged intent of the parties.[4]

### 2. Finjan Has Not Shown Undue Delay

Finjan's undue delay arguments are not credible. It argues that the agreement with Trend Micro was "a matter of public record since July 2018." Opp. at 9. The falsity of Finjan's statement is borne-out by Finjan's insistence that that the entirety of the Trend Micro Agreement be filed under seal in this action. *See* Declaration of James Hannah in Support of Qualys Inc.'s Administrative Motion to File Documents Under Seal, D.I. No. 46. According to Finjan's declaration, the agreement is "Highly Confidential – Attorneys' Eyes Only." Clearly, the Trend Micro Agreement was not a matter of public record.

Finjan also argues that Qualys and Finjan met and conferred regarding production of the Trend Micro Agreement in July 2019. Opp. at 9. Finjan omits, however, that—in direct violation of the Local Patent Rule 3(f)—Finjan had failed to produce "[a]ll agreements, including

---

[4] Finjan also argues that Qualys has been unable "to provide any documentation of any kind of contractual relationship between it and Trend Micro." Opp. at 8 n.2. But at the pleadings stage, plausible factual allegations are deemed true. In ¶ 309 of Qualys' Proposed Amended Answer, Qualys alleges that "[i]n 2011, Qualys and Trend Micro announced a business partnership and product integration. As part of this partnership, Trend Micro provided antivirus software to Qualys." As such, Qualys has pled that it is a "Partner" of Trend Micro. Regardless, Qualys contends that it has produced sufficient documents to demonstrate that its exhaustion-related defenses are not futile.

1  licenses, transferring an interest in any patent-in-suit." Finjan's production was due on April 19, 2019, yet three months later, Qualys still had not received all patent licenses. Finjan never sought relief from the Court to extend this deadline. Had Finjan complied with the Local Patent Rules and produced the Trend Micro license when it was obligated to do so, Qualys would have been in a position to assert the exhaustion and implied license defenses months earlier.

To that end, Finjan does not argue that Qualys unduly delayed in pursuing patent once it received a copy of the Trend Micro license. Qualys believed it was prudent to review the agreement in discovery before seeking to add this defense. Otherwise, Qualys would have no way of knowing which patents the license pertained to, whether the license had expired or was otherwise terminated, and whether Trend Micro was permitted to sell licensed products to its partners (like Qualys). Upon confirming that exhaustion and implied license were applicable, Qualys promptly began meeting and conferring with Finjan regarding the possibility of a stipulation for the proposed amendments.

### 3. Finjan Has Not Shown Prejudice

Finjan claims prejudice because it "elected its asserted claims and served infringement contentions in April 2019, nine months after it publicly announced its license with Trend Micro." Opp. at 9. As explained above, the Trend Micro license was not publicly available and apparently remains highly confidential to this day. Finjan was obligated to produce the Trend Micro agreement in April 2019, but failed to do so in violation of Local Patent Rule 3(f).

Additionally, Finjan fails to identify any harm or prejudice it has suffered, particularly given its own dilatory conduct. Specifically, Finjan provides no explanation for how it "could have taken [the implied licensing and exhaustion defenses] into account in selecting its claims and preparing its contentions" since Finjan had not even produced the Trend Micro Agreement to Qualys at that time. Opp. at 9. During the parties' extensive meet and confer, Finjan never indicated that it would be prejudiced by Qualys' proposed amendments. *See* D.I. 44-11 at 6. And, Finjan never requested leave to amend its infringement contentions to address the implied license and patent exhaustion.

### III. CONCLUSION

1  For the foregoing reasons, Finjan has fallen far short of showing "strong evidence" of undue delay, bad faith, dilatory motive, undue prejudice, or futility. Qualys respectfully requests that the Court grant its motion to amend.

DATED: March 20, 2020          By:  /s/ Christopher D. Mays
                                    _____
                                    CHRISTOPHER D. MAYS

                                    *Counsel for Defendant*
                                    QUALYS INC.