# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FINJAN, INC.,**<br>Plaintiff,<br>vs.<br>**QUALYS INC.,**<br>Defendant. | CASE NO. 4:18-cv-07229-YGR<br><br>**ORDER GRANTING DEFENDANT QUALYS INC.'S MOTION FOR LEAVE TO AMEND ANSWER AND AFFIRMATIVE DEFENSES**<br><br>Re: Dkt. Nos. 43, 44, 51, 54 |

Plaintiff Finjan, Inc. ("Finjan") brings this patent infringement action against defendant Qualys Inc. ("Qualys") for direct and indirect infringement of six of its patents. (Dkt. No. 1 ("Complaint").) Now before the Court is Qualys' motion for leave to amend its answer to add patent exhaustion, implied license, and preclusion as affirmative defenses. (Dkt. No. 44 ("Mot.").) Having carefully considered the pleadings and the papers submitted,[1] the Court **GRANTS** Qualys' motion for leave to amend.

## I.   BACKGROUND

Finjan initiated this action on November 29, 2018, accusing Qualys of infringing U.S. Patent Nos. 6,154,844 (the "'844 Patent"), 8,677,494 (the "'494 Patent"), 7,975,305 (the "'305 Patent"), 8,225,408 (the "'408 Patent"), 6,965,968 (the "'968 Patent"), 7,418,731 (the "'731 Patent"), and 8,141,154 (the "'154 Patent"). (Complaint ¶¶ 57-233.) Qualys filed its answer on January 23, 2019 and filed an amended answer on March 6, 2019. (Dkt. Nos. 17 ("Answer"), 26 ("FAA").) According to the scheduling order adopted in this case, fact discovery is set to close two months after the claim construction order, briefing for which is currently pending before the Court. (Dkt. No. 39 ("Amended Joint Schedule").)

---

[1] The Court finds the motion appropriate for resolution without oral argument and the matter is deemed submitted. Fed. R. Civ. P. 78(b); Civ. L. R. 7-1(b).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) permits a party to amend its pleading with leave from the court, which the court freely grants "when justice so requires."  The policy of granting leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  "In the absence of any apparent or declared reason" for denying leave, "the leave sought should, as the rules require, be 'freely given.'" *Id.* at 1052 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  All inferences are drawn "in favor of granting the motion" when deciding the motion.  *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

The Court considers five factors in ruling on a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of the amendment, and (5) whether the movant has previously amended its pleadings.  *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).  "Not all factors merit equal weight." *Eminence Capital*, 316 F.3d at 1052.  Prejudice is the "touchstone of the inquiry under rule 15(a)" and merits denial where, for example, amendment would require the opposing party to enter into "an entire course of defense" at a "late hour." *Id.*; *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  In addition, "[f]utility alone can justify the denial of a motion to amend." *Johnson*, 356 F.3d at 1077 (quoting *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003)).  In the absence of "strong evidence" of one or more of these factors, leave to amend must be granted.  *Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).

## III.   MOTION FOR LEAVE TO AMEND

Qualys seeks to add affirmative defenses of (1) patent exhaustion, (2) implied license, and (3) preclusion to its answer.  All three defenses pertain to the '305 Patent.  The first two defenses stem from a license agreement Finjan produced in September 2019, which shows that Finjan had licensed Trend Micro Inc. ("Trend Micro") the right to sell the '305 Patent invention.  (*See* Dkt. No. 44-5 ("Trend Micro License").)  As a customer of Trend Micro, Qualys claims that Finjan had exhausted its patent rights and granted Qualys an implied license in Trend Micro's software.

The preclusion (or collateral estoppel) defense stems from reexamination proceedings before the U.S. Patent and Trademark Office ("PTO") that cancelled as unpatentable unasserted claims 1, 2, 5, and 13 of the '305 Patent.  (*See* Dkt. No. 44-3 ("Reexamination Certificate").)  Qualys claims that the asserted claims of the '305 Patent are immaterially different from the cancelled claims and therefore invalid.  Notably, the litigation leading to the PTO's decision did not involve Qualys.

Finjan opposes Qualys' motion on the grounds of futility, undue delay, and prejudice.  The Court considers each of these factors in turn.[2]

### A. Futility

Finjan first argues that each of the proposed amendments would be futile.  In connection with the exhaustion and license defenses, Finjan claims that the Trend Micro license expressly exempted Qualys from any license rights.  With regards to preclusion, Finjan contends that the asserted claims are materially different from the cancelled claims and have been found valid in *inter partes* review ("IPR").  The Court analyzes the arguments below.

#### 1. *Patent Exhaustion*

Patent exhaustion limits the patentee's right to exclude by providing "that the initial authorized sale of a patented item terminates all patent rights to that item."  *Quanta Comp., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625 (2008).  Patent exhaustion extends to sales made by authorized licensees; "[s]o long as a licensee complies with the license when selling an item," the "licensee's sale is treated . . . as if the patentee made the sale itself" and the patent rights are exhausted.  *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1535 (2017); *see Quanta Comp.*, 553 U.S. at 636 (finding that patentee exhausted rights in products having components sold pursuant to an unconditional license to sell); *Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1370 (Fed. Cir. 2011) (focusing on "whether the sales were authorized").

Here, the Trend Micro License provided Trend Micro and its affiliates with a right to sell "any products," but conditioned that license to "no[t] apply to any Excluded Entity."  (Trend

---

[2] Because Qualys does not raise bad faith or prior amendments in its motion, the Court does not consider those factors.

1   Micro License §§ 3.2, 3.5.)  The list of excluded entities includes Qualys.  (*Id*. Appx. A.)  Finjan

2   thus argues that the agreement did not license Qualys.  However, a license is not required to use

3   validly purchased products; indeed, the patentee has no rights left to license in those products.  *See*

4   *Impression Prods.*, 137 S. Ct. at 1543 (after an authorized sale, "there is no exclusionary right left

5   to enforce").  Finjan also argues that the Trend Micro license applies only to Trend Micro's

6   products, not to Qualys' products, as the parties expressly noted.  (*See* Trend Micro License § 3.6.)

7   Again, that argument does not prohibit amendment.  In *Quanta Computer*, the Supreme Court

8   found patent exhaustion applied to products that combined licensed patented components with

9   other components.  553 U.S. at 637.  Although the license "disclaimed any license to third parties

10  to practice the patents by combining licensed products with other components," the restriction did

11  not (and could not) extend to purchasers.  *Id*.; *see also Impression Prods.*, 137 S. Ct. at 1534-35

12  (finding that the "patentee's authority to limit *licensees*" does not allow it "to impose post-sale

13  restrictions on *purchasers*" (emphasis in original)).

14      The Court need not resolve these legal disputes at this juncture.  Qualys' interpretation that

15  the Trend Micro License provides Trend Micro with an unconditional authorization to sell

16  patented products appears to be plausible.  The parties' dispute centers primarily on contract

17  interpretation—Finjan interprets the license agreement to restrict Trend Micro's ability to sell to

18  Qualys, and Qualys does not.  Given the plausibility, Qualys' amendment is not futile.  *See*

19  *Foman*, 371 U.S. at 182 ("If the underlying facts or circumstances relied upon by a plaintiff may

20  be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the

21  merits."); *Novak v. U.S.*, 795 F.3d 1012, 1020-21 (9th Cir. 2015) (denying leave to amend only

22  because amended claim would be subject to dismissal).

23              2.      *Implied License*

24      An implied license to practice a patent may arise "by virtue of legal estoppel."  *TransCore,*

25  *LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1278 (Fed. Cir. 2009).  If a patentee

26  has granted a definable property right in exchange for consideration "and then has attempted to

27  derogate or detract from that right," then the patentee is "estopped from taking back in any extent

28  that for which he has already received consideration."  *Id*. at 1279 (quoting *AMP Inc. v. U.S.*, 389

4

F.2d 448, 453 (Cl. Ct. 1968)). Thus, if a patentee has covenanted not to sue for infringement as part of a settlement agreement, it may not later derive the settlor of the benefit of the bargain by, for example, asserting other patents. *See id.*

As part of the Trend Micro license, Finjan covenanted not to sue Trend Micro or its "affiliates or company partners" for patent infringement by licensed products combined with third party products. (Trend Micro License § 3.5.) "Company partners" is defined to include companies involved in the development, operation, use, provision, or distribution of Trend Micro's products. (*Id*. § 1.12.) Although it is not clear how Qualys contends to be involved in any of those operations, the issue raises a possible defense. Accordingly, the argument does not support a finding of futile precluding amendment.

### 3. *Preclusion*

Collateral estoppel or issue preclusion prevents relitigation of an issue that is (1) "identical to [] one alleged in [] prior litigation," where it was (2) "actually litigated by the party against whom preclusion is asserted in the prior litigation" and (3) formed a "critical and necessary part of the judgment in the earlier action." *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996). A patent reexamination that determines claims to be invalid may preclude relitigation of other claims that present identical validity issues. *See Ohio Willow Wood Co. v. Alps S., LLC*., 735 F.3d 1333, 1342 (Fed. Cir. 2013). Here, claims 1, 2, 5, and 13 of the '305 Patent were cancelled as invalid by the PTO. (Reexamination Certificate at 2.) Qualys contends that the asserted claims of the '305 Patent are immaterially different from the cancelled claims. (*Compare* '345 Patent at Claim 2 (cancelled dependent claim), *with id.* at Claim 14 (asserted claim reciting identical language but depending on claim 13).) Finjan disagrees and points out the PTO did not find the asserted claims invalid in an IPR. *See Eset, LLC v. Finjan, Inc.*, IPR2017-01738, Paper 57 at 10 (P.T.A.B. Jan. 24, 2019). In light of the similarity between claims 2 and 14—and the PTO's finding that both independent claims 1 and 13 are invalid—Finjan fails to show "strong evidence" of futility for Qualys' amendment. The IPR proceedings (for which Qualys was not named a party-in-interest) found only that the grounds raised in the IPR did not demonstrate unpatentability. *See Eset*, IPR2017-01738, Paper 57 at 10. Here, again, the Court need not decide the issue at this juncture

5

and deny the amendment.[3]

### B.   Undue Delay

Finjan next argues that Qualys unduly delayed bringing its amendment. Undue delay requires examination not only of the scheduling order, but also "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). However, "undue delay by itself is insufficient to justify denying a motion to amend." *Owens*, 244 F.3d at 712-13. Here, Finjan argues that Qualys should have known about its license to Trend Micro based on publicity generated in July 2018. Finjan also argues that Qualys should have brought its preclusion defense earlier because the reexamination proceedings took place in 2018.

Although Qualys could have conceivably acted more quickly, the Court finds that its delay is not undue. Even if Qualys had known of the Trend Micro licensing agreement from news publications, the precise content of that license—including the nature of Trend Micro's right to sell—was not apparently known to Qualys until Finjan produced the license agreement under a protective order in this litigation. The six-month delay after the production of the license stems from the parties' attempts to meet-and-confer. As to the reexamination proceedings, Qualys was not unjustified in waiting until the PTO finished its proceedings (including related appeals) and issued a reexamination certificate. Even if the preclusive effect begins immediately, raising a preclusion defense prematurely would have only wasted the Court's and parties' time if the Federal Circuit reversed the decision on appeal. Following the issuance of the certificate, Finjan brought its motion within two months. Thus, the delay in this case does not appear to be undue as to justify denial of leave for an amendment.

### C.   Prejudice

Prejudice—the "touchstone of the inquiry" for leave to amend—fails to overcome the presumption that leave to amend is freely granted. Finjan's only articulated prejudice is that it

---

[3] The effect of the reexamination proceedings on the PTO's findings is not clear. Although the final decision notes the existence of the reexamination, the IPR found all claims—including the cancelled ones—to be not unpatentable. *See Eset*, IPR2017-01738, Paper 57 at 10, 50.

would have elected different claims had it known of Qualys' defenses. That argument is not plausible. Finjan already asserts all of the claims that the PTO did not find invalid during reexamination. (*Compare* Complaint ¶ 98 (asserting claims 3-4, 6-12, and 14-25 of the '305 Patent), *with* Reexamination Certificate at 2 (cancelling claims 1-2, 5, and 13).) Finjan fails to articulate any ways in which its infringement contentions would change in light of Qualys' defenses. The deadline for fact discovery has not passed and Finjan may still pursue investigation into Qualys' products. Accordingly, Finjan fails to show "strong evidence" of prejudice.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Qualys' motion for leave to amend its answer and affirmative defenses. The Court further **GRANTS** the parties' motion to seal in relation to this motion. This Order terminates Docket Numbers 43, 44, 51, and 54.

**IT IS SO ORDERED.**

Dated: April 13, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] The parties seek to seal certain narrowly-focused information related to confidential license agreements. *See* Dkt. Nos. 43, 51, 54. The Court applies the "good cause" standard for non-dispositive motions and **GRANTS** the motions to seal. *See Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2014 WL 6986068 (N.D. Cal. Dec. 10, 2014) (finding licensing information subject to sealing as harmful to competitive standing).