August 17, 2020

**VIA ELECTRONIC FILING**

Honorable Thomas S. Hixson
U.S. District Court, Northern District of California
San Francisco Courthouse
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:  Joint Discovery Statement
  *Finjan, Inc. v. Qualys Inc.*, Case No. 4:18-cv-07229-YGR

Dear Magistrate Judge Hixson:

  Pursuant to your Standing Order in Civil Cases, the parties submit the following joint statement regarding Plaintiff Finjan, Inc.'s ("Finjan") motion to compel Defendant Qualys Inc. ("Qualys") to provide technical and damages-related documents, supplemental interrogatory responses, and additional deposition dates for its fact witnesses. Finjan also requests that the Court overrule Qualys' objections to Finjan's expert disclosure. Qualys respectfully requests the Court to compel Finjan to produce all relevant litigation documents from related cases involving at least one of the patents-in-suit as set forth below.

  The parties attest that they met and conferred on these issues by teleconference on July 28, 2020, and further conferred by telephone and email on multiple occasions to attempt to narrow and resolve these disputes.[1]

              Respectfully submitted,

              */s/ Kristopher Kastens*
              Kristopher Kastens (State Bar No. 254797)
              KRAMER LEVIN NAFTALIS & FRANKEL LLP

              *Attorneys for Plaintiff*
              Finjan, Inc.


              */s/ Cristopher Mays*
              Cristopher Mays (State Bar No. 266510)
              WILSON SONSINI GOODRICH & ROSATI

              *Attorneys for Defendant*
              Qualys Inc.

---

[1] Due to the COVID-19 pandemic, the parties met and conferred by teleconference in order to satisfy the in-person meet and confer requirement for discovery dispute resolution under the Court's Standing Order.

**Finjan's Position**
**A. The Court Should Compel Qualys to Produce Technical Documents.**

Qualys should be compelled to produce confidential technical documents. Early in discovery, Finjan requested production of specifications, architecture diagrams, flow charts, and similar development documents (*see, e.g.*, Ex. 1 (Requests for Production Nos. 13, 16, 17)). These are highly relevant to the accused products. They are also standard production in patent cases involving software. Qualys initially claimed to be unaware if such documents existed or where to look for them. Finjan then learned that Qualys maintains several repositories with these documents. Qualys claimed it was incapable of searching these repositories (*see* Ex. 2, T. Gordnia email dated May 22, 2020, stating that it was "not possible" for Qualys to search its own repositories), but agreed to allow Finjan to search them on the source code review computer. Finjan did that, and identified scores of highly relevant, technical documents. Not being permitted to export documents from the source code computer, which has severe restrictions and requires in person access. Finjan identified responsive documents for Qualys to produce on July 1, 2020. Although production of these documents requires nothing more than printing them, Qualys has not produced them. Qualys now states that it is withholding these documents, which are not emails, until the parties exchange ESI the week of August 17. Qualys states it will produce these document, but Finjan is required to include it in this letter because Qualys has continually broken previous discovery agreements.

**B. The Court Should Compel the Damages-Related Discovery Sought by Finjan.**

Qualys should be compelled to produce damages related discovery that it has been withholding for months, even after Qualys agreed to produce the material.  In particular, Finjan seeks production of documents showing billings/revenues, sales and revenue forecasts, market analyses, surveys, competitive analyses, development costs, marketing costs, valuations, bundling, pricing, and documents showing the extent of use. *See, e.g.*, Ex. 1 (Finjan's Requests for Production Nos. 23, 24, 26, 27, 30, 33, 34, 57, 62, and 63).  This is fundamental damages discovery, which Qualys has refused to produce and has not basis to withhold.  So far, Qualys has provided nothing except some public SEC filings and a single incomplete spreadsheet.

Qualys should also be compelled to supplement its responses to interrogatories asking for financial information.  For these, Qualys relies only on a 33(d) response to the nine public SEC filings and a single spreadsheet it did produce. *See* Ex. 3 (Qualys' Responses to Interrogatory Nos. 3 and 6) and Ex. 4 (Qualys Response to Interrogatory No. 8). However, this is insufficient at least because the spreadsheet has over 500 unidentified SKU numbers and there is no way to tie the SKU numbers to the specific products because there is no description regarding what is provided in this sheet other than a column heading that appears to be for a quarter and year. Qualys should be compelled to identify the products for these SKUs.  That Qualys confirmed its witness can do this shows this information is readily available to Qualys.  Qualys' Rule 33(d) citation is improper because the documents cited do not provide all of the requested information and provides no explanation for what it did provide. Fed. R. Civ. P. 33(d). For example, the spreadsheet does not identify the region covered, revenues, units, number of users, profit etc. Only Qualys has the requested data so its response is deficient.

When Finjan pressed Qualys to provide this discovery in February, Qualys agreed to search for responsive documents, supplement its interrogatory responses, and look into providing a key to identify the products that correspond to the myriad SKUs.  Five months later, Qualys changed its mind and informed Finjan that it was reneging on its prior agreement, and that Finjan should wait for explanations at a deposition next month.  This is highly improper because Finjan

is entitled to have the opportunity to examine this information well before any deposition, and is liable to waste the majority of its deposition going through a list of 500 SKUs. Additionally, Qualys failed to identify the sales, revenue, cost and profits for each accused instrumentality pursuant to Patent L.R. 3-1(b) and did not cite to a single document for this information in its contentions. *See* Patent L.R. 3-4(d); Ex. 5 at 93-94.  After receiving Finjan's half of this letter, Qualys changes position again, stating for the first time that it has located additional information but that it will be forthcoming in ESI. However, Qualys still cannot confirm that this production is complete, and it is doubtful that the only responsive financial information or documents Qualys has for the accused products are public SEC filings and a single spreadsheet.

**II. The Court Should Overrule Qualys' Objections to Dr. Cole.**

Qualys objected to Finjan's expert, Dr. Cole, having access to its confidential information because he provided a 45-minute Webex presentation on identify management.  *See* Ex. 6 (K. Kastens email dated 7/13/2020). This limited, single engagement did not include confidential information and does not give any rational basis for objection. Indeed, Qualys declined to accept a declaration from Dr. Cole stating that he has no plans to consult with the company he provided the presentation to in the future.  As such, the Court should overrule Qualys' objection.

Qualys also objects to Finjan having more than two experts review its source code computer.  No such limitation is included in the protective order in this case.  *See* Dkt. 34. Qualys' limitation is unreasonable due to the number of patents in this case and the fact that source code is relevant to issues beyond infringement, such as validity and damages.  Finjan proposed a compromise to limit the number of experts to **four**, with the caveat that other experts bound by the protective order may review source code printed for production and/or included in another expert's report.  Four experts is appropriate given that there are 7 patents in the case, requiring two infringement experts and two validity experts (a common practice in patent cases). Qualys offers no justification to not allow four experts, and only makes a generic claim that its source code is highly proprietary, which is true in every patent case involving software.  The Court should overrule Qualys' objections and allow four experts. If the Court considers limiting experts, then Qualys should be required to agree that it will not challenge Finjan's expert based on them not reviewing the source code in person.

**III. Finjan Agreed to a Reasonable Production of Litigation Documents From Other Cases**

Qualys' request for Finjan to produce litigation material should be denied.  Finjan has already produced thousands of documents from prior cases including: deposition transcripts, discovery responses, hearing transcripts, invalidity contentions, infringement contentions, and trial transcripts. Finjan has also produced many expert reports from prior litigations, including certain confidential expert reports where third parties have provided consent under the protective order. Qualys knows full well that Finjan is continuing its effort to clear and produce additional confidential reports (the only exception being infringement reports subject to a previous letter). *See* Ex. 6 (K. Kastens email dated 7/17/2020). Finjan understands Qualys' complaint to be that Finjan is taking too long to produce what it vaguely refers to as "litigation documents." However, Qualys is responsible for any delay. First, Qualys failed to identify a consistent set of "litigation documents" it seeks from the third parties, which has continued to shift (even while exchanging drafts of this letter) and appears to vary by party, even for parties whom Qualys knew consented to only a specific list of documents months ago. *See, e.g.*, Ex. 7. Second, Finjan is obligated under Section 11 of the protective order to clear the third party confidential

information sought by Qualys, which often necessitates sending the documents to the third parties for inspection (and this process repeats when additional documents are identified). Finjan has sent scores of emails to third parties to negotiate the production of their confidential information, and put Qualys in touch with many of these third parties to help speed the process, as many had concerns permitting Qualys to share their confidential information with designated in-house counsel under the protective order. While Qualys complains of delay, its refusal to engage in timely discussions with some of these third parties is telling. *See, e.g.*, Ex. 8 (Qualys permitting over 3 months to pass before engaging), Ex. 9 (Qualys allowing 4 months to pass, just days prior to filing this letter, before confirming to Finjan that it had negotiated the scope of documents to be produced with certain third parties, which has still not been provided to Finjan); *see also, e.g.*, Ex. 10 (D. Williams email to C. Mays dated 8/10/2020).

Even during the drafting of this letter, Qualys has changed the list of documents it seeks. While Finjan does not object to production of all but the infringement expert reports and related expert deposition transcripts, the other documents listed are duplicative of material already provided or are available on the public docket. Therefore, for most of these documents, Finjan only asked that Qualys identify the specific documents it seeks so that Finjan can seek third party consent once more.  None of the cases cited by Qualys required indiscriminant production of litigation documents without consideration of the confidential rights of third parties. *See, e.g.*, Finjan, Inc. v. ESET, LLC, No. 17CV183 CAB (BGS), 2018 WL 5263243, at *6 (S.D. Cal. Oct. 23, 2018) (denying motion to compel third party confidential information because of "minimal relevance" and burden of redacting). Qualys' request should therefore be denied, or if granted, should include a cost shifting providing where Qualys pays for the burden in producing the documents.

## QUALYS'S POSITION

### I. Finjan's Motion to Compel is Unfounded

As described below, Finjan's motion to compel is unfounded, moot, and should be denied.

### A. Qualys Already Agreed to Produce the Requested Technical Documents

Qualys has never withheld any of the documents that are the subject of this motion. This is simply Finjan's attempt to detract from the fact that Finjan has affirmatively withheld a host of relevant documents from related litigations for over a year (see discussion below). The record reflects that the subject documents are part of third party ESI repositories. Qualys made the ___*entirety*___ of these repositories available for inspection months ago, and Finjan continues to have complete access to these documents today. After Finjan made an inspection, it requested several gigabytes worth of documents be produced. Qualys has informed Finjan that it is processing these various ESI requests and expects to complete production of them in the week of August 17. *See* Qualys Ex. A. Tellingly, Finjan has stated that it plans to produce its own ESI on August 14, only a handful of days before Qualys.

### B. Qualys Has Produced Relevant Damages-Related Discovery

As Finjan concedes, Qualys has produced sales, revenue, cost, and profits information for each of the accused instrumentalities for the relevant damages period via the spreadsheet and its 10-Ks. Finjan's complaint that Qualys has not produced sufficient financial documents hinges on its assumption that Qualys maintains the specific types of records Finjan demands. Tellingly, Finjan improperly focuses on the types of documents rather than the information sought. For example, Finjan's complaint that Qualys did not produce cost documents is false as Finjan admits that Qualys has produced its SEC filings, which specifically disclose Qualys's costs. *See* Qualys Ex. B (QUALYS00030017-114, Qualys 10-K for 2012). Additionally, Qualys is in the process of producing other financial information as part of its ESI production and has already informed Finjan that it will produce such documents the week of August 17. *See* Qualys Ex. A. Moreover, Finjan's assertion that the forthcoming financial information is not ESI is unfounded and inaccurate. Finjan has taken no depositions in this case to date, and so has no basis other than sheer speculation for making it.

Finjan also takes issue with Qualys's interrogatory responses, focusing on a single financial spreadsheet that shows bundled package of sales (a category of information Finjan specifically requested). Finjan neglected to tell the Court that Qualys's interrogatory responses also cite several additional financial documents, and Finjan fails to show that Qualys' responses in their entirety are deficient. In any event, Finjan's complaint that it is unable to interpret the spreadsheet is an issue that is more suitable for a deposition. The document at issue identifies bundled product sales as Qualys identifies them in the ordinary course of its business. These bundles are coded using clear product and/or package abbreviations (indeed, Finjan used many of these abbreviations itself in its infringement contentions). Despite Finjan's speculative protests otherwise, no "key" exists for these abbreviations. However, to the extent Finjan has questions about such abbreviations, a deposition of an informed witness should quickly resolve the issue, just the same as a deposition covering any other sort of voluminous financial documents.

### II. Qualys Objects to Dr. Cole Having Unlimited Access to Qualys's Source Code Repository

Qualys objects solely to granting Dr. Cole ("Cole") unlimited access to Qualys's source code repository. Finjan's two other technical experts (Drs. Medvidovic and Goodrich) already have full access and spent dozens of hours identifying the code relevant to Finjan's infringement

contentions. *See* Qualys Ex. C (Finjan's Response to ROG 7) (redacted excerpt). Qualys has agreed that Cole may access the files identified by these experts and any of Qualys's experts. Given this agreement, it is not reasonably necessary for Cole to access the repository. Indeed, those two other experts have spent dozens of hours reviewing the code and have already identified those portions that Finjan contends are relevant to its allegations. There is simply no need for a third expert to have such unfettered access to the source code repository.

Further, granting Cole access is particularly problematic because he has provided (and may again in the future) consulting services for Qualys's competitors in the last five years. Finjan admits that Cole has provided "security consulting" for at least one company that "develops, markets, and supports a family of . . . vulnerability management products." Qualys Ex. D at 1. This is the field in which Qualys competes, and Qualys's Vulnerability Management® software is accused in this case. Qualys requested that Cole agree to not provide any such security consulting services to any Qualys competitor for a period of two years from the date his engagement in this matter ends. Cole refused but offered a declaration stating he has no *present* intention to do future work in the VM field. But such a declaration is meaningless as Cole remains free to change his mind at any time. Permitting Cole unfettered access to the entirety of Qualys's source code given his past and potential future work for Qualys's competitors is unreasonable, particularly since Finjan has other experts with access and given Qualys's agreement to allow Cole to review code identified by Finjan's other experts.

### III. Finjan Should Produce Relevant Litigation Documents from Related Cases Involving the Same Patents-in-Suit

Qualys asks the Court to compel Finjan to produce prior expert reports, expert deposition transcripts, Finjan fact witness deposition transcripts, summary judgment motions, *Daubert* motions, *in limine* motions, pre-trial filings, and post-trial submissions/motions (along with all exhibits and orders thereto). Qualys has sought these documents since March 2019. *See* Qualys Ex. S at 22-23; *see* Qualys Ex. E (September 2019 meet and confer letter seeking the same). Finjan has present one excuse after another for the delays, and now claims to withhold them due to third-party confidentiality issues. *See* Qualys Ex. F. This is a smokescreen: First, the protective order in this case is adequate to resolve any such concerns. Second, Finjan itself obtained permission from most defendants several months ago. *See* Qualys Exs. G-I (showing third parties consenting to production); Qualys Ex. J; Qualys Ex. K. Finjan has recently taken to contacting those third parties again to seek "new" consent, clearly seeking to undermine previous agreements to produce. *See* Qualys Exs. Q-R (confirming that Qualys is not seeking any third-party materials other than those previously agreed upon). Finjan also inexplicably delayed contacting other defendants until only recently. *See* Qualys Ex. L.[2]

Finjan is also wrong that Qualys has changed the scope of its requests. For over a year, Qualys has sought these documents. Indeed, in April 2020 (a year after Qualys served RFP 16), Finjan finally contacted third parties to inform them of Qualys's document request, and specifically identified many of the documents at issue here. *See* Qualys Ex. Q at 7 ("the documents sought by Qualys generally include expert reports, deposition testimony, and licensing/settlement negotiations."). And, Qualys's repeated letters could not have been clearer as to the documents sought. *See* Qualys Ex. E; Qualys Ex. M. If anything, Qualys has **narrowed** its requests from the

---

[2] Finjan's claims that Qualys has refused to engage in discussions with third parties is wrong. Qualys has reached agreement with many third parties, yet Finjan has demonstrated that it is willing to go to great lengths to avoid producing a complete set of documents from relevant litigations.

language of RFP 16 since, as noted above, Qualys is moving on only specific sets of documents. Finjan's claim that Qualys has not previously requested and/or changed the scope of its requests is demonstrably untrue.

     Further, the documents Qualys seeks are highly relevant given the overlapping subject matter and issues between this case and the related litigations (namely, the same or related patents as well as many of the same defenses, including invalidity, unclean hands, inequitable conduct, and others). To give one telling example, Finjan continues to withhold every single report and deposition for every single one of its three disclosed technical experts, Cole, Medvidovic, and Goodrich, and produced deposition transcripts for many of its own fact witnesses in heavily redacted form and omitting many exhibits. This is a clear attempt by Finjan to shield its witnesses from potential cross examination and impeachment. This is a frequent strategy of Finjan, who has been ordered to produce similar documents in many other cases after repeated attempts at stonewalling. *See* Qualys Ex. N (*Finjan, Inc. v. SonicWall, Inc.,* No. 17-CV-04467-BLF(VKD), Dkt. No. 273 (N.D. Cal. July 21, 2020)). And, Finjan has been repeatedly ordered to produce expert reports in cases with overlapping patents as here. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 5:13-CV-03999-BLF, Dkt. No. 121 at 1 (N.D. Cal. Oct. 29, 2014) (Qualys Ex. O); Dkt. No. 108 at 8 (N.D. Cal. Oct. 9, 2014) (Qualys Ex. P); *Finjan, Inc. v. ESET, LLC*, 2018 WL 5263243, at *5-6 (S.D. Cal. Oct. 23, 2018). Qualys therefore respectfully requests the Court to compel Finjan to produce these documents.

- 7 -

## **ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

*/s/ Kristopher Kastens*
Kristopher Kastens
