UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>QUALYS INC.,<br><br>   Defendant. | Case No. 18-cv-07229-YGR (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 79 |

  The parties have filed a joint discovery letter brief raising three issues: (1) Finjan's request for Qualys's foreign sales data, (2) whether Finjan has exceeded the limit of 25 interrogatories, and (3) whether Finjan should be required to produce all expert reports from prior and pending lawsuits involving one or more of the patents-in-suit in this case. ECF No. 79. The Court held a hearing on August 20 and now issues this order.

  Let's start with foreign sales. The Court finds Finjan's arguments too cursory to satisfactorily evaluate them. In a single sentence with no factual support or case law, Finjan argues that Qualys's worldwide sales are part of the relevant royalty base because they infringe under the "making" prong of 35 U.S.C. § 271(a). And then in the next sentence, Finjan says that the Court need not decide the issue. This leaves the Court unsure if Finjan is really making this argument. If Finjan is going to press this point, it must assert a well-developed argument and not just make a conclusory assertion.

  Next, Finjan asserts that even if the foreign sales do not infringe, they are relevant to the reasonable royalty inquiry and "other issues in this case, including Finjan's claims for induced infringement under 35 U.S. § 271(a)." But . . . how? Courts have split on the relevance of foreign sales, *compare Polaris Innovations Ltd., Kingston Tech. Co., Inc.*, 2017 WL 3275615, *5 (C.D.

Cal. Feb. Feb. 14, 2017), *with Kajeet, Inc. v. Qustodio*, LLC, 2019 WL 8060078, at *13 (C.D. Cal. Oct. 22, 2019), so proclaiming the evidence relevant and citing a case that goes your way is not a persuasive argument when your opponent announces the opposite and cites a case going their way. Finjan needs to put some sentences together that actually explain theories of relevance in a logical way. For example, if Finjan thinks that foreign sales are part of the relevant royalty base, then Finjan must also explain why the royalty base should include activities that do not constitute patent infringement. If Finjan thinks foreign sales are relevant to induced infringement, it must explain why that is so. And if there are "other" issues in the case to which foreign sales are relevant, Finjan must say what they are and explain that too. While the Court has a vivid imagination, it should not be in the position of having to guess what Finjan's theories of relevance are. Also, as to the Rule 30(b)(6) depo notice, Finjan must state which topics are at issue in this motion.

The Court orders the parties to file a further joint discovery letter brief within 14 days, not to exceed five pages, in which they address the above issues.

The second issue – whether Finjan has exceeded "25 written interrogatories, including all discrete subparts," Fed. R. Civ. Proc. 33(a)(1) – is one of those recurring discovery disputes that seem to come up all the time in patent cases. Both sides cite *Erfindergemeinschaft Uropep GbR v. Eli Lilly & Co.*, 315 F.R.D. 191 (E.D. Tex. 2016), a leading decision on that issue. In addition, Magistrate Judge Ryu wrote a lengthy decision in *Synopsys, Inc. v. ATopTech, Inc.*, 319 F.R.D. 293 (N.D. Cal. 2016), surveying the case law on this issue, and concluding that it is not all consistent. This Court generally follows both of these decisions without repeating their lengthy analysis but tailors its approach to the arguments set forth in the parties' letter brief in this case. For example, Judge Ryu noted that there can be disputes about whether a single interrogatory that asks about all accused products or all patents-in-suit should be construed as one interrogatory per accused product or patent-in-suit. The answer may depend on how similar the accused products or patents-in-suit are to each other. *See id*. at 295-96. In the letter brief, however, Qualys does not

advance such an argument.[1] While Qualys does generally contend that Finjan's interrogatories have impermissible subparts, it does not make any assertions that the accused products or patents-in-suit are sufficiently different from each other that they should be considered different topics. Judge Ryu also noted that there can be a dispute about whether an interrogatory that asks about facts, people who know the facts, and documents that reflect the facts is one interrogatory or three, concluding that it is one if the facts, people and documents all relate to the same primary question. *See id*. at 297. The Court follows that holding and rejects Qualys's argument to the contrary. The real issue, then, is whether any of Finjan's interrogatories cover more than one primary subject.

Let's start with interrogatory 1. The Court thinks it is fair to pair the date of first awareness of the asserted patents with at least some action taken in response, since first awareness seems like only part of a primary subject. But the assessment of the validity or enforceability of the patents is a totally different subject from infringement or design around. A litigant could tell a complete story about everything it did to avoid infringement liability without even mentioning invalidity defenses. And vice versa. This counts as two interrogatories.

Interrogatories 2 and 3 each count as one interrogatory. Although they each seek a lot of information, they are each focused on an easily discerned primary subject. The Court concludes the same for interrogatories 5, 6, 7, 8, 9, 10, 12, 18 and 19. Interrogatory 11 looks superficially like it covers different subjects, but in reality, stating the legal and factual basis for a damages calculation does embrace all of the listed subjects, so this is just one interrogatory. Interrogatory 13 is one of the familiar "each patent" and "each accused product" interrogatories, but as noted, Qualys did not make any assertion in the letter brief that the asserted claims, asserted patents, or accused instrumentalities are sufficiently different from each other with respect to the questions being asked that they should be considered different topics, so the Court will count this as one interrogatory. For the same reason, the Court will deem interrogatories 14 and 15 each as one interrogatory.

---

[1] Asserting an objection in a written response to a discovery request is not sufficient to preserve it in the face of a motion to compel. Rather, in opposing a motion to compel, a litigant must assert arguments in its written briefing for them to be considered by the Court.

3

However, interrogatory 4 is two interrogatories. Most of the interrogatory asks about infringement, specifically, where the accused instrumentalities show up in the source code. But then it asks which portions of the source code are prior art to the patents-in-suit. As with interrogatory 1, the Court believes that infringement and invalidity are different primary subjects.

At oral argument, Finjan modified interrogatory 16. It initially seemed to ask about three primary subjects: licenses for the asserted patents, licenses for the accused instrumentalities, and licenses that Qualys contends are relevant to the evaluation of a reasonably royalty. As a matter of common sense, it is hard to understand why Finjan would want to know about any licenses in the first two categories if they are not within the third, and Finjan clarified that, no, it doesn't want that. As modified, interrogatory 16 asks Qualys about license agreements related to the technology of the asserted patents or accused instrumentalities *and* that Qualys contends are relevant to the evaluation of a reasonably royalty. This is one interrogatory.

Interrogatory 17 – "Describe in detail the complete legal and factual basis *for each affirmative defense* that Qualys has asserted in this litigation . . ." (emphasis added) – is more than one interrogatory. Technically, Qualys asserts 13 affirmative defenses, *see* ECF No. 26, so there would be some logic in saying this is 13 interrogatories. However, that would leave Finjan victim to the whimsy of Qualys's pleading practices. Qualys pleads invalidity for each patent in a single affirmative defense (its third) but then pleads inequitable conduct in separate defenses for each patent (its tenth, eleventh and twelfth defenses). Further, Qualys's thirteenth affirmative defense (unclean hands) overlaps entirely with its tenth and eleventh affirmative defenses such that these are not really separate topics. The Court thinks that Qualys's affirmative defenses reflect 10 primary subjects: failure to state a claim, non-infringement,[2] invalidity, limitations on damages, 28 U.S.C. § 1498, failure to mark, ensnarement, prosecution history estoppel, prosecution laches, and inequitable conduct. Thus, this is 10 interrogatories.

Accordingly, modified interrogatory 16 actually amounts to interrogatory 18. Therefore,

---

[2] Failure to state a claim and non-infringement are not really affirmative defenses, of course, but Qualys pleaded them as such, so the Court interprets interrogatory 17 to ask for the legal and factual basis for those arguments.

the last seven interrogatories were interrogatory 17 as it was directed to the affirmative defenses concerning failure to state a claim, non-infringement, invalidity, limitations on damages, 28 U.S.C. § 1498, failure to mark, and ensnarement. With that, Finjan is out of interrogatories.

Please note that the parties briefed only the question of whether Finjan has exceeded the allowed number of interrogatories. The parties did not brief the merit of any of these discovery requests, and the Court has not decided that.

We now turn to the expert reports. Finjan resists producing expert reports in other cases involving one or more of the patents-in-suit for reports that contain infringement analysis. It is not refusing to produce reports that reflect invalidity analysis. Finjan's relevance argument is that the infringement reports describe how third-party products infringe on the patents-in-suit, and those products are not at issue in this case. While it is true that the third-party products are not relevant to this lawsuit, the Court disagrees that an infringement analysis describes only the accused products. An infringement analysis also typically describes how the expert interprets the scope of the patents and claims, has definitions of a person of ordinary skill in the art, and discusses other issues not strictly limited to discussions of the accused product.

Further, Qualys asserts that the parties' experts in this case have been experts in previous cases involving the same patents-in-suit. It is certainly relevant to see an expert's prior opinions about the same patents. Indeed, Qualys says that one of its own experts doesn't even have his own report from a prior case – only Finjan has it. It is unfair for Finjan alone to possess such potential cross-examination material and not provide it to Qualys.

For all these reasons, the infringement reports are relevant. The Court observes that precedent in this district has gone even further, adopting a presumption of relevance for *all documents* produced in another case if the patents in the two cases share a technological nexus. *See Apple Inc. v. Samsung Elecs. Co. Ltd.*, 2013 WL 3246094, *20 (N.D. Cal. June 26, 2013).

As to burden, Finjan says there are about 30-40 infringement reports at issue. Finjan's counsel have nearly all of them stored on their law firm's computer servers due to their long-standing representation of Finjan, so the burden for them is just copying some easily identifiable electronic files. It is unclear if there is any meaningful burden on the affected non-parties. At

least one non-party just sent a quick email telling Finjan to designate its documents as AEO in this action, *see* ECF No. 81, Ex. B, so that was not a burden.

The Court orders Finjan to produce the infringement reports. It should do so using the procedure set forth in section 11 of the protective order in this case, *see* ECF No. 34, which is specifically designed for the scenario in which a discovery request calls for documents that possess a non-party's confidential information, as these reports presumably do. It requires Finjan to give notice to the non-party and gives the non-party an opportunity to seek a protective order. Non-parties are also free to designate the reports in their case as HC-AEO under the protective order in this case. They may also wish to redact certain portions of the expert reports that refer to the non-party's technology, if Qualys is willing to live with those redactions.

**IT IS SO ORDERED.**

Dated: August 21, 2020

THOMAS S. HIXSON
United States Magistrate Judge