September 4, 2020

**VIA ELECTRONIC FILING**

Honorable Thomas S. Hixson
U.S. District Court, Northern District of California
San Francisco Courthouse
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     Joint Discovery Statement
        *Finjan, Inc. v. Qualys Inc.*, Case No. 4:18-cv-07229-YGR

Dear Judge Hixson:

   Pursuant to the Court's order (Dkt. 89), the parties submit the following joint statement regarding Plaintiff Finjan, Inc.'s ("Finjan") motion to compel Defendant Qualys Inc. ("Qualys") to provide worldwide sales for the accused products.

                              Respectfully submitted,

                              */s/ Kristopher B. Kastens*
                              Kristopher Kastens (State Bar No. 244979)
                              KRAMER LEVIN NAFTALIS & FRANKEL LLP

                              *Attorneys for Plaintiff*
                              Finjan, Inc.


                              */s/ Cristopher D. Mays*
                              Cristopher D. Mays (State Bar No. 266510)
                              WILSON SONSINI GOODRICH & ROSATI

                              *Attorneys for Defendant*
                              Qualys Inc.

**Finjan's Position**

The Court should order Qualys to produce discovery into financial information for overseas sales of accused products that were developed, tested, assembled, and/or compiled, in whole or in relevant part, in the U.S.[1]

***Qualys' Financials for Products Developed, Assembled, Compiled in the U.S., as well as Sold or Distributed from the U.S. is Discoverable Regardless of the Customer's Location***

Discovery responses indicate that Qualys develops its cloud-based platform in California, and all Qualys accused products utilize that platform, which is accused of infringement. *See* Ex. 2 at 9-10 (Resp. Interrog. 5); *see also, e.g.*, Ex. 3 (LinkedIn Profile of California-based employee). Thus, Qualys' infringing cloud-based platform, made in and managed from the U.S., services Qualys and customers worldwide. Discovery also indicates Qualys has a California based contractor that manufactures, assembles and tests accused appliances, including appliances sold outside the U.S. Ex. 2 at 9-10; *see also*, Ex. 4 at QUALYS00030027. Qualys also ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 5 at QUALYS00883693; Ex. 6 at 28. Qualys does not dispute that it compiles code inside the U.S. to create computer readable program code, or that it directs the loading this code on infringing systems in the U.S. to service customers outside the U.S. This likely meets the "making" requirement for each asserted claim, and certainly meets it for Finjan's claims directed to a "computer readable medium." Ex. 7 (Finjan's infringement contentions for asserted computer readable media claims). *Centillion Data* is inapposite because, unlike here, the claims required a "personal computer processor means" that was not provided until the code was installed. *Microsoft* actually supports Finjan's position, because after Qualys compiles the code, it is expressed as a computer readable copy so that the compiled version can be read by a computer.

Qualys's dispute is also premature. Whether Qualys infringes by domestically "making" in these instances is a central dispute not ripe in a discovery motion. In cases presenting attempts to argue that infringement requires extra steps, the Federal Circuit has rejected arguments like Qualys's. *E.g.*, Silicon *Graphics, Inc. v. ATI Techs., Inc.*, 607 F.3d 784, 794 (Fed. Cir. 2010) ("Where, as here, a product includes the structural means for performing a claimed function, it can still infringe . . . apart from the operating system that is needed to use the product."); *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1371–74 (Fed. Cir. 2019) (reversing SJ of no infringement due to fact questions about identity of final assembler). Because discovery indicates a likelihood of domestic infringement, Finjan is entitled to discovery into the economic effects, including overseas. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984), confirms domestic infringement can lead to royalties on overseas sales: "Whether [certain domestically made] carsets were sold in the United States or elsewhere is [ ] irrelevant, and no error occurred in including those carsets among the infringing products on which the royalty was due." *Id.* Additional authority is replete. *See, e.g.*, *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. CV 04-1371 LPS, 2018 WL 4804685, at *1-2 (D. Del. Oct. 4, 2018); *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 218CV00014-JRGRSP, 2019 WL 4392525, at *5 (E.D. Tex. June 11, 2019); *Polaris Innovs. Ltd. v. Kingston Tech. Co., Inc.*, Case No. CV 16-00300, 2017 WL 3275615, at *5 (C.D. Cal. Feb. 14, 2017).

---

[1] Qualys has refused to provide discovery into foreign financial information (Finjan's Letter Brief, Dkt. No. 79 at 2), and has also refused to provide a witness on Topic Nos. 23, 26 and 29 regarding foreign sales activity. Ex.1, Qualys Objections to 30(b)(6) Notice, at ¶ 15 and Topic Nos. 23, 26, and 29 (limiting deposition to U.S. activity).

Qualys's repeated assertion that Finjan's contentions preclude this discovery misread those contentions and mistake their role. Nothing in Finjan's contentions limits, as Qualys wrongly contends, Finjan from demonstrating that in addition to infringing by *use* (i.e., in a networked environment), Qualys also infringes by domestically *making* the technology (through development, compilation, testing, assembly, etc.) or having it made. Further, the Court's Patent Rules permit Finjan, upon a timely showing of good cause, to amend contentions, and good cause includes "recent discovery of nonpublic information," such as information about Qualys's internal activities. It is to develop exactly that nonpublic information that Finjan seeks this discovery. Denying it on the basis that the contentions have not yet fully developed the case would put Finjan in the impossible situation of being unable to update contentions, because it is unable to receive nonpublic information, because it has not yet updated contentions.

The Court queried whether foreign sales were discoverable if they "do not infringe." ECF #89 at 1. Finjan confirms it is not seeking discovery on products with no colorable infringement. Its request is limited to products with U.S. development, testing, compilation, or assembly, which may be infringement. Because discovery indicates Qualys has so infringed, Finjan is entitled to learn the associated economic impact for setting both royalty rate and base.

***Qualys' Domestic "Use", "Offers for Sale" and "Sales" of the Patented Technology Make Financial Information Relating to Overseas Customers and Sales Discoverable***

Qualys also "uses" the accused products in the U.S. for its foreign customers, users and subscribers (collectively "customers") because it owns and operates the U.S.-based servers the within the U.S. that run its cloud-based scanning engines used by those foreign customers. For example, Qualys has datacenters located in the U.S. that host scanning engines Qualys uses on behalf of customers physically located outside the U.S., and which operating on their own infringe. *See* Ex. 2 at 9-10; Ex. 4 at QUALYS00030033 ("We currently host substantially all of our solutions from two third-party data centers, located in the United States and Switzerland."). Furthermore, the accused products [REDACTED]

*See, e.g.*, Ex. 8 at QUALYS02033331. Qualys' domestic "use" of Finjan's patented technology, and thus infringement under § 271(a), entitles Finjan to reasonable discovery into the economic footprint of such use, including the revenues associated with it, wherever they are located. Qualys's counter here fails for the reasons given above, and because it is based on blank assertion rather than evidence. This is no basis for avoiding discovery.

Qualys domestically "offers to sell" and "sells" accused products to foreign customers. Within Qualys' global sales force, the "Americas" team transmits offers and makes sales from the U.S. to foreign customers, and the details of those transactions when they result in sales are discoverable. *See* Ex. 2 at QUALYS00030025; *Plastronics*, 2019 WL 4392525, at *5. Qualys also generates a significant portion of its sales through channel partners. This includes managed service providers, value-added resellers and consulting firms located in the U.S., which help Qualys "broaden its global reach" and "target new geographic regions." *See* Ex. 2 at QUALYS00030022. Such channel partner sales to foreign customers are relevant to damages.

***Qualys' Sales Records Relating to Overseas Customers Are Further Discoverable Because Their Value Was Likely Increased as a Result of Qualys' Domestic Infringement***

Qualys also leverages the benefits of its U.S. use (and infringement) of its accused products for its foreign customers, which is relevant to a reasonable royalty analysis. When U.S. customers use the accused products to run security scans to detect threats, Qualys repackages

that data from its U.S.-based scans in security updates sent largely from the U.S., and which benefits Qualys as well as its Qualys' customers worldwide. *See, e.g.*, Ex. 9 at FINJAN-QUALYS 042706. As a result, Qualys' foreign customers benefit from Qualys' "use" of the accused products by using the threat data derived from Qualys' infringing U.S. activity, and the value of that benefit is relevant for the purposes of assessing a reasonable royalty. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 at 1120 (S.D.N.Y. 1970).

*Qualys' Foreign Financial Information Discoverable for Infringement and Validity*

Qualys operates U.S.-based "cloud" offerings as accused products, which are hosted on servers located in the U.S. Qualys provides its customers, including overseas customers, instructions to use those offerings in an infringing manner. Since such instructions give rise to Qualys' performing the act of inducing infringement in the U.S. for foreign customers, it exposes Qualys to § 271(b) inducement liability. Finjan is entitled to discovery into the economic activity surrounding such inducement, including activity involving overseas customers.

Qualys should also produce information on foreign sales because it is relevant to establishing the commercial success of Finjan's inventions. *Leo Pharma. Prod., Ltd. v. Rea*, 726 F.3d 1346 (Fed. Cir. 2013) (objective indicia is part of the obviousness analysis). Qualys's contention that it has produced the necessary data is inaccurate. With Qualys asserting hundreds of different obviousness combinations, Finjan is entitled to closely review the records of commercial success for the accused technology.

*Qualys Has Alleged No Burden Associated With the Requested Production*

Rule 26(b)(1) requires proportionality between the likely relevance of the requested information and the burden associated with its production. Qualys's sudden argument of the burden is now waived and, in any event, unsubstantiated.

### Qualys's Position

**1.   Foreign Sales of the Accused Products Alone Are Irrelevant to Direct Infringement.**

Foreign sales activity is relevant to direct infringement only if *the patented invention as a whole* is tied to an infringing act *within the United States*. *See* 35 U.S.C. 271(a) ("Section 271(a)"). Finjan improperly focuses on the accused products instead of the patented inventions. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 527 (1972) ("[Patentee's] argument that Deepsouth sells the machines . . . cannot carry the day unless it can be shown that Deepsouth is selling the 'patented invention.'"). The two are not synonymous. Specifically, Finjan's infringement contentions allege that Qualys's accused products infringe only when combined and/or interconnected with other devices and software on a network. *See, e.g.,* Ex. B at 22-23, 73, 76, 80-81, 87, 91, 99, 104, 150, 164, 177, 239, 280, 297, 304, 355, 362-363, 393, 409, 410, 472-474. Based on Finjan's own allegations, foreign sales are irrelevant unless the entire patented invention of the claims—and not just the accused products—are made, used, sold, or offered for sale within the U.S. *See Deepsouth*, 406 U.S. at 527. But Finjan's contentions and its arguments above fail to make this critical allegation. *See* Ex. A; Ex. B at 1-17.[2]

**A.   No Allegation of "Making" the Patented Inventions in the U.S.**

Finjan's infringement contentions accuse Qualys's software products (which operate on cloud servers around the globe) and a hardware scanner appliance (which is installed on a

---

[2] For convenience, Qualys has combined the multiple documents comprising Finjan's infringement contentions into a single document and included separate bates number. Citations to Exhibit B are to these bates numbers.

customer's network). Finjan improperly claims that the mere development of these products constitutes "making" under Section 271(a), entitling it to foreign sales. This is wrong. Making does not occur until *every* claim element is combined into the product. *See Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1288 (Fed. Cir. 2011) ("to 'make' the system under § 271(a), Qwest would need to **combine all of the claim elements**—this it does not do."). For software, this requires that the software be installed on the machine that can run it. *See id.* ("The customer, not Qwest, completes the system by providing the 'personal computer data processing means' and **installing the client software**."); *cf. Microsoft Corp. v. AT&T Corp.*, 550 U.S. 449-450 (2007) ("Until it is expressed as a computer-readable 'copy,' e.g., on a CD–ROM, Windows software—indeed any software detached from an activating medium—remains uncombinable."). But Finjan's contentions never allege that Qualys's software products are installed on machines in the United States before being sold abroad.[3] Likewise, for Qualys's scanner appliances, Finjan's infringement contentions allege that the appliances are only part of the patented invention, and do not infringe until deployed in an actual network and interconnected with other devices and software. *See* Ex. B. at 000104, 126, 128, 130, 133, 135, 136, 177, 179, 192, 196, 209, 211, 227, 229, 236, 239, 241, 252, 262, 285, 304, 306, 307, 363, 374, 381, 410, and 459. That Qualys's software and appliances may be developed in the U.S. is not enough.[4]

The documents and cases on which Finjan relies do not alter this result. The documents emphasize the **global** nature of Qualys, and do not establish with any plausibility that any of the patented inventions are made here before being sold abroad. And, Finjan's cited cases are each factually distinguishable because they involve an allegation that the patented inventions were made in the U.S. that is missing from Finjan's contentions.

Finjan alleges that Qualys does not dispute that it compiles code inside the U.S. But as Finjan's cited exhibits show, Qualys conducts development activities on multiple continents. *See* Ex. 2 at 9-10. Finjan's claim that Qualys's arguments are premature also miss the point. The issue is what Finjan alleged in its contentions. Finjan never alleged that any of the accused products **alone** infringe any of the asserted claims. Per Finjan's contentions, Qualys's products are only one component of the patented invention. Thus, like *Centillion* the domestic manufacture of those components is not an infringing act that opens the door to foreign sales. *See* 631 F.3d 1279, 1288.

Nor did Finjan ever allege a theory of recover that included foreign sales through any of the means which it now argues. Finally, Finjan alleges that mere development of software at least satisfies the "computer-readable storage medium" claims. But this too is incorrect. Finjan's contentions for those claims each refer to other claims where Finjan alleges infringement only once the software is installed and interconnected with a variety of other network devices and software. *See* Ex. B at 87, 91, 150, 164, 297, 355, 402, 434, 449, 464. Moreover, Finjan's contentions for those claims allege infringement only once the software is placed on a storage medium. This is different from Finjan's present position, which seeks foreign sales of uninstalled software in the abstract. *See id.*

---

[3] Even if Finjan had made this allegation (and it has not), it would still not be entitled to the entirety of Qualys's foreign sales data, but only those sales for which there was an alleged act of making (i.e. installation of software) within the U.S.

[4] Finjan made similar arguments in *Finjan, Inc. v. Blue Coat Sys., Inc.,* and Magistrate Judge Grewal denied Finjan's motion to compel foreign sales data. *See* 2014 WL 5321095, at *2 (N.D. Cal. Oct. 17, 2014); Qualys Ex. C (*Finjan, Inc. v. Blue Coat Sys., Inc.,* Case No. 5:13-cv-03999-BLF, ECF. 109-3 (N.D. Cal. Oct. 9, 2014)).

### B.   No Allegation of Domestic Use, Sales, or Offers for Sale," for Foreign Sales.

Finjan also fails to plausibly allege that Qualys used, sold, or offered to sell the patented inventions within the U.S. Finjan first argues that Qualys "uses" the patented invention by operating servers running the accused software products. But this is not an infringing "use." In *Centillion*, the Federal Circuit specifically addressed this scenario and held that an accused infringer does not "use" an infringing system by providing backend server software. *See* 631 F.3d at 1286 ("We agree with Qwest that, as a matter of law, it does not "use" the patented invention under the appropriate test from NTP . . . Supplying the software for the customer to use is not the same as using the system.").

Finjan next argues that Qualys makes infringing sales and offers to foreign customers from within the U.S. But this rests on a single document that Finjan mischaracterizes. The document in question refers to Qualys's ***global sales force*** across multiple continents. *See* Ex. 2 at 30025. Finjan speculates that these foreign sales are sourced from the United States. And, as before, Finjan never articulated any of these theories in its contentions. *See* Ex. A; Ex. B at 1-17.

### C.   Inducement Still Requires Direct Infringement in the U.S.

Finjan argues that its indirect infringement claims under 35 U.S.C. § 271(b) entitles it to discovery of foreign sales. Finjan is wrong – even an indirect infringement claim requires an underlying act of infringement within the U.S. *See Ziptronix, Inc. v. Omnivision Techs., Inc.*, 71 F. Supp. 3d 1090, 1098 (N.D. Cal. 2014). This argument fails for the reasons discussed above.

**2.   Know-how from Foreign Operations does not Entitled Finjan to Global Sales.**

Finjan cursorily argues that Qualys's extraterritorial operations are relevant to a reasonable royalty analysis because of know-how in fighting malware and viruses that Qualys gains through its foreign-deployed products. Finjan claims that such know-how enhances the value of Qualys's domestic operations, rendering such sales relevant. This argument has several flaws. First, Finjan cites no authority supporting this position, which would neutralize extraterritorial limits for any case in which reasonable royalty is alleged. Second, Finjan is silent on why foreign sales would inform the inquiry any better than the worldwide revenue data that Qualys already produced.

**3.   Qualys Already Produced Information Sufficient to Assess Commercial Success.**

Finjan alleges that Qualys's foreign sales data is relevant to establishing the commercial success (and therefore the validity) of the patented inventions. Once again, however, Finjan offers no authority holding that non-infringing foreign sales may be used in this manner. But, in any event, Finjan has effectively accused every Qualys product, and Qualys has already produced worldwide revenue data for these products. To the extent foreign activity informs commercial success, Finjan already has sufficient information.

**4.   Obtaining and Producing the Information Finjan Seeks is Unduly Burdensome.**

Production would burden Qualys. The information Finjan seeks does not exist in a readily producible form. Qualys personnel must retrieve and generate the underlying data in producible form. This is no trivial undertaking. Since that Finjan already has Qualys's worldwide revenue information, the marginal value to this information does not outweigh the burden to collect it.

- 6 -

## ATTESTATION

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

*/s/ Kristopher Kastens*
Kristopher Kastens