EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
TALIN GORDNIA (SBN 274213)
tgordnia@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>QUALYS INC., a Delaware Corporation,<br><br>　　　　　Defendant. | CASE NO.: 4:18-cv-07229-YGR (TSH)<br><br>**DEFENDANT QUALYS INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS (FED. R. CIV. PROC. 12(c))**<br><br>**Judge: Hon. Yvonne Gonzalez Rogers**<br><br>**Date: December 8, 2020**<br>**Time: 2:00pm**<br>**Location: Zoom Teleconference[1]** |

---

[1] Per the Court's Notice regarding Civil Law and Motion Calendars and its Order at D.I. 48

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................................1

I.    INTRODUCTION ..........................................................................................................................1

II.    STATEMENT OF ISSUES............................................................................................................2

III.    LEGAL STANDARDS ..................................................................................................................2

    A.    Standards for Rule 12(c) Motions .....................................................................................2

    B.    General Standards Regarding Patent Invalidity .......................................................3

IV.    FACTUAL BACKGROUND .......................................................................................................4

    A.    Relevant Procedural History ...............................................................................................4

    B.    The '305 Patent and Its File History .................................................................................4

    C.    Finjan's Infringement Contentions....................................................................................5

V.    ARGUMENT ...................................................................................................................................6

    A.    Elements 1 and 2: Finjan Was Party to a Final Judgment on the Merits Regarding the Invalidated Claims of the '305 Patent. .............................................6

    B.    Element 3: The Issue of Invalidity is Identical Between the Asserted Claims and the Previously Invalidated Ones. ......................................................................7

        1.    Claims 14, 17, and 25 are Identical to the Invalidated Claims....................8

        2.    Claims 6-12 and 18-24 Add Trivial Limitations. ........................................9

    C.    Qualys is Entitled to Judgment on the Pleadings as to the '305 Patent.................12

VI.    CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................................................. 2

*Chavez v. United States*,
 683 F.3d 1102 (9th Cir. 2012) ............................................................................................. 2

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
 637 F.3d 1047 (9th Cir. 2011) ............................................................................................. 2

*Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*,
 No. 16-CV-00186-SI, 2020 WL 4431787 (N.D. Cal. July 31, 2020) ............................. 6, 7

*Fleming v. Pickard*,
 581 F.3d 922 (9th Cir. 2009) ............................................................................................... 2

*Function Media, L.L.C. v. Google, Inc.*,
 708 F.3d 1310, 105 U.S.P.Q.2d 1754 (Fed. Cir. 2013) ....................................................... 3

*Hoganas AB v. Dresser Industries, Inc.*,
 9 F.3d 948 (Fed. Cir. 1993) ................................................................................................. 3

*KSR Intern. Co. v. Teleflex Inc.*,
 127 S. Ct. 1727 (2007) ........................................................................................................ 4

*Los Angeles Biomedical Research Institute at Harbor-UCLA Medical Center v. Eli
 Lilly and Company*, 849 F.3d 1049 (Fed. Cir. 2017) ......................................................... 3

*MaxLinear, Inc. v. CF CRESPE LLC*,
 880 F.3d 1373 (Fed. Cir. 2018) ........................................................................................... 3

*Ohio Willow Wood Co. v. Alps South., LLC*,
 735 F.3d 1333 (Fed. Cir. 2013) ........................................................................................... 7

*Roche Palo Alto LLC v. Apotex, Inc.*,
 526 F. Supp. 2d 985 (N.D. Cal. 2007), aff'd, 531 F.3d 1372 (Fed. Cir. 2008) ............... 6, 7

*Ross v. U.S. Bank Nat'l Ass'n*,
 542 F.Supp.2d 1014 (N.D. Cal. 2008) ................................................................................ 2

*Soverain Software LLC v. Newegg Inc.*,
 705 F.3d 1333 (Fed. Cir. 2013) ....................................................................................... 7, 9

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
 778 F.3d 1311 (Fed. Cir. 2015) ................................................................................ 7, 9, 10

*Titanium Metals Corp. of America v. Banner*,
 778 F.2d 775 (Fed. Cir. 1985) ............................................................................................. 3

*Trevino v. Gates*,
    99 F.3d 911 (9th Cir. 1996)...........................................................................................6

*Uniloc USA, Inc. v. ADP, LLC*,
    772 F. App'x 890 (Fed. Cir. 2019).................................................................................3

*United States v. 14.02 Acres*,
    547 F.3d 943 (9th Cir. 2008).........................................................................................3

*XY, LLC v. Trans Ova Genetics*,
    890 F.3d 1282 (Fed. Cir. 2018).....................................................................................6

**STATUTES**

35 U.S.C.A. § 102 .................................................................................................................3

35 U.S.C. § 103 ....................................................................................................................4

35 U.S.C. § 282(b)(2)............................................................................................................6

**RULES**

Fed. R. Evid. 201..................................................................................................................3

Fed. R. Civ. P. 12 ............................................................................................................2, 3

Patent L.R. 3-1 .....................................................................................................................5

# GLOSSARY OF TERMS

| Term | Definition |
|---|---|
| '305 Patent | United States Patent No. 7,975,305 |
| Dependent Claim | A claim that refers to an earlier independent claim and further limits that independent claim. |
| Freund | U.S. Patent No. 5,987,611 |
| FTP | File Transfer Protocol |
| HTTP | Hypertext Transport Protocol (web sites) |
| HTTPS | Hypertext Transport Protocol, Secured (web sites) |
| Independent Claim | A standalone claim that contains all the limitations necessary to define an invention. |
| Office Action | A document written by a USPTO Examiner to summarize a determination of the allowability or non-allowability of patent claims. |
| POP3 | Post Office Protocol 3 (e-mail) |
| Prosecution | The application process for a patent |
| PTAB | USPTO's Patent Trials and Appeals Board |
| Rule 12(b) | Fed. R. Civ. Proc. 12(b) |
| Rule 12(c) | Fed. R. Civ. Proc. 12(c) |
| SMTP | Simple Mail Transport Protocol (e-mail) |
| USPTO | United States Patent and Trademark Office |
| Wells | U.S. Patent No. 8,140,660 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Tuesday, December 8, 2020 at 2:00pm or as soon thereafter as this matter may be heard before Judge Gonzalez Rogers of the United States District Court for the Northern District of California via Zoom video conference and/or in Courtroom 1, 4th Floor, of 1301 Clay Street in Oakland, California (per the Court's March 12, 2020 Order (D.I. 48) and its Notice regarding Civil Law and Motion Calendars), defendant Qualys, Inc. ("Qualys") will and hereby does move for judgment on the pleadings.

Qualys asks that the Court enter judgment for Qualys on its Sixth Counterclaim (Declaratory Judgment of Invalidity of U.S. Patent No. 7,975,305 ("the '305 Patent")) and on Counts V and VI of the Complaint (Infringement of U.S. Patent No. 7,975,305) based on the doctrine of collateral estoppel. As discussed in detail below, collateral estoppel precludes plaintiff Finjan, LLC. ("Finjan") from opposing the invalidity of the asserted claims of the '305 Patent in this case. This warrants judgment for Qualys on its Sixth Counterclaim, but also constitutes a complete defense to Counts V and VI of the Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION[2][3]**

Defendant Qualys Inc. ("Qualys") requests judgment on the pleadings regarding Finjan's infringement claims and Qualys's invalidity defenses for the '305 Patent (Counts V and VI of the Complaint and Qualys's Sixth Counterclaim, respectively). Finjan alleges that Qualys directly and indirectly infringes the '305 Patent. However, prior to the inception of this action, the USPTO determined that several claims of the '305 Patent were invalid over the prior art. That determination has now reached final judgment and, accordingly, collateral estoppel precludes assertion of the '305 Patent against Qualys.

---

[2] Citations to "Exhibit XX" refer to Exhibits to the Request for Judicial Notice, filed concurrently herewith.

[3] For the Court's convenience, Qualys has provided a glossary for the technical terms and abbreviations used throughout this memorandum.

Finjan presently asserts nearly 90 patent claims in this case, including seventeen claims from the '305 Patent. Although Finjan has withdrawn the specific claims struck down by the USPTO, collateral estoppel has a broader reach. Under that doctrine, Finjan can only avoid preclusion on *all* asserted claims of the '305 Patent if some material difference exists between the previously-invalidated '305 claims and the currently asserted ones. But no such material differences exist – several of the asserted claims are *identical* to the invalidated claims, and the others add limitations that the USPTO itself determined were immaterial. In short, collateral estoppel precludes Finjan from relitigating the issue of validity on which it lost. It cannot oppose Qualys's invalidity defense, and this necessitates judgement for Qualys both on its invalidity defense as well as Finjan's infringement claims for the '305 patent.

## II.   STATEMENT OF ISSUES

Whether Qualys is entitled to judgment on the pleadings on Counts V and VI of the Complaint and on Qualys's Sixth Counterclaim because collateral estoppel precludes Finjan from opposing Qualys's invalidity defense of the '305 Patent.

## III.   LEGAL STANDARDS

### A.   Standards for Rule 12(c) Motions

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Judgment on the pleadings is proper when "'there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (*quoting Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009)). Under a Rule 12(c) motion, the Court must determine whether the complaint demonstrates a plausible entitlement to a legal remedy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (discussing the standard for dismissal under Rule 12(b)(6)). The Court applies the same standards to a Rule 12(c) motion that it would apply to a Rule 12(b)(6) motion. *See Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n. 4 ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6)"); *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1023 (N.D. Cal. 2008).

In analyzing a Rule 12 motion, the Court may consider materials subject to judicial notice under Fed. R. Evid. 201 without converting the motion into one for summary judgment. *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008). Relevant to this motion, judicially noticeable facts include: a patent's file history at the USPTO; a patent's reexamination proceedings before the USPTO; prior art patents discussed in such file histories and reexaminations; and a party's infringement contentions. *See Uniloc USA, Inc. v. ADP, LLC*, 772 F. App'x 890, 898 n.3 (Fed. Cir. 2019) (noting that patent file histories may be judicially noticed); *Function Media, L.L.C. v. Google, Inc.*, 708 F.3d 1310, 1316 n.4, 105 U.S.P.Q.2d 1754 (Fed. Cir. 2013) (taking judicial notice of a patent's reexamination); *Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of another patent); *Los Angeles Biomedical Research Institute at Harbor-UCLA Medical Center v. Eli Lilly and Company*, 849 F.3d 1049, 1061 n.6, (Fed. Cir. 2017) (taking judicial notice of the patentee's infringement contentions).

B.      **General Standards Regarding Patent Invalidity**

A person cannot obtain a patent unless the invention is new (also called the "novelty requirement"). Thus, the Federal Circuit has explained that "[t]he patent law imposes certain fundamental conditions for patentability, paramount among them being the condition that what is sought to be patented, as determined by the claims, be new." *Titanium Metals Corp. of America v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985). The statutory requirements for determining whether an invention is "new" lie chiefly in 35 U.S.C.A. § 102. Section 102 provides, in relevant part, that a person shall be entitled to a patent unless: "the invention was described in . . . a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent…" 35 U.S.C. § 102(e)(2). For patent invalidity, the date of "invention" for a patent is referred to as its "priority date." A third-party patent whose application was filed before the subject patent's priority date is referred to as "prior art." Patent claims whose limitations are completely disclosed in a prior art reference are invalid. *See* 35 U.S.C. § 102(e) (pre-AIA).

In addition to the novelty requirement, an invention must be non-obvious over the prior art. This requires that, as of priority date, the invention be sufficiently different to skilled artisans in the field to not be an obvious variation from the state of the art:

> We build and create by bringing to the tangible and palpable reality around us new works based on instinct, simple logic, ordinary inferences, extraordinary ideas, and sometimes even genius. These advances, once part of our shared knowledge, define a new threshold from which innovation starts once more. And as progress beginning from higher levels of achievement is expected in the normal course, ***the results of ordinary innovation are not the subject of exclusive rights under the patent laws***. Were it otherwise patents might stifle, rather than promote, the progress of useful arts.

*KSR Intern. Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1746 (2007) (emphasis added). Patent claims found to be obvious over prior art are invalid. *See* 35 U.S.C. § 103 (pre-AIA).

## IV. FACTUAL BACKGROUND

### A. Relevant Procedural History

Finjan filed the current lawsuit on November 29, 2018. *See* D.I. 1. In the Complaint, Finjan alleges in Counts V and VI that Qualys infringes the '305 Patent. In response, Qualys has pled both an affirmative defense and a counterclaim that the '305 Patent is invalid over the prior art. *See* D.I. 62 at 16 (Third Affirmative Defense) and 38 (Sixth Counterclaim). Qualys has also specifically pled that collateral estoppel bars Finjan from asserting the '305 Patent. *See id.* at 34 (Sixteenth Affirmative Defense).

### B. The '305 Patent and Its File History

The patent application that resulted in the '305 Patent was filed on December 9, 2004. D.I. 1-3. Finjan contends the '305 Patent is entitled to a priority date of August 30, 2004. *See* D.I. 100-11 at 10. A summary of the '305 Patent's application history can be found in Exhibit B at FINJAN-QUALYS 406948-950. The '305 Patent issued on July 5, 2011. D.I. 1-3. It originally issued with 25 claims (although, as discussed below, Claims 1, 2, 5, and 13 were subsequently invalidated by the USPTO).

On December 11, 2015, a third party petitioned the USPTO to reexamine the '305 Patent. Exhibit B at FINJAN-QUALYS 406947. This petition requested that the USPTO reconsider the validity of Claims 1, 2, 5, and 13 of the '305 patent in light of two prior art references: U.S. Patent No. 8,140,660 to Wells ("Wells") and U.S. Patent Publication No. 2005/0172338 to Sandu ("Sandu"). *Id.* After considering the petitioner's arguments, the USPTO granted the petition on January 19, 2016, and instituted reexamination proceedings for those claims. *Id.* On August 24,

2016, the USPTO issued an Office Action rejecting Claims 1, 2, 5, and 13. *See id.* at FINJAN-QUALYS 405017-079. Specifically, the USPTO determined that those claims were obvious either over Wells alone (*Id.* at FINJAN-QUALYS 405020-39) or over Wells in combination with Sandu (*id.* at FINJAN-QUALYS 405039-64). Finjan appealed this decision to the USPTO's Patent Trials and Appeals Board, which affirmed the rejection on July 2, 2018. *See id.* at FINJAN-QUALYS 404252-53. Finjan then appealed to the Federal Circuit, which again affirmed the rejection on September 6, 2019. *See* Exhibit C.[4]

In this litigation, Finjan initially alleged that Qualys infringes Claims 1, 2, 5-14, and 17-25. After the Federal Circuit affirmed the invalidity of Claims 1, 2, 5, and 13, Finjan withdrew its allegations for those claims but continues to assert Claims 6-12, 14, and 17-25. These remaining asserted claims of the '305 Patent fall into two categories. The claim in the first category (Claims 14, 17, and 25) are identical to previously invalidated Claims 1, 2, 5, and 13. The claims in the second category (Claims 6-12 and 18-24), which recite the scanning of common types of internet content such as HTTP, FTP, SMTP, POP3, and content being directed to web browsers and e-mail clients. Qualys seeks judgment on the pleadings regarding the remaining asserted claims of the '305 Patent because, for the reasons discussed, collateral estoppel precludes Finjan from opposing the invalidity of these claims.

### C.     Finjan's Infringement Contentions

On April 19, 2019, Finjan served its Patent L.R. 3-1 infringement contentions. *See generally* D.I. 100-11. Those infringement contentions included claim charts for the '305 Patent. In relevant part, Finjan's contentions for Claims 14, 17, and 25 simply referred to its analysis of Claims 1, 2, 5, and 13, and did not include any separate or independent analysis of those claims:

- Claim 14: "See analysis for Claim 2 above." *Id.* at 000346.[5]
- Claim 17: "See analysis for Claim 5 above." *Id.* at 000347.

---

[4] Qualys understands that a second reexamination regarding the '305 Patent is ongoing at the USPTO.

[5] Pin citations to *D.I.* 100-11 are to the unique bates numbering attached to that exhibit.

- Claim 25: "See analysis for 1(a) [and 1(b), 1(c), 1(d), 1(e), and 1(f)] above." *Id.* at 000355-000359.

Aside from the above, Finjan offered no other statements and did not otherwise distinguish Claims 14, 17, or 25 from the previously invalidated Claims 1, 2, 5, and 13. *See id.* at 000346, 000347, and 000355-000359.

## V. ARGUMENT

Ninth Circuit law applies to the procedural question of whether collateral estoppel applies, while Federal Circuit law applies to any substantive patent law issues. *Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2020 WL 4431787, at *3 (N.D. Cal. July 31, 2020). The Ninth Circuit's procedural test for collateral estoppel has three requirements: (1) "the first proceeding ended with a final judgment on the merits," (2) "the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding," and (3) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated." *Id.* (*citing Roche Palo Alto LLC*, 526 F. Supp. 2d at 994–95 (N.D. Cal. 2007)); *see also Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996). When the issue involves a previous determination of patent invalidity, application of collateral estoppel provides a complete defense to an infringement claim. *See Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2020 WL 4431787, at *6 (N.D. Cal. July 31, 2020) (Granting summary judgment on invalidity because collateral estoppel "precluded [patentee] from re-litigating the validity of the [asserted patent]."); 35 U.S.C. § 282(b)(2) ("The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded: . . . (2) Invalidity of the patent or any claim in suit"). As discussed below, the judicially noticeable facts demonstrate that all three elements of the Ninth Circuit's test are met.

### A. Elements 1 and 2: Finjan Was Party to a Final Judgment on the Merits Regarding the Invalidated Claims of the '305 Patent.

The first two elements of the Ninth Circuit's test are easily satisfied. A USPTO judgement invalidating a patent's claims can form the basis of a collateral estoppel claim in co-pending district court litigation. *See XY, LLC v. Trans Ova Genetics*, 890 F.3d 1282, 1294 (Fed. Cir. 2018) ("A

patentee, having been afforded the opportunity to exhaust his remedy of appeal from a holding of invalidity, has had his day in court, and a defendant should not have to continue defending a suit for infringement of an adjudged invalid patent."); *see also MaxLinear, Inc. v. CF CRESPE LLC*, 880 F.3d 1373, 1376 (Fed. Cir. 2018) ("[W]here a single issue is before a court and an administrative agency, preclusion also often applies."). Here, Finjan was a party to the USPTO reexamination proceedings for the '305 Patent, which resulted in a final judgment on the merits no later than when the Federal Circuit affirmed the USPTO's determination that Claims 1, 2, 5, and 13 of the '305 Patent are invalid. *See* Exhibit B at FINJAN-QUALYS 405017-79 and FINJAN-QUALYS 404251-404269; Exhibit C. The USPTO issued a reexamination certificate formally canceling those claims on January 29, 2020. D.I. 44-3. The first two elements are satisfied.

### B. Element 3: The Issue of Invalidity is Identical Between the Asserted Claims and the Previously Invalidated Ones.

The third element of the Ninth Circuit's test—identicality—is also met. The identicality requirement (as applied under patent law in this district and by the Federal Circuit) is satisfied so long as the core question—the invalidity of the asserted patent—remains the same. Importantly, a patentee does not necessarily avoid collateral estoppel by asserting ***different*** patent claims in litigation than those previously invalidated. *See Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 994–95 (N.D. Cal. 2007), aff'd, 531 F.3d 1372 (Fed. Cir. 2008) ("The authorities . . . indicate that the relevant 'issue' which Defendants are precluded from relitigating is the ultimate determination on patent validity itself."); *Chrimar*, 2020 WL 4431787, at *5 ("[The Federal Circuit] does not limit [issue preclusion/] collateral estoppel to patent claims that are identical."). In such a situation, the identicality requirement is satisfied where the differences between the previously invalidated claims and the claims asserted in litigation do not "materially alter the question of invalidity." *See Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, ("*Soverain II*") 778 F.3d 1311, 1319 (Fed. Cir. 2015); *Soverain Software LLC v. Newegg Inc.* ("*Soverain I*"), 705 F.3d 1333, 1344 (Fed. Cir. 2013); *Ohio Willow Wood Co. v. Alps South., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013) (preclusion applies where the claims invalidated in the Patent Office use "slightly different language to describe substantially the same invention"). As discussed below, the public record establishes that there are no material differences between invalidated

Claims 1, 2, 5 and 13 of the '305 Patent and asserted Claims 6-12, 14, and 17-25. Thus, the identicality requirement is satisfied and collateral estoppel applies.

### 1. Claims 14, 17, and 25 are Identical to the Invalidated Claims.

As noted above, the identicality requirement is satisfied where there are no material differences between the invalidated claims and the asserted claims. This test is easily satisfied for asserted Claims 14, 17, and 25 because those claims are essentially *identical* to previously-invalidated Claims 1, 2, 5, and 13. As the following chart shows, every element appearing in asserted Claims 14, 17, and 25 are found in Claims 2, 5, and 13 (left column):

| Invalidated Claims 2, 5, and 13 | Asserted Claims 14, 17, and 25 |
|---|---|
| Claim 2: The security system of claim 1 wherein said database of parser and analyzer rules stores parser and analyzer rules in the form of pattern-matching engines. | Claim 14: The method of claim 13 wherein said database of parser and analyzer rules stores parser and analyzer rules in the form of pattern-matching engines. |
| Claim 5: The security system of claim 1 further comprising a content blocker, operatively coupled to said rule-based content scanner, for preventing incoming content having a computer exploit that was recognized by said rule-based content scanner from reaching its intended destination. | Claim 17: The method of claim 13 further comprising preventing incoming content having a computer exploit that was recognized by said scanning from reaching its intended destination. |
| Claim 13: A method for scanning content within a computer, comprising: receiving, at the computer, incoming content from the Internet on its destination to an Internet application; selectively diverting, by the computer, the received incoming content from its intended destination; scanning, by the computer, the selectively diverted incoming content to recognize potential computer exploits therewithin, based on a database of parser and analyzer rules corresponding to computer exploits, computer exploits being portions of program code that are malicious, wherein the parser and analyzer rules describe computer exploits as patterns of types of tokens, tokens being program code constructs, and types of tokens comprising a | Claim 25: A computer-readable storage medium, the medium excluding signals, storing program code for causing a computer to perform the steps of: receiving incoming content from the Internet on its destination to an Internet application; selectively diverting the received incoming content from its intended destination; scanning the selectively diverted incoming content to recognize potential exploits therewithin, based on a database of parser and analyzer rules corresponding to computer exploits, computer exploits being portions of program code that are malicious, wherein the parser and analyzer rules describe exploits as patterns of types of tokens, tokens being program code constructs, and types of tokens comprising a punctuation type, an identifier type and a function type; |

| | |
|---|---|
| punctuation type, an identifier type and a function type; | |
| and updating the database of parser and analyzer rules periodically to incorporate new behavioral rules that are made available. | and updating the database of parser and analyzer rules periodically to incorporate new parser and analyzer rules that are made available. |

*See* D.I. 1-3 at 30:48-32:38. As shown above, Claims 14, 17, and 25 add nothing new or different that would alter the question of invalidity.

Finjan essentially conceded this point in its infringement contentions. In its claim charts for the '305 Patent, Finjan's entries for Claims 14, 17, and 25 simply refer to Claims 1, 2, and 5 without adding any new analysis. *See* D.I. 100-11 at 000346, 000347, and 000355-000359. In other words, Finjan's claim charts show that even Finjan views these two sets of claims as containing no material differences. It cannot now plausibly claim otherwise.

### 2.     Claims 6-12 and 18-24 Add Trivial Limitations.

Claims 6-12 and 18-24 also do not materially alter the question of invalidity because the USPTO already determined that the content of these claims was already well-known in the prior art and do not alone render the claims patentable.

The Federal Circuit's *Sovereign I* and *II* cases address an analogous scenario. In *Sovereign I*, the court affirmed a finding that a patent's independent claim was invalid over the prior art (much like the USPTO's earlier determination in this case that independent Claims 1 and 13 are invalid). *See Sovereign I*, 705 F.3d at 1341-43. In *Sovereign II*, the patentee asserted the same patent against a subsequent defendant but asserted a dependent claim instead of the invalidated independent claim itself (much like here, where Finjan has asserted Claims 6-12 and 17-14, which respectively depend on Claims 1 and 13). 778 F.3d at 1319-1320. The Federal Circuit held that the identicality requirement was satisfied and collateral estoppel barred the patentee's infringement claim because the dependent claim merely recited "a routine incorporation of Internet technology" that did not materially alter the question of invalidity.  *Id.*

The same issue applies here. Claims 6-12 and 18-24 depend respectively on invalidated independent Claims 1 and 13. But, the USPTO has already determined on *six separate occasions* that Claims 6-12 and 18-24 merely recite scanning well-known protocols like HTTP (the same protocol at issue in the *Soverain* cases) and using commonplace internet applications like web

browsers and e-mail clients. Thus, these limitations do not materially alter the question of invalidity for the same reasons as in *Soverain II*.

<u>First</u>, during prosecution of the '305 Patent's application, the USPTO issued five separate office actions addressing this issue. In each office action, the USPTO Examiner specifically stated that Claims 6-12 and 18-24 were disclosed or obvious in view of the prior art reference Freund:

> Regarding claims 6, 8 – 10, Freund discloses:
> *wherein the content received from the Internet by said network interface is HTTP, FTP, SMTP, POP3 content* (Freund, 23:44-55).
>
> Regarding claims 11 and 12, Freund discloses:
> *wherein the destination Internet application is a web browser; wherein the destination Internet application is an e-mail client* (12:18-42).
>
> Regarding claims 13, 17, 18, 20 – 25, they are rejected, at least, for the same reasons as claims 1, 5, 6, 8 – 12.
>
> . . .
>
> Regarding claims 7 and 19, Freund discloses that the system is flexible so as to support a plurality of protocols (Freund, 12:18-42). While Freund discloses supporting existing protocols such as HTTP, Freund does not appear to explicitly state that the system may support secure HTTP. However, it would have been obvious to one of ordinary skill in the art to employ support for the secure HTTP because one of ordinary skill in the art would have been motivated by increased flexibility of the system.

Ex. A at FINJAN-QUALYS 002556-58, FINJAN-QUALYS 002482-83, FINJAN-QUALYS 002351-52, FINJAN-QUALYS 002301-02, and FINJAN-QUALYS 002236-37; *see also* Exhibit D (Freund) at 12:18-42 and 23:44-55 (discussing use of web browsers and email clients for use with HTTP, FTP, SMTP, and POP). In other words, the USPTO Examiner repeatedly determined that scanning content using the internet protocols and software recited in Claims 6-12 and 18-24 were ***routine*** in the prior art and not independently patentable. Critically, Finjan never objected to or contested the Examiner's findings about Claims 6-12 and 18-24. Finjan also never modified the language of Claims 6-12 or 18-24 from their rejected state. *See* Exhibit A at FINJAN-QUALYS

1  002536-37, FINJAN-QUALYS 002538-45, FINJAN-QUALYS 002464-72, FINJAN-QUALYS
2  002319-28, FINJAN-QUALYS 002283-91, and FINJAN-QUALYS 002216-24. The Examiner's
3  unrefuted finding that Claims 6-12 and 18-24 add nothing novel or non-obvious establishes that
4  these Claims do not materially alter the question of invalidity from their respective parent Claims
5  1 and 13.

6  <u>Second</u>, during the '305 Patent's reexamination proceedings the USPTO again noted that
7  the subject matter of Claims 6-12 and 18-24 were known in the prior art. The USPTO Examiner
8  for the reexamination (a different Examiner from the '305 Patent's original application process)
9  specifically found that the scanning content using HTTP, FTP, SMTP, and POP as well as content
10 bound for web browsers and email clients was known in the prior art reference Wells, which was
11 one of two prior art references that formed the basis of invalidating Claims 1, 2, 5, and 13:

> Wells further teaches that the content is being transferred using various well known protocols (e.g., HTTP or email). Wells, col. 6:61-7:3 ("processor 24 may scan HTTP requests by scanning their originating web page for known viral patterns such as Code Red, which is programmed to gain entry to a server. To scan email attachments for worms, processor 24 may look for filenames, such as readme.exe and sample.exe, known to be used by worms"), col. 3:31-34. Wells also teaches that the detection device may also scan content communicated through various other well-known protocols. Wells, col. 8:21-34 (describing screening content transmitted using HTTP, SMTP, POP, IMAP, and FTP protocols). Accordingly, a POSITA would have recognized that each of these protocols is associated with a well-known type of Internet application destination (e.g., HTTP - browser, SMTP, POP, IMAP - email client, and FTP - ftp client).

Exhibit B at FINJAN-QUALYS 405022; *see also id.* at FINJAN-QUALYS 405033, 405042-44; Exhibit E (Wells) at 1:19-29; 1:41-53, and 8:21-34. Moreover, the Examiner specifically stated that use of these internet protocols and applications were "well known" in the prior art. *See* Exhibit B at FINJAN-QUALYS 405022. The Reexamination Examiner's finding corroborates the original Examiner's unrefuted determination that Claims 6-12 and 18-24 cannot alter the question of invalidity and there cannot defeat application of collateral estoppel.[6]

---

[6] Claims 6-12 and 18-24 were not specifically challenged in the Ex Parte Reexamination, so the Patent Examiner could not outright invalidate those claims alongside Claims 1, 2, 5, and 13.

**C.    Qualys is Entitled to Judgment on the Pleadings as to the '305 Patent**

As discussed above, the public record establishes that each element of the Ninth Circuit's collateral estoppel test is satisfied here. As such, Finjan is precluded from opposing Qualys's Sixth Counterclaim for invalidity as to all remaining asserted claims for the '305 Patent. Moreover, Qualys's invalidity counterclaim provides a complete defense to Finjan's infringement claims found in Counts V and VI of the Complaint. Consequently, Qualys is entitled to judgment on the pleadings on its counterclaim as well as Finjan's infringement claims, dismissing the '305 Patent from the case.

**VI.    CONCLUSION**

For the foregoing reasons, the Court should grant Qualys's motion for judgment on the pleadings.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated: October 22, 2020    By: */s/ Christopher D. Mays*
CHRISTOPHER D. MAYS

*Counsel for Defendant*
QUALYS INC.