EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
TALIN GORDNIA (SBN 274213)
tgordnia@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>QUALYS INC., a Delaware Corporation,<br><br>Defendant. | CASE NO.: 4:18-cv-07229-YGR (TSH)<br><br>**DEFENDANT QUALYS INC.'S MOTION TO STRIKE PLAINTIFF FINJAN LLC'S INFRINGEMENT CONTENTIONS**<br><br>**Judge: Hon. Yvonne Gonzalez Rogers**<br><br>**Date: December 8, 2020**<br>**Time: 2:00pm**<br>**Location: Zoom Teleconference[1]** |

---

[1] Per the Court's Notice regarding Civil Law and Motion Calendars and its Order at D.I. 48.

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on Tuesday, December 8, 2020 at 2:00pm or as soon thereafter as this matter may be heard before Judge Gonzalez Rogers of the United States District Court for the Northern District of California via Zoom video conference and/or in Courtroom 1, 4th Floor, of 1301 Clay Street in Oakland, California (per the Court's March 12, 2020 Order (D.I. 48) and its Notice regarding Civil Law and Motion Calendars), defendant Qualys Inc. ("Qualys") will and hereby does move to strike portions of plaintiff Finjan LLC's ("Finjan") Infringement Contentions.

**STATEMENT OF ISSUES AND RELIEF REQUESTED**

Finjan has failed to comply with Patent L.R. 3-1(c)'s requirement to provide claim charts "identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality" in two ways.  First, Finjan's claim charts for U.S. Patent No. 8,141,154 ("the '154 Patent") fail to identify any feature in any accused product that Finjan contends processes *modified* content, despite that requirement recently being affirmed by the Federal Circuit.  Second, this Court has determined that the claimed "receiver" and "transmitter" limitations found in the asserted claims of the '154 Patent and U.S. Patent Nos. 6,965,968 ("the '968 Patent"), 8,225,408 ("the '408 Patent"), and 8,677,494 ("the '494 Patent) each require hardware.  Despite this determination, Finjan continues to accuse mere software modules of practicing the "receiver" and "transmitter" limitations.  Qualys therefore requests that the Court strike the portions of those charts containing these improper theories, identified by the highlighted portions of Exhibit 11 to the Declaration of Christopher D. Mays in support of this Motion.[2]

---

[2] Citations to "Ex. XX" or "Exhibit XX" refer to the exhibits to the Declaration of Christopher D. Mays, filed concurrently with this Motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Fact discovery has now closed in this Action, but Finjan continues to assert an astounding 77 patent claims against Qualys.[3] Yet many of Finjan's infringement theories fail to comply with the fundamental requirement of "specifically identifying where and how each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c). In this motion, Qualys seeks to strike two categories of contentions that fail this requirement by failing to comport with binding claim constructions from the Federal Circuit and this Court. First, although the Federal Circuit recently affirmed that the asserted claims of the '154 Patent must process *modified* content, Finjan's Patent L.R. 3-1(c) claim charts do not identify where or how any accused product processes such modified content. Second, despite the Court's Claim Construction Order unequivocally holding that the "receiver" and "transmitter" limitations found in the asserted claims must include hardware, Finjan continues to assert theories of infringement where it fails to identify any hardware whatsoever for these limitations. Finjan has refused to either withdraw or amend these improper theories, necessitating this Motion.

## II. FACTUAL BACKGROUND

### A. Relevant Procedural History

Finjan filed this action on November 29, 2018. *See* D.I. 1. Finjan's complaint alleges that Qualys's products infringe seven Finjan patents (the "Patents-in-Suit").

On April 19, 2019, Finjan served its Patent L.R. 3-1 Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions"). *See generally* D.I. 100-11. In its Infringement Contentions, Finjan identified the following Qualys products as infringing one or more claims of the Patents-in-Suit: (1) Malware Detection; (2) Vulnerability Management; (3) Web Application Scanning; (4) Web Application Firewall; (5) Secure Seal; (6) Continuous Monitoring; (7) ThreatPROTECT; (8) the KnowledgeBase; (9) Qualys research labs; (10)

---

[3] Finjan initially offered to propose a "case narrowing schedule, where Finjan narrows the asserted claims and Qualys narrows the invalidity theories" (Exhibit 5 at 18), but unilaterally withdrew this offer without ever making such a proposal.

(continued...)

1  Indication of Compromise; (11) Policy Compliance; (12) Cloud Agent; (13) Virtual Scanner; and
2  (14) Scanner Appliance. *See id.* at 000003-006.[4]  Relevant to this motion, every accused product
3  except Scanner Appliance is a software product.

4        A month after Finjan served its Infringement Contentions in this case, it received an
5  adverse summary judgment order in co-pending litigation against the company Juniper.  In that
6  case, the court construed the '154 Patent to require processing "modified" content.  *See Finjan,*
7  *Inc. v. Juniper Networks, Inc.*, 387 F. Supp. 3d 1004, 1010-1013 (N.D. Cal. 2019) ("*Juniper*")
8  ("Accordingly, this order construes the term "content processor" as "a processor that processes
9  modified content.").  The Court determined that Juniper did not infringe because "Finjan offers no
10 evidence that the accused products' alleged content processor processes modified content." *Id.* at
11 1013.  On October 9, 2020, the Federal Circuit affirmed the district court. *See* Ex. 1.

12       While the *Juniper* appeal was pending, the parties in this case proceeded through fact
13 discovery and claim construction.  Qualys made the source code for every accused product
14 available for inspection, and Finjan performed over 100-man hours of source code inspection on
15 September 10-12, 2019, October 1-4, 2019, January 31, 2020, February 5-6, 2020, February 11-
16 14, 2020, and July 1-2, 2020.  *See* Exs. 6-10.  On the claim construction front, Qualys first
17 disclosed to Finjan its claim construction positions on October 23, 2019.  Among these
18 constructions, Qualys disclosed its view that the asserted claims of the '154 Patent must process
19 modified content.  *See* Ex. 2 at 2.  Qualys also disclosed its position that the "receiver" and
20 "transmitter" limitations of the '154, '408, '494, and '968 Patents were indefinite if the scope of
21 those limitations covered software.  *Id.* at 3-4; *see also* Ex. 3 at 10.  On March 16, 2020, Qualys
22 filed its claim construction brief wherein it again argued these points.  *See* D.I. 52 at 14-16, 20-23;
23 *see also* D.I. 52-6 at ¶¶ 27-30 and 35-56.

24       The Court issued its Claim Construction Order on June 11, 2020.  In that Order, the Court
25 declined to address the "modified content" issue, noting that "Once the Federal Circuit resolves
26 this dispute, its decision will be binding on the district courts" and that "the Federal Circuit

---

[4] D.I. 100-11 contains all of Finjan's infringement contentions (including claim charts) combined into a single document.  For the Court's convenience, Qualys stamped separate bates numbers onto this document.  Pin citations to D.I. 100-11 are to these separate bates numbers.

interpretation will govern at trial." *See* D.I. 74 at 22. The Court also determined that the claimed "receiver" and "transmitter" "are not directed to computer software." *See* D.I. 74 at 26.

On July 23, 2020, Qualys detailed to Finjan the many deficiencies in its contentions and specifically requested that Finjan withdraw those theories that were incompatible with the Court's Claim Construction Order. *See* Ex. 4 at 4-6. On August 13, Finjan rejected Qualys's request but specifically noted that "to keep this case focused on the merits, Finjan agrees to supplement its [Infringement Contentions] in response to Qualys's letter." Ex. 5.[5] However, Finjan never followed through on this promise. The parties thereafter met and conferred via telephone conference on these issues, but Finjan declined to withdraw any of its theories.

### III.   LEGAL STANDARDS

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to **_articulate with specificity_** the claims and theory of a plaintiff's infringement claims." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *2 (N.D. Cal. Nov. 30, 2012) (*citing Bender v. Maxim Integrated Prods., Inc.*, No. C 09–01152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar.22, 2010)) (emphasis added). As the Court has previously noted:

> A party claiming patent infringement must serve a "Disclosure of Asserted Claims and Infringement Contentions" on all parties pursuant to Patent L.R. 3–1. In the disclosure, the party asserting infringement must, among other things: (a) identify each claim of each patent that is allegedly being infringed; (b) separately for each asserted claim and as **_"specific[ally] as possible,"_** identify each accused apparatus, product, device, process, method, act or other instrumentality (or "Accused Instrumentality") for each claim of which the party is aware; and (c) provide "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality."

*Id.* (emphasis added). "The purpose of the rule is to require the party claiming infringement to crystallize its theories of the case early in the litigation and to adhere to those theories once disclosed." *Id.* The degree of specificity required "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement."

---

[5] Qualys understood Finjan to be stating that it would seek leave to amend its contentions, as Patent L.R. 3-6 permits amendment "only by order of the Court upon a timely showing of good cause." Qualys never agreed that Finjan could unilaterally amend its contentions without following the proper procedure of the Patent Local Rules.

*Id.* To that end, "a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *Id.* Vague and conclusory contentions are inadequate. *Id.* at *4; *see Shared Memory Graphics LLC v. Apple, Inc.*, 812 F.Supp.2d 1022, 1025 (N.D. Cal. 2010) ("vague contentions and conclusory statements" which invite defendants and the court to assume that a limitation exists fall short of providing a "meaningful description of its theories" under Patent L.R. 3–1); *see also InterTrust Tech. Corp. v. Microsoft Corp.*, 2003 WL 23120174, at *3 (N.D. Cal. Dec. 1, 2003) ("The purpose of Patent Local Rule 3–1, however, is in fact to be nit-picky, to require a plaintiff to crystalize its theory of the case and patent claims."); *Bender v. Maxim*, 2010 WL 1135762 at *2 ("[P]laintiff bears the burden of providing infringement contentions that specify the location of every claim element within the accused products, so that the Court can make a principled decision on whether discovery will proceed.").

IV. **ARGUMENT**

  A. **Finjan's '154 Contentions Do Not Identify Where or How the Accused Products Process Modified Content.**

The Federal Circuit's affirmance confirms that the '154 Patent requires processing *modified* content. Accordingly, this requirement is now binding in this case, as the Court acknowledged in its Claim Construction Order. *See* D.I. 74 at 22; *Juniper*, 387 F. Supp. 3d at 1010-1013; Ex. 1. Moreover, Finjan is collaterally estopped from contending otherwise. *See Chrimar Sys. Inc. v. Ruckus Wireless, Inc.*, No. 16-CV-00186-SI, 2020 WL 4431787, at *3 (N.D. Cal. July 31, 2020) (noting that collateral estoppel applies where three requirements are met: (1) "the first proceeding ended with a final judgment on the merits," (2) "the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding," and (3) "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated.").

However, Finjan's Patent L.R. 3-1(c) claim charts for the '154 Patent do not address this requirement. Nowhere, for example, does Finjan "specifically identify" where or how any accused product allegedly processes modified content. *See Theranos*, 2012 WL 6000798, at *2; Patent L.R. 3-1; D.I. 100-11 at 000363-000384 and 000403. In fact, the word "modified" appears

nowhere in the claim charts.  *See* D.I. 100-11 at 000363-000384 and 000403.  And, despite disclosing over half a dozen different theories for this claim limitation, Finjan's claim charts include no discussion whatsoever about how any accused product allegedly processes content other than to obtusely claim that *every* product "processes downloaded web and email content that they receive." *Id.* at 000362.  Finjan simply alleges that the accused products "process[] content received over a network" without any reference to how this processing occurs or whether the content was previously modified.  *See id.* at 000363, 000375-000381.  Such barebones disclosures fail to satisfy this Court's previous admonition that infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement."  *See Theranos*, 2012 WL 6000798, at *2.  Qualys therefore moves to strike those contentions that fail to disclose theories for processing *modified* content; namely pages 000362-363, 375-381, 384, 401, and 403 of D.I. 100-11 and Exhibit 11.[6]

### B.  Finjan's Claim Charts Do Not Identify Hardware Receivers / Transmitters.

Finjan's Patent L.R. 3-1(c) charts also repeatedly fail to identify hardware components that it contends satisfy the "receiver" and "transmitter" limitations of the '154, '408, '494, and '968 Patents.  In its Claim Construction Order, the Court reasoned that:

> Here, the claims in each of the patents ***describe receivers as components separate from the processor that implements software***. For example, in the '154 Patent, the claims expressly recite a "content processor" as a separate claim limitation from the receiver and the transmitter. (See '154 Patent at claims 1-2, 6-7.) Figure 1 of the '154 Patent similarly ***shows the receiver and transmitter on the client computer separate from the processor*** on that computer. (See id. at Figs. 2, 4.)  Likewise, in the '494 Patent, the claims recite a receiver "coupled" to a database scanner. ('494 Patent at claim 10.)  ***The term "coupled" connotes hardware—a software module cannot be coupled to a hardware scanner***.  Additionally, Figure 2 of the '494 Patent shows a processor apart from a communications interface, which the specification states may contain communication devices, such as a transceiver. (Id. at Fig. 2, 8:49-54.)  Finally, although the '968 Patent does not mention a "receiver" in the specification, the claims state the receiver is part of the cache manager, which also includes other hardware components, such as a memory. (See '968 Patent at claim 7, claim 1.) In short, ***the claims here appear to be directed to a hardware implementation where the "receiver" is a distinct component, not a software module***.

---

[6] For the Court's convenience, Qualys provides an annotated and excerpted copy of D.I. 100-11 specifically identifying the material Qualys seeks to strike.  The same pin citations identified throughout this Motion apply to that exhibit as well.

1  D.I. 74 at 27; *see also id.* at 29 ("As with "receiver," the specification of the '154 Patent
2  consistently shows the "transmitter" as a hardware component separate from the processor."). The
3  Court's Claim Construction Order also zeroed in on a key issue with Finjan's claim construction
4  arguments that also apply to its infringement contentions: "Finjan's arguments . . . conflate
5  hardware and software meanings in the extrinsic evidence. Finjan is advised that it has the ultimate
6  burden to prove infringement at trial, and that the Court, not the jury, will decide the claim scope
7  for that purpose." *Id.* at 29 n. 3.

8  Here, Finjan's infringement contentions again improperly conflate hardware and software.
9  For example, Finjan's claim charts for the '154 Patent include eight alternate theories ("Contention
10 1" through "Contention 8") for the receiver and transmitter limitations. *See* D.I. 100-11 at 000385-
11 000400. Finjan's Contentions 2 through 8 each respectively contend that each accused Qualys
12 software product—Vulnerability Management, Threat Protection, Indication of Compromise,
13 Container Security, Web Application Firewall, Web Application Scanning, and Compliance
14 Monitoring—"is" or "has" the transmitter/receiver:



25 *Id.* at 000386; *see also id.* at 000386-000392 and 000394-000400 (showing the same for each
26 accused software product). Finjan includes similar contentions for the '408 Patent, the '494 Patent,
27 and the '968 Patent. *Id.* at 000409 ('408 Patent, "Each of the Accused Products . . . includes a
28 receiver component"); *Id.* at 000472 ('494 Patent, "Each of the Qualys Accused Products include

a respective receiver…"); *Id.* at 000132-134 ('968 Patent, "Each of the Accused Products . . . includes a [transmitter/receiver]").

These contentions all suffer from the same overall deficiency. In each instance, Finjan contends that every accused product ***is*** or ***has*** the receiver/transmitter. *See id.* The problem with this is all but one of the accused products in this case are software which, under the Court's Claim Construction Order, cannot "be" or "have" the receiver or transmitter limitations. *See id.* On top of that, these theories fail to identify any hardware components as allegedly satisfying these contentions. *See id.* In short, these theories—Contentions 2-8 of the '154 Patent; Contention 1 for Claim 29 of the '408 Patent; Contention 1 of Claim 10 of the '494 Patent; and Contention 1 for Claims 6 and 7 of the '968 Patent—do not comport with the Court's Claim Construction Order. Qualys therefore moves to strike those portions of Finjan's contentions containing these improper theories; namely, pages 000132-134, 386-392, 394-400, 404, 405, 409, 410, 435, 443, 451, 465, 472, and 473 in D.I. 100-11 and Exhibit 11.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Qualys's motion to strike Finjan's infringement contentions.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | WILSON SONSINI GOODRICH & ROSATI |
| Dated:  October 30, 2020 | By:  */s/ Christopher D. Mays* |
|  | CHRISTOPHER D. MAYS |
|  | *Counsel for* QUALYS INC. |