November 5, 2020

**VIA ELECTRONIC FILING**

Honorable Thomas S. Hixon
U.S. District Court, Northern District of California
Oakland Courthouse
Courtroom G – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:     Joint Discovery Statement
        *Finjan, Inc. v. Qualys Inc.*, Case No. 4:18-cv-07229-YGR

Dear Magistrate Judge Hixson:

Pursuant to the Court's November 4, 2020 Order (D129), the parties submit the following joint statement regarding Plaintiff Finjan, Inc.'s ("Finjan") request for an order compelling Defendant Qualys Inc. ("Qualys") to provide access to its source code review computer. The parties attest that they met and conferred on this issue by teleconference on October 29, 2020.[1]

Respectfully submitted,

*/s/ Jason W. Wolff*
Jason W. Wolff (State Bar No. 215819)
FISH & RICHARDSON P.C.

*Attorneys for Plaintiff*
Finjan, Inc.


*/s/ Ryan R. Smith*
Ryan R. Smith (State Bar No. 229323)
WILSON SONSINI GOODRICH & ROSATI P.C.

*Attorneys for Defendant*
Qualys Inc.

---

[1] Due to the COVID-19 pandemic, the parties met and conferred by teleconference in order to satisfy the in-person meet and confer requirement for discovery dispute resolution under the Court's Standing Order.

**Finjan's Position**

Finjan seeks continued access to the source code review computer that Qualys made available for inspection to satisfy this Court's Patent Local Rules. *See* Qualys Patent L.R. 3-3, 3-4 Disclosures at 93 ("Qualys is in the process of making its source code available for inspection to show the operation of the Accused Instrumentalities (as defined above). Qualys does so according to the provisions of the Protective Order governing the production of source code."). To be clear, any further review by Finjan's experts will be focused only on the infringement theories an instrumentalities identified in Finjan's Patent L.R. infringement contentions and, if necessary, any arguments made by Qualys's experts that rely on source code.

Opening expert reports are due on December 1, 2020. Finjan's experts require access to Qualys's source code to analyze the code in the format it is kept in the ordinary course of business (*i.e.*, electronically), along with the change log information regarding the releases of each accused product, which Qualys has relied upon under Rule 33(d) to identify release dates of the accused products. Currently, Finjan's experts can only review paper copies of source code excerpts, which means they cannot use the software tools on the source code review computer to confirm, among other things, the relationships between source code functions in their native environment or the metadata of the corresponding source code files.

Source code review is expert discovery. As explained in *TQ Delta, LLC v. 2Wire, Inc.*, it is logical for a party to undertake source code review during expert discovery. Civ. Action No. 13-1835-RGA, 2019 WL 1529952, at *2 (D. Del., April. 9, 2019); *see also REC Software USA, Inc. v. Bamboo Sols. Corp.*, No. C11-0554JLR, 2012 WL 3527891, at *4 (W.D. Wash. Aug. 15, 2012) (denying motion to strike in part because source code was provided for inspection during expert discovery); *Cvent, Inc. v. RainFocus, Inc.*, No. 217CV00230RJSDBP, 2019 WL 7837157, at *3 (D. Utah Apr. 4, 2019) (confirming that access to source code must be provided "for the remainder of the fact and expert discovery period").

In fact, source code made available for inspection, like any other document produced in discovery, should remain available to the receiving party through trial. *See Juniper Networks, Inc. v. Bahattab*, No. CV 07-1771 (PLF)(AK), 2008 WL 11403235, at *3 (D.D.C. Nov. 12, 2008) (denying motion for a protective order that would have terminated access to source code review computers after expert discovery and instead providing "24-hour access to the source code … through the close of trial"); *see also Baxter Int'l, Inc. v. Carefusion Corp.*, 2017 WL 2773077, at §C.7 (N.D. Ill. Feb. 24, 2017) (Joint Status Report confirming that source code would be available for inspection "throughout fact and expert discovery, and that … the code [would be made] available for Baxter's use at trial.").

Not surprisingly, numerous protective orders expressly require source code review computers be made available for inspection through trial and at least until the close of expert discovery. *See, e.g., Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 10817203, at *7 (N.D. Cal. Jan. 30, 2012) ("The Confidential Source Code Computer shall be made available … at least until the close of expert discovery."); *Enfish LLC v. Microsoft Corp.*, No. 2:12-cv-07360-AG-MRW, D.I. 107 (C.D. Cal. Oct. 7, 2013) ("Each Producing Party shall make source code available for inspection … until expert discovery … concludes."); *Walker Digital, LLC v. Google, Inc.*, 1:11-cv-00309-SLR, D.I. 153 at 13 (D. Del. Sept. 5, 2012) ("The

1

Receiving Party may inspect the source code as many times or days as reasonably necessary for preparation of its case until … the close of expert discovery."); *In the Matter of Certain Elec. Devices,* USITC Inv. No. 337-TA-771, 2011 WL 2355097 at *2 (June 13, 2011) ("Confidential Source Code Computer shall be made available … until the close of expert discovery.")

If Qualys wanted to terminate access to the source code at the close of fact discovery, Qualys should have requested a corresponding protective order. It did not. Accordingly, the Protective Order here states only that: "source code produced in discovery shall be made available for inspection." D34 at ¶9(c). There is no provision terminating Finjan's access to the source code at the close of fact discovery. And no rule or order required Finjan to schedule its experts' access to the source code review computer prior to expert discovery or required Finjan's experts to complete their review of the source code prior to expert discovery. And again, Finjan understands its analysis is bound by its PLR infringement contentions.

Furthermore, Qualys's interrogatory responses direct Finjan to Qualys's source code review computer to determine:

(1) the identity of all releases or versions of the accused products; and

(2) the identity of the accused products that correspond to the source code including the name and version number, the directories and subdirectories of the source code, and the last date the source code was modified.

*See, e.g.*, 10/1/2020 Resp. to Interrogatory Nos. 1-6 at pp. 8-9 ("Qualys has made the source code for each accused product available to Finjan for inspection…. The answer to this interrogatory may be obtained through such an inspection."). Determining this information, however, is a task for Finjan's experts (*i.e.*, it is expert discovery).

Moreover, Qualys's supplemental interrogatory responses, which were served on October 1, 2020 (the same day Qualys apparently terminated Finjan's access to the source code), make arguments that Qualys's source code does not practice limitations of the asserted claims. *See* 10/1/2020 Resp. to Interrogatory Nos. 12-19 at pp. 6-27. They also direct Finjan to source code print outs as well as Qualys's invalidity contentions, which rely on Qualys's source code. *See* 10/1/2020 Resp. to Interrogatory Nos. 1-7 at pp. 6-7, 9. Finjan's experts require access to the source code review computer to analyze Qualys's belated arguments and to confirm whether Qualys's newly cited source code affects their opinions. Finjan's experts may also require access to the source code review computer when preparing rebuttal expert reports.

Finally, it is unfair for Qualys and/or its experts to have access to the code during expert discovery and trial, when Finjan and its experts do not have access. *See* Qualys 10/1/2020 Resp. to Interrogatory Nos. 12-19 at 27 ("Through expert reports and testimony, *Qualys may rely upon any part of the source code repository made available for inspection*.") (emphasis added). While Qualys has intimated that its experts will not have continued access to the source code (a commitment it does not make below), it has not said what code they already possess, nor represented that its counsel or its own engineers will not have continued access to the code.

During the Nov. 4, 2020 teleconference with the Court regarding this issue, Qualys complained that Finjan did identify any specific discovery requests, which accused products the

experts would inspect, and why further inspection is required.  The first two arguments miss the point.  Finjan is not moving to compel further responses to discovery or to review source code for a sub-set of accused products.  It is not asking to print new source code.  Finjan is simply seeking access to the source code review computer that Qualys previously made available for inspection to comply with its Patent L.R. 3-4(a) disclosures.  With respect to the third argument, as previously explained, inspection is required because reviewing Qualys's source code in its native environment is the most practical and logical way for Finjan's experts to perform their expert analyses and to finish their reports.

Qualys's argument that all expert review of source code must have been complete prior to expert discovery is unreasonable; particularly in view of Qualys's belated discovery responses.  It is also unreasonable because Qualys objected to the disclosure of its source code to Finjan's expert (an issue that was not resolved until Aug. 27, 2020 (D95)).  Qualys did not make its witnesses available for depositions regarding the source code until mid-Sept. 2020.  And we all were in the midst of a global pandemic that severely interrupted business as usual during fact discovery.  Furthermore, Qualys's argument is inconsistent with: (i) the provision of separate fact and expert discovery deadlines in the procedural schedule; and (ii) the express statement in the Protective Order that: "The Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of … expert reports."  D34 at ¶9(d).

Thus, Finjan respectfully requests the Court compel Qualys to provide access to its source code review computer for the remainder of this case.

### Qualys's Position

Requests for inspection are the subject of fact discovery, not expert discovery.  In *Ruiz-Bueno v. Scott,* the court denied a request for an expert to conduct a site inspection during expert discovery because expert discovery "is devoted to the exchange of expert reports and information about those reports, including the required Rule 26(a)(2) disclosures and depositions of the experts", while "site visits are fact discovery … and must be requested during the fact discovery period." No. 2:12-cv-0809, 2014 WL 576400, at *4 (S.D. Ohio Feb. 12, 2014).  The *Ruiz-Bueno* court reasoned that "[i]t would make little sense to have separate cutoff dates for fact and expert discovery if discovery of any information which might form the basis for expert opinions could be deferred to the 'expert discovery' phase." *Id. a*t 3.  Similarly, in *Cover v. Windsor Surry Co.,* the plaintiff made an inspection request where the response was not due until after the fact discovery cut-off, but still during expert discovery.  Although Judge Orrick did not address whether the inspection request could be considered expert discovery, he held that plaintiff had made an "untimely request for inspection" reasoning that "[Plaintiff] had many months to file this request for inspection" and denied the motion to extend fact discovery because it "would prejudice defendants and would further extend and disrupt the case schedule."  Case No. 14-CV-05262-WHO, 2016 WL 8231158, at *4 (N.D. Cal. Dec. 19, 2016); s*ee also, Alaska Community Action on Toxics v. Aurora Energy Services, LLC,* Case No. 3:09-cv-00255-TMB, 2012 WL 12537417, at *3 (D. Alaska April 4, 2012) (denying plaintiff's request for site inspection a week before the close of fact discovery because plaintiff never sought an extension of fact discovery).

For similar reasons, access to raw data for expert testing constitutes fact discovery, not expert discovery.  S*ee Gore v. 3M Co.,* No. 5:16-cv-716-BR, 2017 WL 5076021, at *2 (E.D. N.C.

3

Nov. 2, 2017) (holding that defendant's motion to compel production of raw pathology samples for expert testing was a request for fact discovery rather than expert discovery because "the pathology slides constitute facts upon which experts may base their opinions at trial, and are therefore distinct from the expert opinions themselves."); *see also Arkansas Game and Fish Com'n v. U.S.,* 74 Fed. Cl. 426, 430 (2006) (in denying the request for data, the court reasoned that "[t]he unevaluated data from the piezometers, however, would not be expert 'opinions . . .' even though the results of testing by the piezometers might well become 'data or other information considered by the [expert] in forming the opinions. . . or facts known . . . by an expert.'").

More generally, expert discovery is typically limited to discovery *of* expert witnesses, not fact gathering *by* expert witness. *See Shell Petroleum, Inc. v. U.S.,* 46 Fed. Cl. (2000) ("Shell has propounded discovery requests, after the time for serving discovery about facts has expired. The discovery requests are requests that seek 'factual,' not 'opinion' and not 'expert'-- information."); *Oil-Dri Corp. of Am. v. Nestle Purina Petcare Co.,* Case No. 15 C 1067, 2018 WL 6725873, at *3 (N.D. Ill. Dec. 21, 2018) (excluding expert testimony that repackaged a fact witness as an expert witness because it "end-run[s] the requirements of Rule 26(a)(2), as well as the separation of fact discovery (completed earlier) and expert discovery"); *Henry v. Quicken Loans Inc.,* No. 04-40346, 2008 WL 4735228, at *6 (E.D. Mich. Oct 15, 2008) ("Defendants cannot use an expert to develop facts after the close of fact discovery when those same facts could have been developed by attorneys during fact discovery."); *ParkerVision, Inc. v. Qualcomm Inc.,* Case No. 3:11-cv-719, 2013 WL 3771226 *5 (M.D. Fl. July 17, 2013) (denying motion to compel in expert discovery period for expert reports and transcripts because plaintiff "knew, or should have known, the information it now seeks may fall within the broader parameters of Rule 26(b)(1), but not the more limited scope of expert discovery.").

None of Finjan's cited cases hold that an inspection request constitutes expert discovery. Rather, they involve scenarios where parties had agreed to inspections or where a court had specifically ordered an inspection. *See TQ Delta, LLC v. 2Wire, Inc*., C.A. No. 13-1835-RGA, 2019 WL 1529952, at *2 (D. Del., April. 9, 2019) (noting that the source code was made available for inspection during expert discovery); *REC Software USA, Inc. v. Bamboo Sols. Corp*., No. C11-0554JLR, 2012 WL 3527891, at *4 (W.D. Wash. Aug. 15, 2012) (denying a motion to strike source code as prior art because the source code was made available for inspection during expert discovery); *Cvent, Inc. v. RainFocus, Inc*., No. 217CV00230RJSDBP, 2019 WL 7837157, at *3 (D. Utah Apr. 4, 2019) (holding that Plaintiff was entitled to have access to source code for the remainder of fact and expert discovery period because Defendant had failed to comply with the previously issued court order to provide access to its source code.); *Juniper Networks, Inc. v. Bahattab*, No. CV 07-1771 (PLF)(AK), 2008 WL 11403235, at *3 (D.D.C. Nov. 12, 2008) (holding that Defendant was permitted access to the source code throughout discovery and trial because the parties were unable to agree on the terms of the protective order); *Baxter Int'l, Inc. v. Carefusion Corp*., 2017 WL 2773077, at §C.7 (N.D. Ill. Feb. 24, 2017) (joint status report indicating parties' agreement for source code access throughout fact and expert discovery).

Finjan points-out that some protective orders require making source code review computers available for inspection during (or after) the close of expert discovery. That, however, cuts against Finjan's position. If the inspection of another party's property was truly expert discovery, there would be no need for those protective orders to specifically require that inspection requests be made during expert discovery. Here, the parties did not agree to such a provision.

Finjan also points-out that Qualys made its source code available for inspection pursuant to Patent Local Rule 3-4. The timing of that disclosure (59-days after the Case Management Conference) confirms that source code inspection is fact discovery, not expert discovery. Indeed, the Patent Local Rules exist to take the place of discovery requests that the parties "would likely have propounded had the patent local rules not provided for streamlined discovery." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-cv-05236-YGR, 2012 WL 6000798 at *2 (N.D. Cal., Nov. 30, 2012). The parties' litigation conduct bolsters this conclusion. Finjan made no fewer than 16 inspection requests totaling over 100 hours during fact discovery. Qualys permitted inspection in response to each request; two of these visits were during the pandemic in 2020. *See* D.I. 126-7, 126-8, 126-9, 126-10, 126-11. Finjan requested over 400 pages of the source code be printed and produced during fact discovery. Qualys produced the requested files, which Finjan's experts continue to have access to. Neither party ever suggested that source code inspections constituted premature expert discovery.

Although not responsive to whether an inspection request is fact discovery or expert discovery, Finjan devotes much of its brief to blaming Qualys for its own lack of diligence. Finjan's assertions are unfounded. Qualys did not cite "new source code" on October 1. In fact, Qualys has not identified *any* source code other than the paper print-outs which the experts already have in their possession.[2] Finjan also points to Qualys's October 1, 2020 supplemental interrogatory responses to suggest that Qualys referred Finjan to the source code computer. But Finjan did not quote from the supplement made on that date, and instead deceptively quotes from Qualys's First Supplemental Responses served ***December 10, 2019***. *See* Ex. A at 6, 8. Finjan also argues that Qualys's supplemental responses refer to its invalidity contentions; Yet, Qualys served its invalidity contentions on ***June 21, 2019***. Qualys also timely produced the change logs in advance of fact depositions. Suffice it to say, the "new" information that allegedly spurred Finjan's desire for additional source code inspection had been known for many months. Finjan also asserts that it would be inequitable for Qualys's experts to access Qualys's source code repository while denying that same access to Finjan's experts. However, Qualys has already certified that none of its experts have accessed Qualys's source code repository since the close of fact discovery and Qualys agrees that it will not provide any of its experts such access.

Finally, allowing Finjan's experts continued access to the source code during expert discovery would highly prejudice Qualys. Qualys relied on Finjan's identification of source code print-outs in preparing its 30(b)(6) witnesses, responding to written discovery, and developing its non-infringement defenses. Finjan should not be permitted to circumvent the fact discovery deadline by allowing its experts to search for additional source code files that will appear for the first time in an opening expert report, especially given the 30-day turnaround time for Qualys's rebuttal reports.

---

[2] Qualys sent Finjan a letter on July 23, 2020, identifying deficiencies in Finjan's response to Interrogatory No. 7 including that Finjan failed to identify any source code for two of the accused products. *See* Ex. B. Finjan was thus put on notice over two months prior to the close of fact discovery that Qualys had concerns about the completeness of its source code identification, yet did not conduct further source code inspections nor did it amend its response to the interrogatory.

5

## **ATTESTATION**

In accordance with Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from any other signatory to this document.

*/s/ Jason W. Wolff*
Jason W. Wolff