UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FINJAN, LLC,<br><br>           Plaintiff,<br><br>    v.<br><br>QUALYS INC.,<br><br>           Defendant. | Case No. 18-cv-07229-YGR (TSH)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. Nos. 131, 136, 139 |

       The parties have filed a joint discovery letter brief at ECF No. 131 concerning whether Finjan may have continued access to Qualys's source code in electronic format on the review computer on which Qualys had made the code available until October 1, 2020. Finjan wants this access so that its experts may continue to review the source code in preparing their expert reports.

       At ECF No. 78, the parties stipulated to, and the Court ordered, the current case schedule. Fact discovery closed on October 1, 2020. Opening expert reports are due December 1, 2020, which by design was two months after the close of fact discovery. Rebuttal expert reports are due six weeks after the opening reports. And the close of expert discovery is March 5, 2021, which is one month after the rebuttal reports are due. Therefore, since fact discovery is closed, the Court must decide whether Finjan's continued access to Qualys's source code constitutes fact discovery or expert discovery. If it is the former, Finjan is no longer entitled to it and, indeed, the letter brief itself is untimely. *See* Civil Local Rule 37-3 (deadline to move to compel on fact discovery is seven days after fact discovery cutoff).

       The question does not seem close. Inspecting your opponent's materials or obtaining or accessing data or information is fact discovery. It is explicitly governed by Federal Rule of Civil Procedure 34. By contrast, expert discovery means the disclosures, information and depositions

1    referred to in Federal Rule of Civil Procedure 26(a)(2) and (b)(4).  *See Henry v. Quicken Loans*
2    *Inc.*, 2008 WL 4735228, at *6 (E.D. Mich. Oct. 15, 2008) ("[B]ased on the design of the Federal
3    Rules of Civil Procedure, there is an apparent presumption that data for an expert report should be
4    gathered during fact discovery and that the extended deadline for the expert report is provided to
5    give the expert time to thoroughly analyze the collected data."); *Ruiz-Bueno v. Scott*, 2014 WL
6    576400, at *4 (S.D. Ohio Feb. 12, 2014) ("This Court knows exactly what it intended by setting
7    separate dates for the completion of fact and expert discovery.  The latter type of discovery is
8    devoted to the exchange of expert reports and information about those reports, including the
9    required Rule 26(a)(2) disclosures and depositions of the experts."); *Sparton Corp. v. U.S.*, 77
10   Fed.Cl. 10, 14 (Ct. Fed. Claims 2007) ("[E]xpert opinions are to be distinguished from the facts
11   upon which they rely . . . [¶]  The fact discovery addressed by RCFC 34(a) differs from the expert
12   discovery covered by RCFC 26, which provides that expert discovery will be carried out through
13   mandatory disclosure of the reports of experts expected to testify at trial, and through
14   interrogatories or depositions . . .") (quoting *Arkansas Game & Fish Comm'n v. U.S.*, 74 Fed.Cl.
15   426, 429-30 (2006)).
16        Just because you want access to materials for the purpose of enabling your expert to
17   conduct an analysis and write a report doesn't mean you're asking for expert discovery.  The plain
18   language of Rule 26 makes clear that expert discovery means discovery *of* the expert, not *by* the
19   expert.  *See ParkerVision, Inc., v. Qualcomm Inc.*, 2013 WL 3771226, at *4 (M.D. Fl. July 17,
20   2013) ("[T]he expert discovery period in the Amended CMSO does not provide an extended
21   period of document discovery related to the disclosed experts; rather, it allows for an extended
22   period of time to exchange expert reports pertaining to the current litigation and to complete
23   expert depositions."); *see also, e.g., Gore v. 3M Company*, 2017 WL 5076021, at *2 (E.D.N.C.
24   Nov. 3, 2017) ("[T]he pathology slides constitute facts upon which experts may base their
25   opinions at trial, and therefore are distinct from the expert opinions themselves. Accordingly, the
26   court finds the pathology slides were subject to the March 6, 2017 fact discovery deadline . . .").
27        If the desire to obtain information so your expert can use it were enough to turn something
28   into expert discovery, then the fact discovery cutoff in patent infringement cases would be nearly

meaningless because almost all of the fact discovery is designed to support one or more expert reports. *See Ruiz-Bueno*, 2014 WL 576400, at *3 ("[M]uch of the information produced during 'fact discovery' is used as a foundation for expert opinions.  It would make little sense to have separate cutoff dates for fact and expert discovery if discovery of any information which might form the basis for expert opinions could be deferred to the 'expert discovery' phase; that phase, which is usually much shorter than the fact discovery phase, would then turn out to be more extensive, and it would be very difficult to determine when discovery was really concluded."); *United States v. North East Medical Services*, 2014 WL 7208627, at *5 (N.D. Cal. Dec. 17, 2014) ("NEMS's position elides the distinction between fact discovery and expert discovery. . . . Documents that have a direct bearing on the factual disputes in the case are the subject of fact discovery, which often (as here) concludes before expert discovery so that the parties may rely on a complete factual record to inform their own experts and depose their opponents' experts.").

Finjan cites some cases in which source code was available for the expert to review after the close of fact discovery, but in none of those cases did the court actually decide the issue presented here, namely, whether access to source code was required after the close of fact discovery.  *See TQ Delta, LLC v. 2Wire, Inc.*, 2019 WL 1529952, at *2 (D. Del. April 9, 2019) (denying motion to strike supplemental expert report because the delay was due to the expert's unexpected inability to access source code for a period of time during expert discovery); *REC Software USA, Inc. v. Bamboo Solutions Corp.*, 2012 WL 3527891, at *4 (W.D. Wash. Aug. 15, 2012) (denying motion to strike references to Windows 3.0 source code in Microsoft's expert report because Microsoft diligently made the code available during expert discovery after learning that it had mistakenly failed to provide it earlier).  Those cases are therefore off point and do not assist Finjan.  The closest Finjan comes is *Cvent, Inc. v. RainFocus, Inc.*, 2019 WL 7837157, at *3 (D. Utah April 4, 2019), in which the court ordered the defendant to make its source code available "for the remainder of the fact and expert discovery period in this case up to an additional 100 hours of review," but the decision contains no analysis of why access should be provided after the close of fact discovery, rendering that case unhelpful as well.

Finjan cites *Juniper Networks, Inc. v. Bahattab*, 2008 WL 11403235, at *3 (D.D.C. Nov.

3

12, 2008), in which the court found "that there is *good cause* for Defendant to have 24-hour access to the source code housed at the third-party site through the close of trial in this case. Because of the volume of information to be analyzed, Defendant should be permitted to have full access to the source code throughout discovery and trial." (emphasis added). However, good cause is a different thing entirely. It is the standard under Federal Rule of Civil Procedure 16(b)(4) for *modifying* a scheduling order. Such a motion would have to be directed to Judge Gonzalez Rogers. The undersigned is merely enforcing the existing scheduling order.

Finjan is correct that sometimes litigants agree to make source code available after fact discovery. *See Baxter Int'l, Inc. v. Carefusion Corp.*, 2017 WL 2773077, at § C.7 (N.D. Ill. Feb. 24, 2017) (Joint Status Report confirming that source code would be available for inspection "throughout fact and expert discovery, and that … the code [would be made] available for Baxter's use at trial."); *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 10817203, at *7 (N.D. Cal. Jan. 30, 2012) (stipulated protective order providing that "[t]he Confidential Source Code Computer shall be made available … at least until the close of expert discovery."); *In the Matter of Certain Elec. Devices*, 2011 WL 2355097 at *2 (U.S.I.T.C. June 13, 2011) (joint motion to amend a protective order, providing that "Confidential Source Code Computer shall be made available . . . until the close of expert discovery."). However, that does not help Finjan because here Qualys did not agree.

Alternatively, Finjan argues that Qualys did agree to provide access to its source code through the close of expert discovery in the stipulated protective order, ECF No. 34, which states in paragraph 9(c): "Any source code *produced in discovery* shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon location." (emphasis added). Finjan also points to paragraph 9(d), which states that "[t]he Receiving Party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial . . ." However, Finjan's argument is entirely circular. It assumes without explanation that "produced in discovery" means expert discovery. And it assumes that a party's

4

1 ability to request documents to use for expert reports or trial means that it may continue to request
2 documents through the close of expert discovery or potentially through trial. Both of those
3 assumptions are wrong. As explained above, inspection and evidence gathering are fact discovery.
4 Expert discovery means the expert disclosures and depositions provided for in Rule 26. There is
5 nothing in the protective order that is contrary to this.

6 Finjan also argues that on the last day of fact discovery (October 1, 2020), Qualys served
7 updated interrogatory responses that stated that Qualys has made the source code for each accused
8 product available for inspection, and the answer may be obtained through such an inspection.
9 Finjan argues that it is unfair for Qualys to tell Finjan *on October 1* that the answer to an
10 interrogatory can be found by inspecting the source code and to simultaneously cutoff Finjan's
11 access to the source code, thus preventing it from finding the answer to its interrogatory. And,
12 yes, if such a thing had happened, it would have been unfair, and Finjan's remedy would have
13 been to file a timely motion to compel by October 8, 2020, which it did not do.

14 However, it didn't happen. Finjan cites pages 8-9 of Qualys's October 1 responses to
15 interrogatories 1-6 (ECF No. 131 at 3), and on page 9 Qualys does refer to the source code being
16 available for inspection. ECF No. 135-3. However, Qualys said that in its *first* supplemental
17 response to interrogatory 4 (*see id.*), which was actually served on December 10, 2019 (ECF No.
18 131-1). As is common when a litigant amends discovery responses, Qualys's October 1, 2020
19 supplemental responses included all of the prior responses in addition to the new
20 supplementations. Qualys's new supplementation on October 1 was the *second* supplemental
21 response to interrogatory 4, which did *not* tell Finjan it could find the answer to the interrogatory
22 in the source code made available for inspection. ECF No. 135-3. Accordingly, Finjan's
23 argument that Qualys's October 1, 2020 amended discovery responses told Finjan it could find the
24 answers in the source code available for inspection is a misrepresentation.

25 Finjan also says that Qualys's October 1, 2020 amended interrogatory responses direct
26 Finjan to Qualys's invalidity contentions, cite source code print-outs, and make arguments that
27 Qualys's source code does not practice certain limitations of the asserted claims. That part, at
28 least, is true. But Finjan omits to mention that Qualys served its invalidity contentions on June 21,

5

2019 (ECF No. 136-1).  Qualys also says that the source code print-outs had been previously supplied to Finjan's experts, and Finjan does not deny this.  Finjan's argument thus shrinks to the assertion that the October 1, 2020 *citation* to the invalidity contentions and source code print-outs is the event that first put Finjan on notice that those documents mattered, and that the non-infringement arguments in the October 1 amended responses are new.  That argument will not fly with the invalidity contentions, given the role they play under this District's Patent Local Rules.  As for the print-outs and the non-infringement arguments, if it's really true that the October 1, 2020 amended responses were the first time Finjan was put on notice that those print-outs mattered and were the first time Finjan heard those non-infringement arguments, it had seven days to move to compel further access to the source code, *see* Civil Local Rule 37-3 – a deadline it did not meet.  Finjan missed that deadline by several weeks.[1]

Finally, Finjan complains that it would be unfair for Qualys's experts to have access to the source code during expert discovery and trial if Finjan's experts did not.  And, yes, that would be unfair.  However, Qualys states that it "has already certified that none of its experts have accessed Qualys's source code repository since the close of fact discovery and Qualys agrees that it will not provide any of its experts such access."  ECF No. 131 at 6.

Accordingly, Finjan's motion for continued access to Qualys's source code is denied.

**IT IS SO ORDERED.**

Dated: November 10, 2020

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] The parties agree that the first time Finjan requested continued access to Qualys's source code on or after the October 1, 2020 fact discovery cutoff was October 18.  ECF No. 139.  By then it was already too late to move to compel.