EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
TALIN GORDNIA (SBN 274213)
tgordnia@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

FINJAN LLC

Plaintiff,

v.

QUALYS INC.,

Defendant.

CASE NO.: 4:18-cv-07229-YGR (TSH)

**DEFENDANT QUALYS INC.'S MOTION TO STRIKE PORTIONS OF PLAINTIFF FINJAN LLC'S INFRINGEMENT AND DAMAGES EXPERT REPORTS**

**Judge: Hon. Yvonne Gonzalez Rogers**

**Date: March 2, 2021**
**Time: 2:00pm**
**Location: Zoom Teleconference**[1]

**HIGHLY CONFIDENTIAL – ATTORNEYS EYE ONLY**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

[1] Per the Court's Notice regarding Civil Law and Motion Calendars and its Order at D.I. 48.

# TABLE OF CONTENTS

TABLE OF CONTENTS .......... 1

NOTICE OF MOTION AND MOTION .......... III

STATEMENT OF ISSUES AND RELIEF REQUESTED .......... III

MEMORANDUM OF POINTS AND AUTHORITIES .......... 1

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

A. Background of Qualys's Products .......... 2

B. Medvidovic's Pattern of Introducing New Infringement Theories in Reports. .......... 3

III. ARGUMENT .......... 4

A. Medvidovic's New Cloud Agent Theory .......... 5

B. Medvidovic's New Dynamic Building and Detection Theories .......... 5

1. New Theories Re: Building and Detecting "*While . . . Receiving the Incoming Stream*" .......... 6

2. Different Accused Functionality .......... 8

3. Finjan Consciously Elected Not to Amend Its Contentions .......... 9

C. Medvidovic's New Claim 29 Theories .......... 10

D. Medvidovic's New "Receiving" Theory .......... 12

E. Medvidovic's New Date of First Infringement Theory .......... 13

F. Medvidovic Introduces a New Doctrine of Equivalents Theory Not Previously Disclosed in the Infringement Contentions. .......... 14

G. Finjan Failed to Preserve the Foreign Sales Theories in Medvidovic's, Cole's and McDuff's Reports .......... 14

IV. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*ASUS Comp. Int'l v. Round Rock Research, LLC*,
No. 12-cv-02099-JST, 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)....4, 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
No. 5:13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ....1

*Finjan, Inc. v. Blue Coat Sys., LLC*,
No. 15-cv-03295, 2017 U.S. Dist. LEXIS 220192 (N.D. Cal. July 28, 2017)....5

*Finjan, Inc. v. Cisco Sys., Inc.*,
No. 5:17-cv-00072-BLF, 2019 WL 6174936 (N.D. Cal. Nov. 20, 2019)....1, 3

*Finjan, Inc. v. Cisco Sys., Inc.*,
No. 5:17-cv-00072-BLF(SVK), 2020 WL 2322923 (N.D. Cal. May 11, 2020)....1, 4

*Finjan, Inc. v. Juniper Network, Inc., et al.*,
No. 3:17-cv-05659, 2021 WL 75735 (N.D. Cal. Jan. 9, 2021)....1

*Finjan, Inc. v. Proofpoint, Inc.*,
No. 13-CV-05808-HSG, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015) ....7

*Finjan, Inc. v. Symantec Corp.*,
No. 4:14-cv-02998-HSG(JSC), 2018 WL 620169 (N.D. Cal. Jan. 30, 2018)....1

*Huawei Techs., Co., Ltd. V. Samsung Elecs. Co., Ltd.*,
340 F. Supp. 3d 934 (N.D. Cal. 2018) ....14

*Theranos, Inc. v. Fuisz Pharma LLC*,
No. 11-CV-05236-YGR, 2012 WL 6000798 (N.D. Cal. Nov. 30, 2012)....4, 7

**RULES**

Patent L.R. 3-1 ....4, 7

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on Tuesday, March 2, 2021 at 2:00pm or as soon thereafter as this matter may be heard before Judge Gonzalez Rogers of the United States District Court for the Northern District of California via Zoom video conference and/or in Courtroom 1, 4th Floor, of 1301 Clay Street in Oakland, California (per the Court's March 12, 2020 Order (D.I. 48) and its Notice regarding Civil Law and Motion Calendars), defendant Qualys Inc. ("Qualys") will and hereby does move to strike portions of plaintiff Finjan LLC's ("Finjan") expert reports

## STATEMENT OF ISSUES AND RELIEF REQUESTED

Qualys seeks an order striking portions of the "Expert Report of Nenad Medvidovic, Ph.D.," "Opening Expert Report of Eric Cold, Ph.D.," and "Expert Report of DeForest McDuff, Ph.D." Medvidovic's, Cole's and McDuff's expert reports all proffer infringement theories that exceed the scope of Finjan's Local Patent Rule Contentions. Dr. Medvidovic introduces new theories of infringement not previously disclosed in Finjan's Infringement Contentions. Drs. Cole and McDuff offer speculative theories on worldwide infringement and damages even though such theories were never disclosed in Finjan's Infringement Contentions or Damages Contentions and have been held as outside the scope of the operative Infringement Contentions. *See* D.I. 105 at 4; D.I. 152. Qualys therefore requests that the Court strike the portions of those expert reports containing these improper theories, identified by the highlighted portions of Exhibits 1, 2, and 13 to the Declaration of Christopher D. Mays in support of this Motion.[2]

[2] Citations to "Ex. XX" or "Exhibit XX" refer to the exhibits to the Declaration of Christopher D. Mays, filed concurrently with this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Finjan has been repeatedly chastised by courts in this District for failing to properly disclose its infringement theories. It has made a pattern out of using expert reports to inject new theories into the litigation:

> After discovering its infringement theory covered only a minute portion of Juniper's revenue base, on the eve of [trial] Finjan flip flopped and came up with a new infringement theory, one which would capture more of Juniper's products and inflate the target revenue base. ***Finjan tried to sneak this theory in with its expert-damages report, but we caught it***, and the Daubert order excluded that trick.

*Finjan, Inc. v. Juniper Network, Inc., et al.*, Case No. 3:17-cv-05659, 2021 WL 75735, at *2 (N.D. Cal. Jan. 9, 2021) (emphasis added); *see also Finjan, Inc. v. Symantec Corp.,* Case No. 4:14-cv-02998-HSG(JSC), 2018 WL 620169 (N.D. Cal. Jan. 30, 2018) (striking portions of Finjan's expert reports for including theories outside the scope of its contentions); *Finjan, Inc. v. Blue Coat Sys., Inc.,* Case No. 5:13-cv-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) (same); *Finjan, Inc. v. Cisco Sys., Inc.,* Case No. 5:17-cv-00072-BLF(SVK), 2020 WL 2322923 (N.D. Cal. May 11, 2020) (same); and *Finjan, Inc. v. Cisco Sys., Inc.,* Case No. 5:17-cv-00072-BLF, 2019 WL 6174936 (N.D. Cal. Nov. 20, 2019) (same).

Now Finjan is at it again. Finjan pervasively offered infringement theories for the '408 Patent that were extremely narrow and failed to address every claim limitation. Qualys raised these issues with Finjan months before the close of fact discovery, but Finjan consciously elected not to seek leave to amend the contentions with the Court. Instead, Finjan resorted to its same old playbook by relying on its expert, Dr. Nenad Medvidovic, to slip in a host of new infringement theories. Dr. Medvidovic himself has a rocky past with this problem, and has had his reports stricken for engaging in the same practices present here. Given this, particular scrutiny of his expert report is warranted. As detailed below, Medvidovic frequently exceeds the scope of Finjan's infringement contentions by accusing different devices, different functionality, and simply filling in new theories for limitations that Finjan skipped in its contentions. The Court should strike these new theories and opinions.

Further, despite the fact that the Court in this case has twice determined that Finjan failed to preserve any theory of foreign sales in its contentions, Drs. Medvidovic, Cole, and McDuff try to inject this issue into this case for a third time. This Court has already ruled that foreign sales is not part of the case, and should thus strike the corresponding portions of Medvidovic's, Cole's, and McDuff's reports.

In summary, Qualys seeks to strike the following paragraphs:

- From Medvidovic's expert report: ¶¶ 21-22, 160, 170, 172-174, 185, 187 fn. 6, 195-196, 214, 235-238, 250-253, 258, 262, 267-274, 276-300, 302-321, 323, 325, 327, 333-338, 415-425, 427-430, and 446.[3]
- From McDuff's expert report: ¶¶ 8c, 13, 78, 87, 126, Tables 7 and 8, and Attachments B-1, B-2, B-4, B-5, B-6, B-8, C-2, and J-1.
- From Cole's expert report: ¶¶ 1186, 1188-1189, and 1871-1873.

## II.  FACTUAL BACKGROUND

### A.  Background of Qualys's Products

Qualys is a computer security company that offers vulnerability detection solutions. Finjan's infringement expert, Medvidovic, describes a vulnerability as "a weakness in security that is subject to being exploited." Ex. 1 at ¶ 82. Medvidovic analogizes a vulnerability to "leaving the back door to a house unlocked." *Id.* Qualys's solution is called the Qualys Cloud Platform, which is Cloud-based (*i.e.* resides on the Internet) software that enables customers to scan devices on their local networks (such as network infrastructure, firewalls, and even end-user devices like employee computers) for such vulnerabilities.

Relevant to this motion, and as depicted by Qualys's expert, Dr. Rubin, the following is a general depiction of Qualys's architecture:

---

[3] For the Court's convenience, Qualys provides an index for identifying: (1) the paragraph(s) of Medvidovic's expert report to be struck; (2) the claim element the paragraph(s) pertains to; (3) pincites to the relevant portion of the Infringement Contentions; and (4) a brief statement regarding the basis for striking the paragraph(s) as Exhibit 10 to this motion.



Ex. 12 (Rebuttal Expert Report of Dr. Avi Rubin Regarding U.S. Patent No. 8,225,408) at 42. As depicted above, there are three general ways that Qualys's Cloud Platform interacts with a customer. The first uses a "scanner," which can take the form of a scanner appliance or a virtual scanner. The second is a Qualys "Cloud Agent," which is installed directly on a device that is to be scanned. In both cases, the scanners and Cloud Agents collect information and send that information to the Qualys Cloud Platform. For the purposes of this motion, a material difference between the scanners and the Cloud Agent is that a ***scanner*** analyzes the data locally and sends the scan result to the Cloud Platform, while the Cloud Agent sends raw data to the Cloud Platform, which analyzes that data and generates the scan result. *See* Ex.9 (Deposition Transcript of Holger Kruse ("Kruse Tr.")) at 33:9-17; 109:5-110:25. Either way, scan results are stored in a database. *See id.* at 76:11-77:23. The third way that customers interact with Qualys's Cloud Platform is by running a scan report, which involves querying the database of stored scan results. *See id.* at 78:14-23. Medvidovic appears to generally agree with this description in his report. *See* Ex. 1 at ¶¶ 88, 96-99, 107, 114, 116, 170.

**B. Medvidovic's Pattern of Introducing New Infringement Theories in Reports.**

Medvidovic has a history of providing expert opinions that exceed the scope of the Infringement Contentions. *See Finjan v. Cisco,* 2019 WL 6174936 (granting Cisco's motion to strike portions of Medvidovic's expert reports for exceeding the scope of Finjan's infringement

contentions and permitting Finjan to amend Medvidovic's expert report)); *Finjan v. Cisco,* 2020 WL 2322923 (granting Cisco's motion to strike portions of Medvidovic's amended expert report for exceeding the scope of Finjan's infringement contentions)). For example, in *Finjan v. Cisco*, Medvidovic rendered opinions regarding infringement theories not disclosed in Finjan's infringement contentions. *See Finjan v. Cisco,* 2020 WL 2322923 at *5-7.

Here, Medvidovic repeats history by offering multiple new theories of infringement that, like in the *Cisco* case, were not included in Finjan's infringement contentions. The Court should strike those opinions from Medvidovic's report pertaining to such undisclosed theories (identified in Exhibit 1).[4] *See ASUS Comp. Int'l v. Round Rock Research, LLC,* No. 12-cv-02099-JST, 2014 WL 1463609, at *3-4 (N.D. Cal. Apr. 11, 2014) (striking expert testimony where expert opinions advanced new theories not disclosed in infringement contentions).

## III. ARGUMENT

A "party may not use an expert report to introduce new infringement theories, new infringing instrumentalities, new invalidity theories, or new prior art references not disclosed in the parties' infringement contentions or invalidity contentions." *ASUS v. Round Rock, LLC,* 2014 WL 1463609 at *1. "[T]he purpose of [Patent Local Rule 3-1] is to require the party claiming infringement to crystallize its theories of the case early in the litigation and to ***adhere to those theories once disclosed***." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *2 (N.D. Cal. Nov. 30, 2012) (emphasis added). Similarly:

> The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed "theory" is in fact a new theory or new element of the accused product alleged to practice a particular claim that was not previously identified in the plaintiff's contentions, or whether the "theory" is instead the identification of additional evidentiary proof showing that the accused element did in fact practice the limitation. . . . If the theory is new, prejudice is "inherent in the assertion of a new theory after discovery has closed."

*Finjan, Inc. v. Blue Coat Sys., LLC,* No. 15-cv-03295, 2017 U.S. Dist. LEXIS 220192, *13 (N.D. Cal. July 28, 2017) (citations omitted).

---

[4] For the Court's convenience, Qualys provides an annotated and excerpted copy of Medvidovic's expert report specifically identifying the paragraphs Qualys seeks to strike. The same pin citations identified throughout this Motion apply to that exhibit as well.

**A. Medvidovic's New Cloud Agent Theory**

Qualys moves to strike ¶¶ 160, 170, 183, 185, 187 fn. 6, 195-196, 214, 235-238, 258, 287-289, 303-309, 325, 327, 415, 417-419, 427-428, and 446 of the Medvidovic report as containing previously undisclosed theories containing alleged infringement involving Qualys's Cloud Agent. Finjan's infringement contentions for the '408 Patent do not accuse the Cloud Agent of practicing any limitation of any asserted claim of the '408 Patent. Indeed, "Cloud Agent" appears nowhere in Finjan's '408 claim charts. *See generally* Ex. 5. Finjan's only theories of infringement disclosed in its claim charts variously accuse either the Qualys Cloud Platform and/or Qualys's Scanner Appliance/Virtual Appliance. *See, e.g., id.* at 2-3 (accusing the Cloud Platform and Scanner Appliance); 6 (referencing databases stored on the Cloud Platform); 15 (referencing API calls to Cloud Platform); and 17 (referencing scan reports generated by Cloud Platform). Notably, Finjan did specifically include Cloud Agents theories in its contentions for the other Patents-in-Suit. *See, e.g.,* D.I. 100-11 at 000036, 000119, 000189, 000321, 000374, and 000486; *see id.* at 000408-469. Finjan consciously declined to include any Cloud Agent theories of infringement for the '408 Patent and should not be permitted to have its expert opine on this.

However, Medvidovic dramatically expands Finjan's infringement theories by offering over two dozen different infringement opinions regarding the Cloud Agents in his report. *See* Ex. 1 at ¶¶ 160, 170, 175, 178, 183, 185, 187 fn. 6, 195-196, 214, 235-238, 258, 287-289, 303, 309, 325, 327, 415, 417-419, 427-428, 446. None of these theories were included in Finjan's infringement contentions, and the Court should strike the foregoing paragraphs from Medvidovic's report accordingly.

**B. Medvidovic's New Dynamic Building and Detection Theories**

Qualys moves to strike ¶¶ 238, 262, 267-274, 276-300, 302-320, 325, 327, 329, 333, and 335-337 because they pertain to new theories regarding the dynamic building and detection steps of the '408 Claims. Medvidovic's new theories fall into two groups. First, he provides new theories regarding how the building and detection steps occur while still receiving the alleged incoming stream of program code. Second, he accuses entirely different features of performing the detecting and building step than what Finjan disclosed in its infringement contentions.

### 1. New Theories Re: Building and Detecting "*While . . . Receiving the Incoming Stream*"

Every claim of the '408 Patent requires two acts occur "dynamically," *i.e.,* while receiving the incoming stream of program code. First, the Claims each require "dynamically building . . . a parse tree whose nodes represent tokens and patterns." *See* Ex. 4 ('408 Patent) at Claims 1, 22, 23, 29, 35. This must occur while still receiving the claimed incoming stream of program code. *See id.* Second, the Claims each require "dynamically detecting . . .indicators of potential exploits" while the "dynamic building" is still ongoing. *Id.* By extension, this means that the dynamic detection must also occur while still receiving the claimed incoming stream of program code. *See id.*

Finjan, however, did not disclose theories about these steps in its infringement contentions. In its Infringement Contentions, Finjan merely restates parts of the claim language and says it occurs "during the scans":

<u>1f. Contention 1 – Accused Products build parse trees during malware detection scans</u>

During the scans described above in 1(d), each Accused Product builds parse trees, as shown below. The parse tress are built using the parsers rules described in 1(d) above.

Sample code for v2 Host list & detection API

```
import qualysapi

from lxml import etree, objectify

qgc = qualysapi.connect()

# Start with first host, which starts at 1.

id_min = 1

while True:

  print 'Downloading hosts from ID %d' % id_min

  xml = qgc.request('/api/2.0/fo/asset/host/', {'action': 'list', 'ips': [illegible], 'truncation_limit': [illegible], 'id_min': id_min})

  # Parse.

  tree = etree.fromstring(xml)
```

https://community.qualys.com/docs/DOC-4523-qualys-api-client-examples

Ex. 5 at 15. For the claimed "dynamically building" step, Finjan states:

1g. Contention 1 – Accused Products build parse trees during malware detection scans

During the scans described above in 1(d), each Accused Product detects indicators of potential exploits based on node combinations from the parse tree, as shown below. The Accused Product detect node combinations based at least in part on the analyzer rules discussed above.

```
// Print out each scan reference, title, and status.

// Join the data into a string.

StringBuilder result = new StringBuilder();

//Loop through results

foreach (var scan in scans)

{

        result.AppendLine(scan.scan_ref + "  " + scan.title + "  " + scan.status);

}

Console.WriteLine(result.ToString());
```

https://community.qualys.com/docs/DOC-4523-qualys-api-client-examples

*Id.* at 16. Neither of these contentions say anything about how Finjan contends Qualys's products build a parse tree or detect potential exploits *while receiving the incoming stream of program code*. Finjan says nothing about when or how the code it highlights in its contention executed (let alone that it occurs while still receiving the incoming stream of program code). To compound on this problem, Finjan completely ignores the further requirement in Element 1g that dynamic detection must occur *while said dynamically building builds the parse tree*. *See id.* Finjan failed to provide a "meaningful description of its theories" for these limitations. *See Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *4 (N.D. Cal. Nov. 30, 2012); *see also Finjan, Inc. v. Proofpoint, Inc.,* No. 13-CV-05808-HSG, 2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015) ("Even more troublingly, the little explanation Finjan does provide is framed in high-level generalities that do not specifically relate to the claim elements identified in each Claim. *See* Pat. L.R. 3–1(c) (requiring the patentee to identify 'the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.')").

Dr. Medvidovic repeats this same error with regards to his opinions of the "indicating...within the incoming stream" claim element. *See* Ex. 1 at ¶ ¶ 321, 323, 325, 327, 329, 333, 335-337. Specifically, Finjan's infringement contentions for that element merely refer back to

the "dynamic detection" element. See Ex. 5 at 17-18. As noted above, the contentions for the dynamic detection element contain no theory of how detection allegedly occurs while still receiving an incoming stream.

Medvidovic's report attempts to fill these gaps by suddenly injecting theories for the missing limitations. [REDACTED] None of these features are referenced anywhere in Finjan's '408 claim charts. *See generally* Ex. 5. Accordingly, these theories, and their corresponding paragraphs, should be struck.

**2. Different Accused Functionality**

Finjan's infringement contentions include only one theory about which features of Qualys's products allegedly build a parse tree and detect incoming exploits. For both elements, Finjan relies on a single document that describes the operation of the "Qualys API." *See* Ex. 11; *compare id.* at FINJAN-QUALYS 042672-673 *with* Ex. 5 at 15; *compare id.* at FINJAN-QUALYS 042656 *with* Ex. 5 at 16. [REDACTED] Thus, Finjan's contentions for these elements were limited only to the Qualys API functionality found on [REDACTED] Medvidovic discussed Qualys API in ¶¶ 265 and 307 of his report.

However, Medvidovic also went significantly beyond the scope of Finjan's contentions by offering several new alternative theories about ***different*** functionality that he opined also met these limitations. [redacted] Medvidovic's opinions should be limited to functionality actually disclosed in Finjan's infringement contentions and thus the foregoing paragraphs should be struck.

### 3. Finjan Consciously Elected Not to Amend Its Contentions

Tellingly, Finjan knew about these deficiencies months before the close of fact discovery. On July 23, 2020, Qualys sent Finjan a letter detailing these and other problems in its infringement contentions. Qualys specifically noted that, as to the '408 Patent:

> In Claim 1, Finjan fails to identify structure or functionality for parse trees that are ***dynamically built*** or that the nodes of those trees represent tokens and patterns. Finjan also fails to identify structure or functionality showing that the dynamic detection occurs during the dynamic building of Claim Element 1f.

Ex. 6 at 15 (emphasis in original). Finjan ignored this issue in its August 13 response. *See* Ex. 7 at 15-17. Finjan did, however, acknowledge it would "supplement its [Infringement Contentions] in response to Qualys's letter." *Id.* at 18. Yet, even after fact discovery concluded, Finjan never lived up to its promise and never sought leave to amend its infringement contentions. Finjan should not now be allowed to use Medvidovic's report to sneak in contentions on elements it all but ignore in its contentions.

### C. Medvidovic's New Claim 29 Theories

Qualys moves to strike ¶¶ 415-417 and 427-430 of Medvidovic's Report because they include new infringement theories as to Claim 29. There are two elements of Finjan's Claim 29 infringement contentions are problematic:

> [Element 29b] a non-transitory computer-readable storage medium storing computer-executable program code that is executed by a computer to scan incoming program code
>
> [Element 29c] an accessor, stored on the medium and executed by the computer, for accessing descriptions of exploits in terms of patterns of tokens and rules, wherein exploits are portions of program code that are malicious, wherein tokens are lexical constructs of any one of a plurality of programming languages, and wherein rules designate certain patterns of tokens as forming programmatical constructs.

In Element 29b, Finjan provides a non-substantive and ambiguous contention that fails to identify any feature of the accused products with any specificity:

| Claim 29 | |
|---|---|
| 29a. A computer system for multi-lingual content scanning, comprising:<br><br>29b. a non-transitory computer-readable storage medium storing computer-executable program code that is executed by a computer to scan incoming program code;<br><br>29c. an accessor, stored on the medium and executed by the computer, for accessing descriptions of exploits in terms of patterns of tokens and rules, wherein exploits are portions of program code that are malicious, wherein tokens are lexical constructs of any one of a plurality of programming languages, and wherein rules designate certain patterns of tokens as forming programmatical constructs;<br><br>29c. a receiver, stored on the medium and executed by the computer, for receiving an incoming stream of program code;<br><br>29d. a multi-lingual language detector, stored on the medium and executed by the computer, operatively coupled with said receiver for detecting any specific one of the plurality of programming languages in which the incoming stream is written;<br><br>29e. a parser, stored on the medium and executed by the computer, operatively coupled with said accessor, with said receiver and with said language detector for dynamically building, while said receiver is receiving the incoming stream, a parse tree whose nodes represent tokens and rules vis-à-vis the specific programming language;<br><br>29f. an analyzer, stored on the medium and executed by the computer, operatively coupled with said parser, with said accessor and with said language detector, for dynamically detecting, while said parser is dynamically building the parse tree, patterns of nodes in the parse tree which are indicators of potential exploits, based on the descriptions of exploits vis-à-vis the specific programming language; and | See analysis for 1(d) above. The computer-readable storage medium described herein include RAM, ROM, floppy disks, CDs, portable memory storage devices, and similar media for storing the Qualys software for the Accused Products. |

Ex. 5 at 42. The only theory Finjan discloses for where this nondescript "storage medium" is located is found in its call-back to Element 1(d), which shows Finjan's contention that the "storage medium" is the database residing on the Cloud Platform, not a component of the scanner:



**1d. Contention 1 – Accused Products include a scanner that includes parser and analyzer rules**

The database of each Accused Product, as part of the Qualys Cloud computing environment, stores parser and analyzer rules that enables each Accused Product's respective scanner to scan and identify "vulnerabilities" (computer exploits) based on malicious content downloaded from a source computer, such as the Internet in a variety of languages.

*Id.* at 6. Finjan's contentions similarly allege this same database satisfies the Element 29c's "accessor":

*Id.* at 43.

Medvidovic's report offers a different theory for these limitations.

[redacted]. Finjan should be bound by its original theory and Medvidovic's improper new theory struck.

### D. Medvidovic's New "Receiving" Theory

Qualys moves to strike ¶¶ 185, 187, 195-197, and 214 of Medvidovic's Report as including an improper new theory [redacted]

Finjan's Infringement Contentions identify two theories of infringement:

- **Theory 1**: the Qualys Cloud Platform "receives content based on a client device requesting the content from a source computer, such as the Internet." Ex. 5 at 2.
- **Theory 2**: In the second theory, Qualys's Scanner Appliance and Virtual Scanner "receives content based on a client device requesting the content from a source computer, such as the Internet." *Id.* at 3-4.

Both of Finjan's theories involve a client device (*i.e.,* not the scanner) requesting content from an Internet-based source computer. Also, both of Finjan's theories accuse distinct components operating alone – *i.e.*, the Cloud Platform alone and/or the Scanner Appliance/Virtual Scanners alone.

Medvidovic's report jettisons the above-described theories. [redacted] Neither theory is disclosed in Finjan's infringement contentions.

---

[5] [redacted].

Medvidovic also offers the new theory that the Scanner Appliance and Virtual Scanner infringe by directly requesting content, rather than (as disclosed in Finjan's contentions) intercepting content requested by a distinct client device:

| Finjan's Infringement Contentions Appendix F (Ex. 5) at 3: | Medvidovic Report (Ex. 1) at ¶ 186: |
| --- | --- |
| As shown below, the content is received by each Accused Product (via the receiver of the Appliance Scanner) ***when a particular client device requests content provided by a source computer***. | [redacted] |

And, as discussed above in Section A above, Medvidovic includes a theory of Cloud Agent-based reception, a theory nowhere included in Finjan's infringement contentions. *Compare* Ex. 5 at 2-4 *with* Ex. 1 at ¶¶ 185, 187 fn. 6, 195-196. Qualys asks that the Court strike these new theories.

**E. Medvidovic's New Date of First Infringement Theory**

Qualys moves to strike ¶¶ 21-22, 262, and 277-283 from Medvidovic's report. In paragraph 21, Medvidovic opines that the first date of infringement for the '408 Patent is "no earlier than 2005." Ex. 1 at ¶ 21.[6] This is a new theory. Finjan's Infringement and Damages Contentions list November 29, 2018 as the theoretical date of first infringement for the '408 Patent. *See* D.I. 100-11 at 11, Ex. 8 at 4. Even Finjan's damages expert, McDuff, disputes Medvidovic's new opinion by identifying a different date of first infringement than Medvidovic. *See* Ex. 3 at Attachment F-2.

Medvidovic's identification of a new date of first infringement appears aimed at capturing a particular feature change in Qualys's Scanner Appliances and Virtual Scanners. [redacted]

[6] Qualys also objects to 2005 (years before the '408 issued) as legally correct.

[redacted] This new theory is subject to being struck for the reasons discussed above. In any event, because Medvidovic's 2005 theory is different from the theoretical date of first infringement Finjan advanced in its infringement contentions, it too should be struck. *See ASUS v. Round Rock*, 2014 WL 1463609 at *1 ("a party may not use an expert report to introduce new infringement theories . . . not disclosed in the parties' infringement contentions"); *see also Huawei Techs., Co., Ltd. V. Samsung Elecs. Co., Ltd.,* 340 F. Supp. 3d 934, 946 (N.D. Cal. 2018) (collecting cases).

**F. Medvidovic Introduces a New Doctrine of Equivalents Theory Not Previously Disclosed in the Infringement Contentions.**

Medvidovic opines on how Qualys infringes Claim Element 1d via the doctrine of equivalents. Ex. 1 at ¶¶ 250-253. However, the Infringement Contentions do not sufficiently disclose Finjan's doctrine of equivalents theory as they do not identify specific elements of the allegedly infringing products that meet the claim element under a doctrine of equivalents theory. *See* Ex. 5 at 13.

Courts in this district have previously found that:

> It is not sufficient in our District to simply disclose whether [the patentee] will assert a theory of infringement under the doctrine of equivalents. . . Rather, in infringement contentions, a party looking to rely on equivalents still has to ***describe how*** [the function/way/result] requirements are met.

*ASUS v. Round Rock,* 2014 WL 1463609, at *3 (emphasis in original) (internal citations and quotations omitted). Here, the Infringement Contentions merely recite boilerplate contentions that do not disclose how the Accused Products infringe under the doctrine of equivalents. *See* Ex. 5 at 13. Such barebones preservation of a doctrine of equivalents theory in the Infringement Contentions is insufficient to preserve a doctrine of equivalents theory for Medvidovic to opine on. Medvidovic's opinions on a doctrine of equivalents theory should thus be struck. *See ASUS v. Round Rock,* 2014 WL 1463609 at *3 (striking portions of an expert report that advanced a doctrine of equivalents theory not sufficiently disclosed in the infringement contentions).

**G. Finjan Failed to Preserve the Foreign Sales Theories in Medvidovic's, Cole's and McDuff's Reports**

Qualys moves to strike ¶¶ 172-174 of Medvidovic's report, ¶¶ 1186, 1188-1189, and 1871-1873 of Cole's report, and ¶¶ 8c, 13, 78, 87, 126, Tables 7 and 8, and Attachments B-1, B-2, B-4,

B-5, B-6, B-8, C-2, and J-1 of McDuff's report.[7] These paragraphs provide theories designed to capture Qualys's worldwide sales. But this issue has already been addressed twice in this case, and it was twice determined that Finjan failed to preserve in its infringement contentions any theory of infringement entitling to worldwide sales. *See generally* D.I. 105 and 152. For the same reasons previously determined, the Court should strike these paragraphs from Medvidovic's, Cole's, and McDuff's respective reports.

Finjan brought a motion to compel foreign sales discovery, which was denied because "Finjan is trying to obtain [foreign sales] discovery based on infringement theories that are way outside its infringement contentions." D.I. 105 at 4. Finjan then filed a motion for relief from that order, which the Court again denied. *See* D.I. 114; D.I. 152. Specifically, the Court found that "Finjan's infringement contentions describe a system that only infringes after assembly. Since the parties agree that any assembly takes place outside the United States, those products do not infringe, and their overseas sales are not relevant." D.I. 152 at 1 (citations omitted). The Court also rejected Finjan's argument that the act of writing code in the United States constitutes an act of infringement capturing foreign sales activity:

> Computer medium claims are not infringed by computer code that is written in the United States—they are infringed by *media* that stores infringing code. Finjan's contentions acknowledge as much by referencing media such as "RAM," "floppy disks," "CDs," and "similar media for storing the software." The problem of assembly thus remains exactly the same: infringement does not occur until a party stores all relevant code in a single medium. Otherwise a party could infringe by storing computer code on entirely different media (such as two different devices) that would infringe if someone cobbled it together.

*Id.* at 2.

Finjan now seeks to circumvent these prior orders by having Medvidovic, Cole, and McDuff render opinions that effectively capture the same foreign sales theory. The problem now is the same as it was then: Finjan's Infringement Contentions did not preserve a theory of infringement rendering foreign sales relevant to this case. *See* D.I. 105. Finjan appealed the

---

[7] For the Court's convenience, Qualys provides an annotated and excerpted copy of Cole's and McDuff's expert report specifically identifying the paragraphs Qualys seeks to strike as Exhibits 2 and 3, respectively.

Magistrate Judge's decision to the Court and lost. Finjan must now be bound to the constraints of its Infringement Contentions, which it insists "fully disclose the infringement issues in the case." Ex. 7 at 18.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Qualys's motion to strike portions of the expert reports of Drs. Nenad Medvidovic, Eric Cole, and DeForest McDuff that exceed the scope of Finjan's Infringement Contentions.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated: January 22, 2021

By: *[/s/ Christopher D. Mays]*
CHRISTOPHER D. MAYS

*Counsel for*
QUALYS INC.