Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
Megan A. Chacon (CA SBN 304912)
chacon@fr.com
K. Nicole Williams (CA SBN 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070 /Fax: (858) 678-5099

Robert P. Courtney (CA SBN 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Phone: (612) 335-5070 /Fax: (612) 288-9696

Proshanto Mukherji (*pro hac vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax (617) 542-8906

*Attorneys for Plaintiff*
FINJAN LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>QUALYS INC., a Delaware Corporation,<br><br>Defendant. | Case No. 4:18-cv-07229-YGR (TSH)<br><br>**PLAINTIFF FINJAN LLC'S OPPOSITION TO QUALYS INC.'S MOTION TO STRIKE PORTIONS OF PLAINTIFF'S INFRINGEMENT AND DAMAGES EXPERT REPORTS**<br><br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]**<br><br>DATE:    March 2, 2021<br>TIME:    1:30 PM<br>JUDGE:   Hon. Yvonne Gonzalez Rogers<br>PLACE:  Courtroom 1, 4th Floor |

1

## TABLE OF CONTENTS

2
**Page**

3   I.   Introduction ................................................................................. 1

4   II.  Background .................................................................................. 2

5        A. Finjan's Infringement Contentions.......................................... 2

6        B. Qualys's Complaints................................................................ 2

7   III. LEGAL STANDARDS ............................................................... 3

     IV.  Argument .................................................................................... 4

8        A. Finjan's Contentions Disclosed "Cloud Agents"................... 4

9        B. Finjan's Contentions Disclosed Dynamic Building and Detecting ................. 6

10           1. Qualys's Claim Construction Arguments are Incorrect and Irrelevant ......... 6

11           2. Finjan Disclosed Its Theory that Qualys Used an XML Parse Tree............. 6

12           3. Finjan Disclosed the Accused Functionality ................... 8

13           4. Finjan Did Not Need to Supplement its Contentions.................... 9

14       C. Finjan Disclosed its Infringement Theories for Claim 29 ............................10

15           1. Finjan disclosed that the "scanner" limitation ..............................10

16           2. Finjan disclosed the "accessor" limitation...................................11

17       D. Finjan Disclosed its "Receiving" Theory .........................................12

         E. Dr. Medvidovic Is Not Offering a New Theory Regarding the Date of

18       Qualys's First Infringement ......................................................13

19       F. Finjan's Contentions Disclosed its Doctrine of Equivalents Theory..............14

20       G. Regarding Foreign Sales, the Reports are Consistent with the Court's Orders. 15

     V.   Conclusion ...................................................................................18

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Apple v. Samsung Elecs. Co., Ltd.*,

5
    5:12-CV-0630-LHK-PSG, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014) ...................................9

6

*Apple, Inc. v. Samsung Elecs. Co.*,
    No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 43907 (N.D. Cal. Mar. 28,

7
    2014) .........................................................................................................................................3

8

*ASUS Computer Int'l v. Round Rock Research, LLC*,
    No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014)..........................14

9

10

*Atmel Corp. v. Info. Storage Devices, Inc.*,
    No. C 95-1987 FMS, 1998 WL 775115 (N.D. Cal. 1998) ........................................................3

11

12

*Digital Reg of Texas, LLC v. Adobe Sys. Inc.*,
    No. CV 12-01971-CW (KAW), 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014)...............4, 7, 8

13

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 13-CV-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015) ..................................15

14

15

*Finjan, Inc. v. Cisco Sys., Inc.*,
    Case No. 5:17-cv-00072-BLF, Dkt. No. 72 (N.D. Cal. Aug. 29, 2017)....................................3

16

17

*Finjan, Inc. v. Cisco Sys., Inc.*,
    Case No. 5:17-cv-00072-BLF(SVK), Dkt. No. 79 (N.D. Cal. Oct. 10, 2017)...........................3

18

*Finjan, Inc. v. Rapid7, Inc.*,
    Case No. 18-1519 (MN), 2020 WL 565377 (D. Del. Feb. 5, 2020)...........................................6

19

20

*Genentech, Inc. v. Trustees of Univ. of Pennsylvania*,
    No. C 10-2037 LHK (PSG), 2012 WL 424985 (Feb. 9, 2012)..................................................4

21

22

*Largan Precision Co. v. Genius Elec. Optical Co.*,
    Case No. 13-cv-02502-JD, 2014 WL 6882275 (N.D. Cal. Dec. 5, 2014)..................................6

23

*Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) .................................................................................................3

24

25

*Oracle Am., Inc. v. Google Inc.*,
    Case No. 10-cv3561, 2011 WL 4479305 (N.D. Cal., Sept. 26, 2011) .......................................3

26

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    396 F. Supp. 3d 851 (N.D. Cal. 2019) .......................................................................................8

27

**Other Authorities**

28

Patent L.R. 3-1 ...................................................................................................... 3, 16, 17

## I.     INTRODUCTION

Qualys, Inc.'s ("Qualys") motion to strike the expet report of Dr. Nenad Medvidovic on U.S. Pat. No. 8,225,408 (Dkt. No. 156, "Mot.") should be denied.  The purpose of infringement contentions is to put the accused infringer on notice of the patent owner's infringement allegations.  Finjan's contentions do this.

Qualys puts forth six arguments for striking technical analysis in Dr. Medvidovic's report. The first concerns whether Finjan's infringement contentions accuse "Cloud Agents."  Qualys argues that the word "Cloud Agent" does not appear in Finjan's infringement charts.  But Finjan identified "Cloud Agents" in its infringement contentions as an accused product, and identified how Qualys's accused products (including Cloud Agents) received data from different sources. Second, Qualys argues that Dr. Medvidovic's theory for the "dynamic building . . ." of an XML like data structure and "dynamic detection . . ." using that XML like data structure was not disclosed in Finjan's contentions.  Finjan disclosed that very theory, however, even annotating the exemplary evidence to highlight Qualys's use of an XML data structure for both of these limitations.  Qualys's third and fourth arguments are that Finjan did not disclose Dr. Medvidovic's theory for claim 29 or for the "receiving . . ." limitation of claim 1, respectively.  Qualys's arguments are based on a misinterpretation of Finjan's infringement contentions and Dr. Medvidovic's expert opinions.  Fifth, Qualys seeks to strike Finjan's doctrine of equivalents theory.  But unlike the boilerplate reservation of rights language this District has struck in other cases, Finjan's contentions set forth a specific theory as to how Qualys's products satisfy the function-way-result test.  Finally, Qualys asks the Court to strike Dr. Medvidovic's opinions on the date of first infringement, but Dr. Medvidovic does not offer an opinion on any such date. Rather, Dr. Medvidovic provides the underlying technical analysis of the accused products, from which Finjan's damages expert determined a date of first infringement—a date which Qualys is *not* seeking to strike.

As to the damages issue (the "foreign sales" item), Qualys's motion tries to characterize two discovery orders as effectively entering summary judgment against the inclusion of Qualys's non-U.S. sales in the damages base at trial.  The Court entered no such judgment.  What the Court

did was make findings about the types of theories Finjan's infringement contentions did and did not disclose. The "foreign sales" items in the Reports were guided by, and are consistent with, those findings—a point Qualys effectively concedes by failing to identify even one inconsistency between the reports and the contentions as to foreign sales.

The Court should reject Qualys's attempt to gain a windfall at trial through misinterpretation of Finjan's contentions and the Court's past orders.

## II.   BACKGROUND

### A.   Finjan's Infringement Contentions

Finjan served its infringement contentions on April 19, 2019. In those contentions, Finjan set forth its theories of infringement for the '408 Patent. At a high level, Finjan showed that the Qualys products receive program code from a number of different sources. Exh. A [408 Inf chart] at 2. The Qualys products identify specific programming languages in that received code (*id.* at 5) and then scan that code for vulnerabilities, including analyzing it against rules stored in a Qualys database. *Id.* at 7. The Qualys products then build a parse tree using functionality for building XML like structures (*id.* at 15) and perform vulnerability scans using the information from that tree structure. *Id.* at 16. Finally, the Qualys products present these potential exploits on a user interface. *Id.* at 17.

Dr. Medvidovic followed that same theory, adding evidence that Finjan learned during discovery. Exh. B [Medvidovic Op.] at ¶¶ 158-161. For example, Dr. Medvidovic identified the database of vulnerabilities as ▮▮▮▮▮▮▮▮ *Id.* ¶ 136. He further identified specific features that made use of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dr. Medvidovic also cited deposition testimony from Qualys's engineers explaining how all of these limitations were satisfied. *See, e.g.*, *Id.* at ¶¶ 184-195, 282-296, 305-309.

### B.   Qualys's Complaints

Qualys did not complain about any defects when Finjan served its contentions. Rather, Qualys waited until there were three months left in discovery—fifteen months *after* Finjan served

its contentions—to identify the purported deficiencies.  By this point in the case, the parties had exchanged discovery, exchanged contentions, and participated in claim construction with no issue.

Qualys cites orders from other Finjan cases and refers to a "pattern" from those cases, but this case is nothing like the cases where the Court struck Finjan's contentions.  For example, Cisco pressed Finjan for supplemental contentions early and ultimately moved to compel contentions from Finjan instead of idling through discovery like Qualys has done.  *Finjan, Inc. v. Cisco Sys., Inc.,* Case No. 5:17-cv-00072-BLF, Dkt. No. 72 (N.D. Cal. Aug. 29, 2017). As a result, the contentions in Cisco were subject to extensive motion practice.  *Finjan, Inc. v. Cisco Sys., Inc.,* Case No. 5:17-cv-00072-BLF(SVK), Dkt. No. 79 (N.D. Cal. Oct. 10, 2017).  Thus, while Qualys is correct that the court ultimately excluded some of Dr. Medvidovic's opinions (and allowed others), the court did so on a record that was much different than in this case.

Here, Qualys bears the burden of showing that Dr. Medvidovic's opinions include theories not set forth in Finjan's contentions.  On a Motion to Strike, the moving party bears the burden of proof. *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 43907, at *46 (N.D. Cal. Mar. 28, 2014) (on a motion to strike, the moving party bears the burden of proof)  While Qualys broadly asks the Court to strike more than 80 paragraphs from Dr. Medvidovic's report, Qualys does little to explain how those specific paragraphs include theories that allegedly were not disclosed in the contentions.

## III.    LEGAL STANDARDS

Patent L.R. 3-1, which governs infringement contentions, "'require[s] parties to crystallize their ***theories*** of the case early in the litigation. *02 Micro Int 7 Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) *Atmel Corp. v. Info. Storage Devices, Inc.,* No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. 1998)) (emphasis added).  The operative word "theories" does not mean, for example, marshalling all evidence or citing minutia regarding implementation details.  *See Oracle Am., Inc. v. Google Inc.*, Case No. 10-cv3561, 2011 WL 4479305, at *3 (N.D. Cal., Sept. 26, 2011) (establishing that the local rules do not require infringement contentions to identify specific evidence of implementation level details—only an identification of the infringement theory).

Instead, "[t]he purpose of the disclosure rules is 'to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Genentech, Inc. v. Trustees of Univ. of Pennsylvania*, No. C 10-2037 LHK (PSG), 2012 WL 424985, at *1 (Feb. 9, 2012) (quoting *IXYS Corp. v. Advanced Power Tech., Inc.*, No. C 02-3942, 2004 WL 1368860, at *3 (N.D. Cal. June 16, 2004)). While "[e]xpert reports may not introduce theories not set forth in the infringement contentions," *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *4 (N.D. Cal. Apr. 24, 2014), "[t]he scope of contentions and expert reports are not, however, coextensive." *Id.* (quoting *Apple v. Samsung Elecs. Co., Ltd.*, 5:12-CV-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014)). "Infringement contentions need not disclose specific evidence, whereas expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *Id.* "The threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Id.*

## IV. ARGUMENT

### A. Finjan's Contentions Disclosed "Cloud Agents"

Finjan infringement contentions state clearly that the Qualys Cloud Agent infringes the '408 Patent: "Finjan accuses the following of Defendant's products and services, and associated software and subscriptions, of infringing claims 1, 3-8, 22-23, 29, and 35 of the '408 Patent: . . . *Cloud Agent (CA).*" Exh. C [2019-04-19 Finjan's Initial Disclosure of Asserted Claims and Infringement Contentions] at 4 (emphasis added). Despite this, Qualys contends that Finjan's contentions did not encompass the Cloud Agent. Other than the fact that Finjan did not say "Cloud Agent" in its claim chart (Finjan instead substituted the phrase "Accused Products"), Qualys fails to provide *any* reason to exclude the more than 30 paragraphs identified from Dr. Medvidovic's report.

Assuming that Qualys's motion concerns the subject matter disclosed in the cited paragraphs (and not the mere fact that those paragraphs did not use the words "Cloud Agent") Qualys seeks to strike two categories of paragraphs. First, Qualys seeks to strike paragraphs that

refer to collecting data from a Cloud Agent.  Mot. at 5 (citing Medvidovic Op. ¶¶ 160, 170, 183, 185, 187 fn. 6, 195-196).  Yet Finjan's contentions include a diagram that identifies networked data collected from sensors in the Qualys system (which would include data collected from a Cloud Agent).  *See* Exh. A [408 Inf chart] at 2.  Indeed, as set forth in Qualys's motion, there are only two ways the Qualys system receives data from a user: (1) from a scanner; or (2) from a Cloud Agent.  *See* Mot. at 3 (referring to two interactions with a user that pertain to collecting data); *see also* Exh. B [Medvidovic Op.] at ¶¶ 96-100.  Finjan's contentions purposefully cover both mechanisms for data collection in the system.  *See* Exh. A [408 Inf chart] at 2 (annotation showing that all data collected from the Qualys network is considered "received" data, and not just data received from the scanners, as Qualys suggests).

Qualys next seeks to strike paragraphs that refer to functionalities *other* than collecting data (such as handling and processing the data after it was collected).  Mot. at 5 (citing Medvidovic Op. ¶¶ 214, 235-238, 258, 287-289, 303-309, 325, 327, 415, 417-419, 427-428, and 446).  Qualys's motion does not identify any purportedly new theory in these paragraphs.  And it cannot, because there are none:  Qualys engineers have testified that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Thus, any reference to these functionalities in the Finjan contentions applies to both scanners *and* Cloud Agents. And notably, Qualys is *not* moving to strike analogous paragraphs referring to the processing of data from scanners.

Finjan's contentions identify Cloud Agents, refer to data collected by the Cloud Agents, and then refer to a data processing technique generally (which is not the subject of Qualys's motion and thus, not a undisclosed theory) that also applies to Cloud Agents.  The Court should thus deny Qualys's motion to strike Cloud Agents.

**B.    Finjan's Contentions Disclosed Dynamic Building and Detecting**

Qualys next seeks to strike more than 60 paragraphs from Dr. Medividovic's report for supposedly disclosing "new theories regarding the dynamic building and detection steps."[1] Qualys's argument is based on an improper reading of the patent.  But even then, Qualys concedes (1) Finjan's infringement contentions were pointing to the building and parsing of an XML to satisfy these limitations; and (2) Finjan's expert has adhered to that same theory, only including additional evidence.

**1.    Qualys's Claim Construction Arguments are Incorrect and Irrelevant**

The premise for Qualys's motion is that the claims require the "dynamically building. . ." and "dynamically detecting . .." steps occur "while receiving the incoming stream of program code."  Mot. at 6.  However, the plain language requires only (1) that "building" occurs "while . . . receiving . . . the incoming stream" and (2) "detecting" occurs "while said dynamically building."  Dkt. No. 1-4 ('408 Patent) at claim 1.  There is no requirement that all three occur at the same time, and Qualys did not raise its contrary interpretation during claim construction.  Rather, it is sufficient, for example, for "building . . ." to begin while receiving an incoming stream of data, and for "detecting . . ." to begin while "building . . ." was occurring (but *after* the incoming stream of data had been fully received).  *See Finjan, Inc. v. Rapid7, Inc*., Case No. 18-1519 (MN), 2020 WL 565377, at *12 (D. Del. Feb. 5, 2020) (endorsing the conclusion that there is no requirement that all three happen at the same time).

**2.    Finjan Disclosed Its Theory that Qualys Used an XML Parse Tree**

Dr. Medvidovic's report identifies *evidence* and support for the theories in Finjan's infringement contentions; it does not introduce new *theories*.  *Largan Precision Co. v. Genius*

---

[1] Eight of the paragraphs from Dr. Medvidovic's report cited Qualys's motion (paragraphs 238, 325, 327, 329, 333, and 335-337) do not concern the "dynamic building" and "dynamic detection" limitations.  Qualys appears to include them because they are part of the subsequent "indicating . . ." limitation that refers back to the "dynamically detecting . . ." limitations.  Thus, Qualys's argument for these paragraphs falls with its argument for the "dynamic building" and "dynamic detection" limitations.

*Elec. Optical Co.*, Case No. 13-cv-02502-JD, 2014 WL 6882275, at *7 (N.D. Cal. Dec. 5, 2014)

("[E]xpert reports are meant to provide more detail than contentions."); *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014) (denying a motion to strike allegedly new allegations after determining that the theory had not changed only additional evidence was presented).

More particularly, Finjan's contentions refer to building a "tree" using data from an XML structure. *See* Exh. A [408 chart] at 15 (red annotation around the command to build a "tree" from an XML input). This command to build a "tree" is the basis for Finjan's belief and theory that Qualys uses a parse tree. Finjan's contentions go on to state that such parse trees are built "[d]uring the scans described above" (*id.* at 15), referring to scans identified in the previous claim limitations. *Id.* at 6 (referring to, for example, Web Application Scanning and Vulnerability Scanning). Thus, Finjan's contentions disclosed a theory that the "dynamically building" step was satisfied by building an XML-based tree during a pending Qualys scan.

Dr. Medvidovic's infringement theory in the challenged paragraphs is the same as the theory in Finjan's infringement contentions. He explains how Qualys appears to have used XML because ███████████████████████████████████████████████████ ███████████████████████████████████████████████████. *E.g.,* Exh. B [Medvidovic Op.] at ¶¶ 264-265. Then, Dr. Medvidovic identifies the evidence supporting this theory. *E.g., Id.* ¶ 266. Even Qualys seems to agree with this characterization: Qualys describes Dr. Medvidovic's opinions in paragraphs 262, 282-286, 290, 294, 298, 299, and 301 as setting forth a theory that Qualys products ████████████████████████████████ ████████████████████████████ *See* Mot. at 8.

For the remaining paragraphs (302-304, 308-318, 319-320), Qualys describes them as ████████████████ related to Dr. Medvidovic's infringement theory. *Id.* Qualys does not (and cannot) contend that these "features" are new "theories." Finjan's contentions referred categorically to processes that occurred "during" a scan. Exh. A [408 inf chart] at 15. Based on these statements in the contentions, Finjan's theory of infringement was clear (as Qualys notes elsewhere in its motion, Finjan was accusing ██████ processing that occurred during a scan, *see*

1    *supra* at 10-11).  Similarly, the "features" that Qualys cites in its motion are evidence of the

2    claimed processes occurring during a scan.  Exh. B [Medvidovic Op.] at ¶¶ 285, 290 and 312

3    (█████████████████████████████████████████████████████████████████████

4    ███████"); 309 ██████████████████████████████████████████████████

5    ███████); 311-312 (█████████████████████████████████████████████████

6    ██████████████████████) and 319 (███████████████████████████████

7    █████████████████████████████").  These "features" are the exact type of

8    detailed evidence that should be included in an expert report, but need not be included

9    infringement contentions.  *See Digital Reg of Texas, LLC*, 2014 WL 1653131, at *5 ("In patent

10   litigation, expert reports are expected to provide more information than is contained in

11   infringement contentions."); *Power Integrations, Inc. v. ON Semiconductor Corp.*, 396 F. Supp.

12   3d 851, 890 (N.D. Cal. 2019) (determining that the expert "simply added greater detail to the

13   theory, which does not provide a basis for striking it" and the theory itself had not changed).

### 3.    Finjan Disclosed the Accused Functionality

15   Qualys's motion takes a second swipe at the same paragraphs from Dr. Medvidovic's

16   report, this time referring to them as "different functionality."  Mot. at 9.  If anything, Qualys's

17   motion provides another reason why those paragraphs should *not* be struck:  because both Finjan's

18   contentions and Dr. Medvidovic's report identify the use of XML based parse trees by Qualys's

19   ████.

20   Specifically, the operative excerpt from the contentions refers to the use of an XML-based

21   structure to store data from a scan.  *See, e.g.,* Motion at 8 (identifying relevant "parse tree"

22   limitations from Finjan's contentions).  Qualys argues that these contentions are limited ███████

23   ████████████ with features identified in Dr. Medvidovic's report.  Mot. at 9

24   (██████████████████████████████████████████████████████████████████

25   ███████████████████████████████████████████████████████

26   ███████████████████████████).  However, as Qualys's engineers have testified and

27   the evidence shows, █████ is what practices those accused features.  Exh. B [Medvidovic Op.] at

28   ¶ 114 (citing testimony that ████████████████████████████████████████



1  ████████████████████████); ¶ 238 (citing similar

2  testimony, including testimony that ████████████████); ¶ 280 (citing ███

3  ████████████████); ¶ 284 (citing a ████████████

4  ████████████); ¶ 285 (citing a ████████████████); ¶291 (citing

5  ████████████████████); ¶312 (citing ████████████

6  ████████████).

     Qualys may respond that Finjan's contentions describe only an API for ████.  Motion at

8-9.  API stands for "Application Programming Interface" and an API is a way for a programmer

to access certain functionality in a program or system (such as ████).  Thus, the API for ████

cited in Finjan's contentions was evidence of Finjan's theory that ████ used an XML based

structure.  Exh. B [Medvidovic Op.] at 265 (████████████████████

████████████).

### 4.  Finjan Did Not Need to Supplement its Contentions

     The threshold question is whether Finjan's contentions put Qualys on notice of Finjan's

infringement theories.  *Apple*, 2014 WL 173409, at *1.  As set forth above, Finjan's contentions

did that for the "building . . ." and "detecting . . ." limitations, and thus, the inquiry should end

there.

     Qualys does not explain how it believes Finjan's contentions changed directions on these

limitations.  That is, Qualys does not state that Finjan's contentions were directed to an original

theory that it no longer relies upon.  Instead, Qualys takes the position that Finjan's contentions

disclosed "no theory" for these two limitations, and that after Qualys brought this to Finjan's

attention, Finjan acknowledged that it would supplement.  Mot. at 9.

     Qualys's argument is a red herring.  Because Finjan properly set forth its theories in its

contentions, a supplement was not necessary.  The first time Qualys identified the specific alleged

defects was *fifteen months* after Finjan served its contentions (and a little over two months before

the close of discovery).  By this point in time, the parties had exchanged contention discovery and

participated in claim construction.  Nevertheless, in response to Qualys's letter, Finjan explained

the theories in its contentions and offered to supplement its contentions *after* Qualys produced

technical documentation that Finjan had requested.  Mot. Ex. 7 at 18. Qualys never made a timely

production.  And even with respect to the technical documentation that Qualys did subsequently

make available for inspection, Qualys produced much of it in a corrupted form that it refused to

fix.  Exh. E [Email thread re obtaining access to corrupted file from source code computer].

### C.      Finjan Disclosed its Infringement Theories for Claim 29

Qualys also moves to strike Finjan's expert report regarding two separate limitations of

claim 29 of the '408 Patent: (1) the "scanner", *i.e.*, limitation 29(b); and (2) the "accessor", *i.e.*,

limitation 29(c).  Because, as explained below, both theories were disclosed in Finjan's Patent

L.R. disclosures, Qualys's motion should be denied.

### 1.      Finjan disclosed that the "scanner" limitation

Qualys's motion is premised on its misunderstanding or misrepresentation of Finjan's

infringement contentions.  According to Qualys, Finjan's contentions set forth that limitation

29(b) is limited to a database on the Cloud Platform.  But there is no such statement in Finjan's

contentions, and thus the premise of Qualys's motion is flawed.

Limitation 29(b) refers to a scanner – either a hardware scanner or software scanner

running on a computer.  *See* '408 Pat. at cl. 29(b) ("a non-transitory computer-readable storage

medium storing computer-executable program code that is executed by ***a computer to scan***

incoming program code").  For this limitation, Finjan's contentions cross reference limitation 1(d).

*See* '408 chart (citing cl. 1(d)).  Limitation 1(d) also requires a scanner.  '408 Pat. at cl.

1(d)("instantiating, by the computer, ***a scanner*** . . .").

The cross reference in Finjan's contentions for limitation 29(b) was to the disclosure of a

scanner in claim 1.  That disclosure in Finjan's contentions for claim 1 refers to scanners

distributed throughout the Qualys Cloud.  *See* Exh. A ['408 Inf chart] at 6 (referring to scanners

generally); *id.* at 4 (illustrating scanners distributed throughout the Qualys Cloud).  One exemplary

disclosure of scanners from Finjan's contentions is below (with annotations in the original):

1
2
3
4
5
6
7
8
9
10



As shown below, Scanner Appliances dispersed as endpoints throughout a
computer network, receive content based on a client device requesting the content
from a source computer, such as the Internet.

From this disclosure in Finjan's Patent L.R. contentions, it is clear the infringement theory
refers to the scanners themselves distributed throughout the network, and thus, Qualys was
sufficiently on notice that the "non-transitory computer-readable storage medium storing
computer-executable program code" of claim 29 is on that distributed scanner, which is what
Dr. Medvidovic points to for infringement.

### 2.    Finjan disclosed the "accessor" limitation

Qualys also seeks to strike "accessor . . ." limitation in claim 29, which refers to the
component that accesses stored "tokens" and "rules."  For that limitation, Dr. Medvidovic sets
forth infringement reads against the Vulnerability Management and WAS features in the Qualys
products, but both reads identify the "accessor" as the portion of the Qualys products that accesses



the ███████████████.  Exh. B [Medvidovic Op.] at ¶ 427 ("███████████████

██████████████████████████████████████████████████████████████

██████████████); 429 ████████████████████████████████████████████

██████████).  Finjan disclosed this same theory in its infringement contentions.  The contentions
(including the portions quoted in Qualys's motion) refer to accessing a database of parse and
analyzer rules.  Motion at 11.  That database of parser and analyzer rules is ████████.  *See, e.g.,*
Exh. B [Medvidovic Op.] at ¶¶ 229-230 (citing testimony from Qualys engineer); 237-238
(similar).

### D.     Finjan Disclosed its "Receiving" Theory

Qualys next seeks to strike Finjan's theory for the limitation that requires the accused system to receive a stream of program code.  *See, e.g.,* '408 Pat. at cl. 1 ("receiving, by a computer, an incoming stream of program code").  The Court should deny Qualys's motion for three reasons.  First, Qualys misinterprets Finjan's infringement contentions.  Qualys contends that Finjan's contentions are limited to receiving communications **over the Internet**.  Not so.  Finjan's contentions illustrate a "receiver" (i.e., the component that is doing the "receiving . . .") in different configurations.  In some configurations, the "receiver" is a part of a client device, meaning it would receive data *before* communicating over a network—and Finjan's contentions indicate as much.  Exh. A [408 inf chart] at 4 (annotations identifying receivers at various client devices before communications over any network).  Finjan's contentions include additional configurations of the accused devices where communications to the receiver travel over a network—but Finjan's contentions **do not** limit that network to the Internet.  To the contrary, the contentions make clear that the reference to the Internet is exemplary (using the phrase "such as the Internet").

Second, the supposed "new theory" is not a theory of infringement. The distinction Qualys refers to (whether data is received over the Internet or via some other network) is not relevant to Dr. Medividovic's infringement theory.  Specifically, as set forth above, Qualys argues that Finjan's contentions are limited to receiving content over the Internet.  Mot. at 12 (identifying theories in the contentions that supposedly require "requesting content from an Internet-based computer").  Qualys compares these supposed theories with Dr. Medvidovic's allegations that the ████████████████████████████████████████████████████ *Id.* (emphasis in original).  Yet, the claims refer to receiving ████████████████████ incoming data—and are agnostic as to where the data is received from.  *See* '408 Pat. at cl. 1 ("receiving, by a computer, an incoming stream of program code").  To satisfy this limitation, Finjan's infringement theory and Dr. Medvidovic's report (marshalling evidence for these theories) refer only to Qualys products "receiving . . . an incoming stream of program code" without regard to where that information is received from.  Thus, assuming *arguendo* Qualys is

correct that Finjan's contentions only disclosed receiving content over the Internet, this is irrelevant as to whether Finjan disclosed an infringement theory against Qualys's Vulnerability Features (which Qualys does not appear to be contesting in its motion).

Third, Qualys argues that Dr. Medvidovic "offers the new theory that the Scanner Appliance and Virtual Scanner infringe by directly requesting content, rather than (as disclosed in Finjan's contentions) intercepting content requested by a distinct client device." Mot. at 13. However, Qualys's argument is based on a misunderstanding of Finjan's infringement contentions. Finjan's infringement contentions do not use the word "intercept" or otherwise limit the operation of the accused scanner to intercepting content requests. The passage that Qualys cites in its motion does not say as much. *See* Mot. at 13 (citing Exh. A [408 inf chart] at 3). For example, the accused products include virtual scanners (another point that Qualys does not appear to contest) and Cloud Agents, ███████████████████████████████████████████████ ███████████████. Exh. B [Medvidovic Op.] at ¶¶ 96-102. Thus, the statement Qualys cites applies to scenarios where a virtual scanner or cloud agent installed on a client device receives content and there is no reason to interpret this statement (or anything else in Finjan's contentions) to the scenario where accused products "intercept" content requested by a client device.

The remainder of the argument in this section of Qualys's motion is a cross reference to Qualys's attempt to strike Cloud Agents, so for the same reasons explained above for why Qualys' motion regarding  Cloud Agents, should be denied, apply equally to scanners too.

### E.  Dr.  Medvidovic Is Not Offering a New Theory Regarding the Date of Qualys's First Infringement

Dr. Medvidovic provided an opinion on the products accused of infringement, and when the accused features first appeared.  He did not offer a specific date of first infringement, which is a legal conclusion.   Rather, Dr. Medvidovic analyzed evidence regarding the operation of the accused product and noted that using an ████████████████████████████████████ ██████████████████████████████. Exh. B [Medvidovic Op.] at ¶ 21-22.   Using the information Dr. Medvidovic provided, Finjan's damages expert, Dr. McDuff, established the date of the hypothetical negotiation.  Qualys did not move to strike Dr. McDuff's report.

The real motivation behind Qualys's motion appears to be an attempt to strike facts that make clear that Qualys's 2002 system is not prior art. Dr. Rubin's invalidity report provides a conclusory invalidity opinion regarding the Qualys 2002 system. Exh. F [Rubin Op.] at ¶¶ 487-494. The facts that Dr. Medvidovic identifies throughout his infringement report would undermine that opinion, however, and are not opinions on the date of first infringement. Indeed, eight of the paragraphs that Qualys moves to strike (262, 277, 278, 279, 280, 281, 282 and 283) set forth Dr. Medvidovic's mapping of certain accused functionality to specific claim elements and have nothing to do with a date of infringement. In ther paragraphs, Dr. Medvidovic states that the 2002 Qualys system does not include all of the accused features, such as the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.*

Because Dr. Medvodivic is not offering a new theory regarding the date of Qualys's first infringement, the Court should deny Qualys's motion.

**F.      Finjan's Contentions Disclosed its Doctrine of Equivalents Theory**

While the *ASUS* case that Qualys relies upon supports striking boilerplate contentions, it is inapplicable here because Finjan's contentions are *not* boilerplate. *ASUS Computer Int'l v. Round Rock Research, LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *3 (N.D. Cal. Apr. 11, 2014). In *ASUS*, the patent owner only "included placeholder language stating that 'to the extent that any claim element is found not to be literally embodied in the Accused Instrumentalities, [plaintiff] contends that the Accused Instrumentalities embody such claim elements under the doctrine of equivalents.'" *Id.* The Court found this blanket reservation of rights to be "insufficient to assert a DOE theory" because the patent owner did not describe how the accused product "performed the same function, in the same way, to achieve the same result." *Id.*

By comparison, Finjan's contentions for claim limitation 1(d) (the only limitation where Dr. Medvidovic is offering a doctrine of equivalents theory) set forth a specific theory as to the function-way-result test. *See* Exh. A [408 Inf chart] at 13. Specifically, to the extent that Qualys's products did not include an actual "scanner" and "analyzer," Finjan's contentions included a theory as to how "software components" in Qualys's products performed the same function of identifying specific programming languages to identify exploits in the code. *Id.* Finjan's

contentions then state that the Qualys products operate in the same way because the Qualys products "use rules to analyze the incoming program conde to monitor for malicious activity." Finally, Finjan's contentions state that the Qualys products achieve the same result because they "inspect the incoming stream of programming code to identify its specific language and locate potentially malicious portions of the code." Dr. Medvidovic repeats these allegations in his report with further analysis of how Qualys infringes under the doctrine of equivalents. *See* Exh. B [Medvidovic Op.] at ¶¶ 250-253. *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3640694, at *6 (N.D. Cal. June 11, 2015) (denying a motion to strike doctrine of equivalents theories where Plaintiff's expert fully explained its doctrine of equivalents theory and Defendant was not prejudiced).

Thus, Finjan's contentions placed Qualys on notice of its DOE theories and Qualys's motion to strike Finjan's DOE theories should be denied.

### G.     Regarding Foreign Sales, the Reports are Consistent with the Court's Orders

As to the "Foreign Sales Theories," Qualys is incorrect when it urges (Mot. 14–16) that the Reports contravene either the Court's September 17 Discovery Order (Dkt. No. 105) or its December 4 Order (Dkt. No. 152).[2] Those orders declined to compel production of "financial information concerning foreign sales." Dkt. No. 105 at 1. They did not remove the subject of "foreign sales" from the scope of trial, and Qualys's contrary contention is incompatible with the Orders' basic text.

The Orders determined that Finjan's infringement contentions "contend that Qualys's accused products infringe only when they are combined with or connected to other devices and software on a network[.]" Dkt. No. 105 at 2; see also Dkt. No. 152 at 1. The December 4 Order

---

[2] Qualys's motion includes no substantive comparison between the Reports and Finjan's infringement contentions as to foreign sales, and so forfeits argument that any inconsistency exists. Having no obligation to address a forfeit argument, Finjan notes only that the Reports, because they fully align with the Court's determination that the contentions address domestic "post-combination, post-connection" infringement and, for the CRM claims, domestic making and using of infringing media, are fully consistent with the contentions.

thus held that "Finjan cannot recover damages for overseas sales of products that infringe entirely abroad." Dkt. No. 152 at 1. The Cole and Medvidovic Reports are consistent with those determinations because they provide a "connected to other devices"-type infringement approach, and focus on domestic infringement. The Cole and Medvidovic Reports describe how, for each of the Qualys accused products, post-combination/post-connection infringement **here in the United States** is necessary for the products to have value anywhere in the world. *E.g.*, Exh. G [Cole Rep.] at ¶ 1872 (describing how, without U.S.-based infringement "the infringing products would have little value either overseas or domestically"); Exh. B [Medvidovic Rep.] at ¶ 173 (similar). In other words, the Cole and Medvidovic reports specifically align with the Court's determinations that **domestically oriented** infringement theories are in Finjan's P.R. 3-1 contentions.

Qualys does not actually contend that these theories are absent from the Patent L.R. 3-1 contentions. Instead Qualys tries to treat the issue as a *fait accompli* based on the Court's past orders. Mot. 15 (contending, "it was twice determined that Finjan failed to preserve . . . any theory of infringement relating to worldwide sales."). Not so. The orders determined that Finjan's infringement contentions would not support a theory of relevance for foreign sales based on "mere development [of Qualys's accused products] in the U.S." Dkt. No. 105 at 2. The orders did not reach the question of whether Qualys's foreign sales were irrelevant for all purposes, which is Qualys's contention. Qualys errs in contending otherwise.

Notably, Qualys's motion never compares any of the Reports to the September 17 and December 4 Orders, possibly because comparison reveals that, far from "seek[ing] to circumvent these prior orders," as Qualys urges (Mot. 15), the Reports align with those orders. The orders held that Finjan's Patent L.R. 3-1 contentions required use within the United States. The Cole and Medvidovic Reports describe exactly how **domestic** use drives Qualys's sales outside the U.S., and so makes Qualys's revenue from non-U.S. sources relevant at trial. Qualys's proposal to strike the sections of the Cole and Medvidovic Reports (and the sections of the McDuff Report relying on them) is baseless.

Nothing in the Reports' treatment of the "computer-readable medium" ("CRM") claims contravenes the Court's orders, either. The Court determined that, as to these claims,

"infringement does not occur until a party stores all relevant code in a single medium." Dkt. No. 152 at 2. It held that Finjan's Patent L.R. 3-1 contentions lacked an allegation that Qualys sold U.S.-made infringing media to overseas customers. *Id.*; *see also* Dkt. No. 105 at 3 n.3 (finding no contention "that Qualys infringes by domestically making the patented invention, which it then sells in foreign sales"). Each of the Reports reflects the Court's determinations. None of them reasons that title to media "made" by Qualys in the U.S. passes by sale to overseas customers; such reasoning was foreclosed by the Court. The Reports present a different opinion that the domestic making and/or use of infringing software media by Qualys (and, potentially, its customers) benefits overseas customers and so drives the value of Qualys's non-U.S. sales. *See* Exh. G [Cole Rep.] at ¶ 1189 (describing how overseas customers "would be the immediate beneficiaries of Qualys's domestic infringement"); Exh. B [Medvidovic Rep.] at ¶ 174 (similar). The Court should reject the invitation to strike any report material concerning the CRM claims.

Finally, Qualys's motion has no substantive discussion of the McDuff Report. Dr. McDuff is a damages expert, and his report contains no technical opinions, so comparison to Finjan's infringement contentions or the Court's orders interpreting those contentions would be inapt. Qualys does not allege inconsistency with Finjan's damages contentions (and so forfeits that argument), and in any event there is no such inconsistency. Though Qualys never states it, presumably Qualys's grievance is with Dr. McDuff's reliance on discussions with Drs. Cole and Medvidovic concerning the relationship between domestic infringement and foreign sales. Because Qualys does not offer any separate basis for striking any of Dr. McDuff's opinions, Finjan's arguments herein showing how the Cole and Medvidovic Reports align with the Court's orders and with Finjan's infringement contentions apply equally to Dr. McDuff's opinions.[3]

---

[3] Qualys's identification of material to be struck from Dr. McDuff's report is also over-inclusive. Qualys seems to think that the Court has precluded even factual discussion at trial of Qualys's non-U.S. activity. *See, e.g.*, Mot. Ex. 3 at 7 (proposing to strike public information about Qualys's worldwide business), 69 (proposing to strike Dr. McDuff's estimation of Qualys's non-U.S. sales using public information), Att. C-2 (similar), Att. J-1 (similar). The Court ordered no such preclusion, and should not do so now.

## V.    CONCLUSION

For the reasons set forth herein, the Court should deny Qualys's motion.


Dated: February 8, 2021

*/s/ Robert P. Courtney*
Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
Megan A. Chacon (CA SBN 304912)
chacon@fr.com
K. Nicole Williams (CA SBN 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070 /Fax: (858) 678-5099

Robert P. Courtney (CA SBN 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Phone: (612) 335-5070 /Fax: (612) 288-9696

Proshanto Mukherji (*pro hac vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax (617) 542-8906


Attorneys for Plaintiff
**FINJAN LLC.**

1

**CERTIFICATE OF SERVICE**

2

  The undersigned hereby certifies that a true and correct copy of the above and foregoing

3

document has been served on February 8, 2021, to all counsel of record who are deemed to have

4

consented to electronic service via the Court's CM/ECF system. Any other counsel of record will

5

be served by electronic mail and regular mail.

6

7

           */s/ Robert P. Courtney*

8

           Robert P. Courtney

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28