EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
TALIN GORDNIA (SBN 274213)
tgordnia@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>QUALYS INC.,<br><br>    Defendant. | CASE NO.: 4:18-cv-07229-YGR (TSH)<br><br>**DEFENDANT QUALYS INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFF FINJAN LLC'S INFRINGEMENT AND DAMAGES EXPERT REPORTS**<br><br>**Judge: Hon. Yvonne Gonzalez Rogers**<br><br>**Date: March 2, 2021**<br>**Time: 2:00pm**<br>**Location: Zoom Teleconference**[1] |

---

[1] Per the Court's Notice regarding Civil Law and Motion Calendars and its Order at D.I. 48.

## I. INTRODUCTION

Finjan seeks to add a host of previously undisclosed infringement and related theories to the case through its experts Drs. Medvidovic (technical) and McDuff (damages). Finjan had ample opportunity to seek leave to amend its contentions but instead tried to sneak them into expert reports months after the close of fact discovery. Finjan has pulled this exact tactic in other cases and had its expert reports stricken and attorney fees awarded against it. *See* Opening Brief (D.I. 158) at 1.

In response to the instant Motion, Finjan points to a handful of ambiguous statements in its infringement contentions in a transparent attempt to manufacture support for Dr. Medvidovic's new theories. Tellingly, Finjan ***never quotes its infringement contentions directly*** but instead relies exclusively on attorney characterization and interpretation. This should be a warning flag to the Court. Indeed, the text of Finjan's contentions do not support its attorneys' characterizations, nor do they support the new theories of infringements offered by Medvidovic.

Regarding foreign sales, Finjan blatantly disregards Judge Hixson's discovery order finding that Finjan's contentions had ***failed to preserve*** any theory rendering Qualys's foreign sales activity. Instead of seeking to amend its contentions in view of Judge Hixon's order, Finjan again uses its experts' reports as a vehicle to sneak the same improper theory into the case that Judge Hixson himself found to be an irrelevant "makeweight."

## II. FINJAN'S NEW CLOUD AGENT THEORY

It is undisputed that Finjan's '408 claim chart includes no reference to Qualys's Cloud Agent product. Nevertheless, Finjan argues that it sufficiently disclosed a theory of infringement involving this product because its claim chart discloses the use of (1) a non-descript "receiver component" and (2) Qualys's Scanner Appliance, which Finjan contends operates the same as Qualys's Cloud Agent. Finjan's argument facially contradicts both the Patent Local Rules and this Court's own jurisprudence, both of which require Finjan to identify infringing components and devices as specifically as possible.

To preserve a theory of infringement involving the Cloud Agent, Patent L.R. 3-1(c) required to provide a "chart identifying specifically where and how each limitation of each asserted

claim is found within each Accused Instrumentality."[2] This Court has explained that the rule requires Finjan to "pinpoint their contentions as specifically as possible." *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *6 (N.D. Cal. Nov. 30, 2012). "A patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *Id.* at *3. "In patent litigation, vague and conclusory contentions are inadequate." *Id.* at *4.

Finjan did not do this. Finjan's claim chart was limited to Qualys's Appliance Scanner. Exhibit 5 (D.I. 158-6) at 3. Finjan knew at the time that Qualys's Appliance Scanner Cloud Agent were distinct products. Indeed, Finjan itself listed both the Cloud Agent and the Scanner Appliance as two distinct products in its Patent L.R. 3-1(b) identification of accused products. *See* D.I. 164-4 at 4. Moreover, Finjan specifically disclosed a Cloud Agent theory for ***every other asserted patent*** but the '408 Patent. For example, consider the page of Finjan's '408 claim chart it cites in its Opposition (at 5) with its Cloud Agent theory from the asserted '731 Patent:

| '408 Patent (Exhibit A at 2) | '731 Patent (D.I. 100-11 at 000189) |
|---|---|
| **1b. Contention 1** – The Accused Products, each resident on the Qualys Cloud, receive an incoming stream of computer code<br><br>Each of the Accused Products, executed on a node that is part of the Qualys Cloud computing environment, includes a receiver component on a node that receives content based on a client device requesting the content from a source computer, such as the Internet. As shown below, the content is received by each Accused Product, (via the receiver) when a particular client device requests content provided by a source computer. | **1b. Contention No. 1 (continued)** – Cloud Agent (CA) technology (either alone or in combination with MD, WAS, WAF, Secure Seal, IOC, CM, TP, VM, CA, and/or PC technology) includes a scanner for scanning incoming files from the Internet and deriving security profiles for the incoming files, wherein each of the security profiles comprises a list of computer commands that a corresponding one of the incoming files is programmed to perform.<br><br>The scanner for Cloud Agent derives security profiles for received files. The scanner for Cloud Agent performs analyses to detect commands that may be attempted by files. The security profile data derived from the scanner for Cloud Agent includes a list of commands that files are programmed to perform. As shown above, the list of commands that are detected by the scanner for Cloud Agent cause malware infections and zero-day threats. |

---

[2] Finjan argues that it complied with the Patent L.R. 3-1(b) by listing the Cloud Agent as an infringing device. This is a straw man argument, because Qualys does not allege that Finjan violated this provision, but rather Patent L.R. 3-1(c).

Exhibit 5, D.I. 158-6, at 3; D.I. 100-11 at 000189.  This is one of nearly two dozen examples of specific Cloud Agent theories Finjan discussed in its claim charts for other asserted patents.  *See, e.g.,* D.I. 100-11 at 000036, 00047, 000118, 000119, 000204, 000221, 000222, 000249, 000259, 000321, 000322, 000324, 000374, 000375, 000377, 000381, 000386, 000388, 000392, 000486, and 000508.  Tellingly, the word "Cloud Agent" appears **nowhere** in Finjan's '408 claim chart.

Finjan offers two reasons why the Court should permit Medvidovic's new Cloud Agent theory for the '408.  First, Finjan contends that the phrase "a receiver component on a node that receives content" included in the above image covers the Cloud Agents.  But Finjan offers no explanation why this single sentence about a "receiver component" (which is never identified with any specificity or ever called a Cloud Agent) satisfies the sufficiency requirement, especially given how detailed its Cloud Agent theories were for the other asserted patents.  This hardly satisfies the Local Rules or the Court's admonishment that patentees be "as specific as possible."  *See Theranos*, 2012 WL 6000798 at *6.[3]

Second, Finjan argues that its disclosure of its disclosed Scanner Appliance theory preserved a Cloud Agent theory because (Finjan now contends) the functionality of the Scanner Appliance and the Cloud Agent is the same.  *See* Opposition at 5.  To begin with, Finjan's contention is factually incorrect – Qualys detailed some of the relevant differences between its Scanners and the Cloud Agent in its opening brief.  *See* D.I. 158 at 2-3.  Moreover, this argument is inconsistent with Finjan's infringement contentions themselves, which uniformly treat the Cloud Agent and Scanner Appliance as distinct products with distinct theories of infringement.  *See, e.g.,* D.I. 100-11 at 000036, 00047, 000118, 000126, 000128, 000130, 000133, 000135, 000136, 000177, 000179, 000189, 000192, 000196, 000209, 000211, 000304, and 000392.  In any event, Finjan's argument is legally immaterial because its original contentions did not disclose that the Scanner Appliance was somehow representative of a Cloud Agent.

---

[3] Moreover, the "receiver component" Finjan points to cannot be a Cloud Agent because Finjan's contentions clearly point to this component (whatever it is) as being part of Qualys's Cloud Platform (also known as the QualysGuard Secure Operations Centers) while Medvidovic opines that the Cloud Agent is found on an endpoint device.  *Compare* Exhibit Exhibit A (D.I. 164-2) at 2 *with* Exhibit B (D.I. 164-5) at ¶ 98.

Notably, Finjan has had its expert reports (including Medvidovic) stricken previously for just such improper litigation tactics. *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 15-cv-03295-BLF, Dkt. No. 271, at *12 (N.D. Cal. July 28, 2017) (Striking expert report and stating, "Finjan does not dispute that the [original accused component] is a different component from [new accused component]. Instead, its rebuttal is simply that the functionality disclosed for the [original accused component] in its infringement contentions—storing the results of the sandbox dynamic analysis performed by the MAA—is the same as the functionality disclosed for [new accused component] in its expert report. This is unpersuasive."); *see also Finjan, Inc. v. Juniper Network, Inc., et al.*, Case No. 3:17-cv-05659, 2021 WL 75735, at *2 (N.D. Cal. Jan. 9, 2021) ("Finjan tried to sneak this theory in with its expert-damages report"); Opening Brief, D.I. 158 at 1 (citing additional cases).[4] The Court should do the same here.

### III.  FINJAN'S NEW DYNAMIC BUILDING AND DETECTING THEORIES[5]

Finjan fails in two regards to show that Medvidovic's opinions regarding the "dynamic building" and "dynamic detection" were disclosed in its infringement contentions. First, Finjan acknowledges that its infringement contentions disclose only one theory of the dynamic building step of the asserted claims: namely, the command to "build a 'tree' from an XML input." This is the functionality that Qualys excerpted in its Opening Brief (D.I. 158) at 6. As discussed there, this functionality is performed by the Qualys API; thus, the infringement contentions accuse ***only*** the Qualys API functionality of performing the "dynamic building" step of the asserted '408 Claims. But Medvidovic's opinions are not limited to the Qualys API for these steps. Instead, he accuses a slew of other functionalities performed by different parts of Qualys's Cloud Platform and, in some cases, completely different devices (like the Scanner Appliance and Cloud Agent). *See* Opening Brief (D.I. 158) at 8-9. Finjan argues that because the Qualys API refers to creating

---

[4] Finjan also contends that its contentions "refer to data collected by the Cloud Agents." This is not correct. As discussed above, the contentions refer only to the Appliance Scanner and, therefore, refers to data collected by that scanner, not the Cloud Agent.

[5] Finjan makes a cursory argument that it was not required to supplement its infringement contentions because it claims Qualys did not comply with its discovery obligations. While Qualys disputes this point, it is irrelevant. Finjan never brought a motion to compel on these issues. Even if it had, this does not excuse its requirement to timely move to amend its infringement contentions to add new theories.

a parse tree using XML, its expert may offer opinions about different components that the expert contends also create parse trees using XML. But this is simply another version of the "same functionality" argument that Finjan advanced and lost on in the *Blue Coat* litigation (and discussed above). *See Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 15-cv-03295-BLF, Dkt. No. 271 at *12.[6] Thus, this is not a matter of merely identifying new evidence to support an existing theory; Finjan has added new theories by having its expert accuse new and different functionality of performing this step than Finjan disclosed in its claim chart. *Compare* Opening Brief (D.I. 158) at 8-9 *with* Exhibit 5 (D.I. 158-6) at 15-16. Any paragraphs opining on theories unrelated to the Qualys API should be struck.

Second, Finjan disputes that its infringement contentions fail to disclose the critical aspect of dynamic building and dynamic detection – namely, that these steps must occur at specific times. The claims require that the "dynamic building" step occur "while said receiving receives the incoming stream." *See* Ex. 4 ('408 Patent) at Claims 1, 22, 23, 29, 35. Similarly, the "dynamic detecting" step must occur "while said dynamically building builds the parse tree." *See id.* But Finjan's claim chart is silent as to these temporal requirements. Finjan points to a single ambiguous sentence (without any supporting citation or elaboration) stating that these two steps occur "during the scans described above." *See* Exhibit 5 (D.I. 158-6) at 15-16. This language does not match the claim language, and Finjan points to nothing in its claim chart saying that the alleged "scans described above" occur when these two limitations require. This is not a matter of claim construction (as Finjan contends), but a simple failure by Finjan to provide a contention for every limitation of the claim, contravening Patent L.R. 3-1(c).

---

[6] Finjan also argues that because it disclosed an infringement theory involving Qualys API (which Finjan claims is part of Qualys's QWeb component found on its Cloud Platform), it sufficiently disclosed a theory of infringement involving **any other** QWeb component that may involve the use of XML and/or parse tree creation even if unrelated to the Qualys API functionality. The Local Rules require more granularity than this, as discussed. The sole paragraph Finjan cites to support this argument merely includes an opinion from Medvidovic discussing the Qualys API. Nowhere does Finjan point to anything tying the Qualys API to the plethora of various components and functionalities that Medvidovic accuses in his report.

## IV. FINJAN'S CHANGED CLAIM 29 THEORY

Finjan's arguments regarding Claim 29 only further reveal how Finjan is attempting to change its infringement theories. Finjan admits that Claim 29's "computer-readable storage medium" and "accessor" claim elements both incorporate claim element 1(d) (i.e., the "instantiating…" step of Claim 1) by reference. Opposition at 10. As discussed, this "instantiating" step disclosed a theory where the only identified structure was a database found on Qualys's Cloud Platform. *See* Opening Brief (D.I. 158) at 10-11.

Now, Finjan's expert opines that these two elements are practiced by Qualys's Scanner Appliance, a different device. To manufacture support for its expert's new theory, Finjan urges the Court to ignore what it stated in the claim chart and instead incorporate into Claim 29 language from Claim 1 that happens to mention a Scanner Appliance. *Compare* Opposition at 11 *with* Exhibit 5 (D.I. 158-6) at 4. Finjan is essentially asking the Court to rewrite its infringement contentions, because the contentions for the "storage medium" and the "accessor" (or the claim limitations incorporated by reference) clearly reference only the server-side database, not a Scanner Appliance. Tellingly, Finjan's infringement contentions specifically labels the database as the "accessor," and the scanner as a different device:



*Id.* at 43 (yellow arrows annotated). Finjan cannot credibly argue that its Claim 29 claim chart placed Qualys on reasonable notice that Finjan intended to accuse a scanner of practicing the "storage medium" and "accessor" limitations.

### V. FINJAN'S CHANGED "RECEIVING" THEORY

As discussed in Qualys's Opening Brief, Finjan disclosed two theories for the "receiving" limitation that each involved a client device requesting content from a source computer on the Internet. Under Finjan's theory, that content was received by either the Qualys Cloud Platform (Contention 1) or by a scanner dispersed within a customer's network (Contention 2). *See* Exhibit 5 (D.I. 158-6) at 2-3. Medvidovic changed the infringement theory in his expert report, however, and now contends that Scanner Appliances and Virtual Scanners infringe by requesting data from devices within a customer's own network. *See* Opening Brief (D.I. 158) at 12-13.

Finjan argues that Medvidovic's theories were disclosed because the chart supposedly provides a theory where a "receiver" "is a part of a client device" and receives data "before communicating over a network." This is a total fabrication. Finjan's claim chart identifies only three locations for the "receiver": Qualys's Cloud Platform, an "Internet Remote Scanner," or a "QualysGuard Scanner Appliance":



Exhibit 5 (D.I. 158-6) at 2-4. The claim chart refers to a client device as a different component that requests the content the receiver ultimately receives but does not say that these are the same devices. *See id*. Further, each of Finjan's theories disclose that the "receiver" receives the

incoming stream "*from a source computer,* such as the Internet." *Id.* (emphasis added).[7] There is no theory either of a "receiver" being on a client device or of that "receiver" receiving data *before* communicating over a network (and, likewise, there is also no theory in the claim chart of a Scanner Appliance, Virtual Scanner, or Cloud Agent being installed on a client device).

Finjan next argues that neither the claims nor its contentions say the content *must* come from the Internet, but this misses the key point. It is Finjan's burden to disclose its theories as specifically as possible, and the claim chart identifies no other source but the Internet. Finjan also argues that these distinctions do not matter because the claims are agnostic as to where the data is received from. But this overlooks a critical requirement of Patent L.R. 3-1(c). That rule requires Finjan to specify both what the allegedly infringing components are and, critically, *how* they infringe. Indeed, Finjan quibbles over Qualys's use of the word "intercept," but the key point is that Finjan did not disclose any theory in its claim chart where a Scanner Appliance, Virtual Scanner, or Cloud Agent receives content from a client device located on the customer's own network, as Medvidovic now opines. *Compare* Exhibit 5 (D.I. 158-6) at 2-4 *with* Exhibit 1 at ¶¶ 184-197.[8] [9]

## VI.   MEDVIDOVIC'S NEW DATE OF FIRST INFRINGEMENT OPINIONS

In ¶ 21 of his report, Medvidovic offers the specific opinion that "the date of first infringement was no earlier than 2005." Exhibit 1 at ¶ 21. His opinion contradicts Finjan's earlier contentions that the date of first infringement is November 29, 2018. *See* D.I. 100-11 at 11, Ex. 8 at 4. This opinion should be struck as inconsistent with Finjan's contentions.[10]

---

[7] Finjan's argument is further baffling because it does not explain how a configuration where the receiver receives data before communicating over a network can possibly satisfy the claim's requirement of receiving "an incoming stream of program code."

[8] Finjan argues that Virtual Scanners can be installed on a client device, but the cited portions of Medvidovic's report do not support this assertion.

[9] Finjan argues that even if its infringement contentions only disclose receiving content over the Internet, such a limitation is irrelevant as to Qualys's "Vulnerability Features." Also, Finjan curiously contends that Qualys is not seeking to strike any theories regarding the so-called "Vulnerability Features." This is incorrect, as the paragraphs Qualys seeks to strike for this issue specifically include the Vulnerability Features.

[10] Finjan quibbles over the inclusion in this section of additional paragraphs, but as Qualys noted in its Opening Brief, it seeks to strike these additional paragraphs for containing previously
(continued...)

## VII. FINJAN'S DOE THEORIES ARE INADEQUATELY VAGUE

Finjan argues that its DOE theories "set forth a specific theory as to the function-way-result test." Opposition at 14-15. However, Finjan's contentions do little more than recite the bare elements of the test along with the claim language for the "instantiating…" step. They also combine every single accused product into a single cursory contention without identifying any specific component or functionality in any accused product that Finjan contends is insubstantially different from the claimed "instantiating…" step. *See* Exhibit 5, D.I. 158-6 at 13. These contentions fail to place Qualys on notice as to Finjan's theories, and therefore Finjan failed to preserve the theories for use by Medvidovic. Medvidovic's corresponding portions of his report should be struck.

## VIII. FINJAN'S FOREIGN SALES THEORY HAS ALREADY BEEN FOUND IRRELEVANT

Finjan's argument misunderstands the import of Judge Hixson's September 17 Order and the Court's Order overruling Finjan's objections thereto. Specifically, Finjan argues that the Court's September 17 and December 4 Orders "did not remove the subject of 'foreign sales' from the scope of trial." Opposition at 15. This overlooks the fact that Judge Hixson determined that Finjan had ***failed to preserve*** any theory rendering Qualys's foreign sales activity relevant to the case:

> But as matters stand now, Finjan is trying to obtain discovery based on infringement theories that are way outside its infringement contentions, fact discovery is about to close, and Finjan has not even asked Judge Gonzalez Rogers for permission to amend. The undersigned is quite skeptical that Finjan's new infringement theories will ever be in this case.
>
> . . .
>
> Rather, the Court's point is that we are almost at the end of fact discovery, and Finjan seems to have done nothing to make its new infringement theories part of its liability case.

---

undisclosed theories regarding the "dynamic building" step and that are discussed above. *See* Opening Brief at 13. Finjan also attempts to cast aspersions on Qualys's expert's report, but such argument is irrelevant to this issue.

D.I. 105 at 3-4.  In making this ruling, Judge Hixson specifically addressed the same foreign sales theory that it now advances through its experts:

> Finjan has a few back up arguments, but they are makeweights. Finjan argues that Qualys's foreign customers benefit from security updates that Qualys develops from information that it gains in part from the infringing domestic use by its U.S. customers of Qualys's products. That argument is ***irrelevant***, however, because the reasonable royalty compensates for infringement, and Finjan's argument does not demonstrate that the foreign sales are of products that infringe.  Also, Finjan does not even articulate how the value of that "benefit" would be reflected in the foreign sales information it seeks.

*See* D.I. 105 at 4 n. 4 (highlighting and emphasis added); *see also* D.I. 100 at 2-3.  The highlighted portion above specifically concerns the foreign sales theory now offered by Finjan's experts.  In the wake of Judge Hixson's order, which this Court affirmed, Finjan never sought to amend its contentions to articulate an infringement theory based on Qualys's foreign sales.  As such, Finjan's foreign sales infringement theory is subject to the "law of the case" doctrine under which "a court is generally precluded from reconsidering an issue that has already been decided…"  *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  Finjan has not argued that the Court should depart from this ruling.  The mere fact that Judge Hixson's relevance determination was made in the context of a motion to compel does not change its significance.  That Finjan then appealed Judge Hixson's determination to the Court and again lost only further underscores the point.  Finjan has been heard on this issue and did not prevail.  It should not be permitted to sneak these theories back into the case through its experts.

## IX.  CONCLUSION

For the foregoing reasons, the Court should grant Qualys's motion to strike portions of the expert reports of Drs. Nenad Medvidovic, Eric Cole, and DeForest McDuff that exceed the scope of Finjan's Infringement Contentions.  Qualys also wishes to inform the Court that the outcome of this Motion as well as its pending first Motion to Strike (D.I. 126) could have a significant impact on the size and scope of this litigation.  For example, over 81% of the damages sought by Finjan in this case pertain to the '408 Patent, and over 40% of the damages pertain to its alleged foreign sales theory.  Qualys believes resolution of these two motions could materially impact the number of issues for the Court to address through summary judgment and *Daubert* motions.

|   |   |   |
|---|---|---|
|   | | Respectfully submitted, |
|   | | WILSON SONSINI GOODRICH & ROSATI |
| Dated: February 16, 2021 | By: | */s/ Christopher D. Mays* |
|   | | CHRISTOPHER D. MAYS |
|   | | *Counsel for* QUALYS INC. |