EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
TALIN GORDNIA (SBN 274213)
tgordnia@wsgr.com
STEPHANIE CHENG (SBN 319856)
stephanie.cheng@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile:  (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile:  (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC<br><br>Plaintiff,<br><br>v.<br><br>QUALYS INC.,<br><br>Defendant. | CASE NO.: 4:18-cv-07229-YGR (TSH)<br><br>**QUALYS INC.'S LETTER REQUESTING A PRE-FILING CONFERENCE FOR ITS SUMMARY JUDGMENT MOTION**<br><br>**Hon. Yvonne Gonzalez Rogers**<br><br>**Date: March 26, 2021**<br>**Time: 2:00 PM**<br>**Location: Zoom Teleconference[1]** |

---

[1] Per the Court's Notice regarding Civil Law and Motion Calendars and its Order at D.I. 48.

Dear Judge Gonzalez Rogers:

Qualys respectfully submits this letter brief requesting a pre-filing conference regarding Qualys's proposed motion for summary judgment of non-infringement of the asserted patents[2] and for partial summary judgment of certain damages issues. Please find the following summary of Qualys's proposed motion for summary judgment:

### No Infringement of the '408 Patent[3]

Qualys requests leave to move for summary judgment of non-infringement of the asserted claims of the '408 Patent on the following three grounds, any one of which would dispose of the '408 Patent:

**1. There is no genuine factual dispute that Qualys products do not perform the limitation "dynamically building, <u>while</u> said receiving receives the incoming stream…".** Each asserted claim of the '408 Patent requires that a "computer" receive "an incoming stream of program code" and that the computer performs the step of "dynamically building, *while* said receiving receives *the* incoming stream…" There is no dispute that Qualys's scanners do not "dynamically build" *while* receiving the incoming stream. Facing an untenable infringement theory, Finjan's expert witness submitted a report with an entirely new theory. Namely, that the claimed "computer" was actually portions of distinct Qualys scanners as well as portions of Qualys's server architecture. Even if Finjan is permitted to advance a theory of infringement never disclosed in its contentions, summary judgment is still warranted because the claim language is not satisfied by one device dynamically building after receiving a first stream while a totally different device coincidentally receives a *different* stream that is unrelated to the first stream.[4] The claims require dynamically building from the *same* incoming stream of program code as stated in the "receiving" step.

**2. There is no genuine factual dispute that Qualys products do not perform "dynamically building" <u>while</u> "dynamically detecting."** Each asserted claim requires that the "dynamic detecting" step must occur <u>while</u> the "dynamically building" step occurs. Further, because the dynamic detection involves identifying combinations of nodes in a parse tree, this step must also necessarily occur after the parse tree has started being built. It is undisputed, however, that the accused products perform the alleged "detection" and "building" steps in reverse: they first analyze a set of data *and then* build an alleged parse tree based on that analysis. And there is no evidence that these steps overlap or that any detection occurs on a parse tree.

---

[2] The remaining "asserted patents" in this case include U.S. Patent Nos. 6,154,844 ("the '844 Patent"); 7,418,731 ("the '731 Patent"); 8,225,408 ("the '408 Patent"); and 8,677,494 ("the '494 Patent").

[3] Qualys's pending Motions to Strike (D.I. Nos. 126 and 158) each pertain to the patents and/or claim limitations discussed below. Should the Court grant one or both motions in whole or in part, it would likely reduce the number of issues for the Court to address in Qualys's proposed summary judgment motion. Qualys submits it may reduce the overall burden on the Court and the parties if its summary judgment motion were due after the Court resolves these two pending motions.

[4] To the extent the Court permits this theory to proceed, Qualys requests supplemental claim construction on the terms "the incoming stream" and "the computer," as the dispute over these terms was not disclosed to Qualys prior to expert reports.

**3. There is no genuine factual dispute that Qualys products do not indicate "the presence of potential exploits within the incoming stream."** Finjan cannot show that the accused products indicate *potential* exploits, as required by the asserted claims. At most, Finjan's experts have opined that Qualys performs signature-based pattern matching of known vulnerabilities. But Finjan successfully argued to the U.S. Patent & Trademark Office that signature-based pattern matching is outside the scope of the '408 Patent and otherwise lacks the ability to indicate *potential* exploits. Finjan also failed to show that this pattern matching involves identifying potentially malicious code within the incoming stream itself, as the claims require.

### No Infringement of the '844 and '494 Patents

Qualys requests leave to file a motion for summary judgment of non-infringement of the '844 Patent and '494 Patent because there is no evidence that Qualys received "Downloadables," which was construed as "an executable application program, which is downloaded from a source computer and run on the destination computer." Executable applications are neither downloaded nor run on Qualys scanners. Nor has Finjan shown evidence of a "destination computer."

### No Damages for Qualys's Foreign Sales

Qualys seeks leave to file a motion for summary judgment of no damages on Qualys's foreign sales. Foreign sales revenues are excluded from royalty damages absent a predicate act of domestic infringement for each unit sale. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015). Finjan alleges direct and inducing infringement under 35 U.S.C. §§ 271(a) and (b). This requires a predicate act of domestic infringement; namely "making *or* using *or* selling in the United States *or* importing into the United States." *Id.* (emphasis in original). There is not any factual dispute that all of these predicate domestic acts are missing for the Qualys products reflected in the foreign sales revenues. The Court previously held these products are not "made" in the U.S. because they are assembled outside the U.S., and writing or compiling software in the U.S. does not alone show an act of "making" the patented invention. D.I. Nos. 105, 152. Finjan's infringement contentions do not allege any other infringing act and Finjan's only argument—that foreign customers benefit from security updates Qualys develops from information gained by domestic uses of the accused products—is incorrect as a matter of law. *See, e.g., Carnegie Mellon Univ.*, 807 F.3d at 1307 (emphasizing the need to rigorously require the aforementioned predicate acts "given the ease of finding cross-border causal connections."). Finally, Finjan does not have foreign sales evidence for its royalty calculations because it failed to collect this information during discovery. D.I. Nos. 105, 152 (denying motion to compel foreign sales).

### No Damages for the '844 and '494 Patents

Qualys seeks leave to file a motion for summary judgment of no damages for the '844 and '494 Patents. Because Finjan's licensees failed to mark practicing products with the '844 and '494 patents, Finjan was required to provide Qualys with actual notice of infringement. *See* 35 U.S.C. § 287(a); *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) ("To serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer."). Finjan's alleged notice to Qualys in November 2015 was not sufficiently specific as it merely noted that Qualys may have "exposure" to unidentified claims in a laundry list of patents. The '844 and '494 patents then expired in January 2017. Finjan did

not file this action until November 2018. Finjan's insufficient notice, therefore, precludes recovery of any damages for alleged infringement. *Chrimar Systems Inc. v. Ruckus Wireless, Inc.*, C 6-00186 SI, 2020 WL 4431787, at *6 (N.D. Cal. July 31, 2020) (granting summary judgment based on insufficient notice).

### No Willful Infringement for the '731 and '408 Patents

Qualys requests leave to file a motion for summary judgment of no willful infringement for the '731 and '408 Patents. Willful infringement requires pre-suit knowledge of the asserted patents. *See, e.g., Finjan, Inc. v. Juniper Networks, Inc.*, No. C 17-05659 WHA, 2018 WL 905909, at *3 (N.D. Cal. Feb. 14, 2018) (dismissing Finjan's willful infringement claim for failing to allege that defendant "had pre-suit knowledge of the patents-in-suit"). Here, however, it is undisputed that Finjan provided no pre-suit letter or other notice to Qualys pertaining to the '731 or '408 patents. Nor has Finjan adduced any other evidence that Qualys knew of the '731 or '408 patents before this lawsuit.

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated: March 17, 2021     By:   /s/ Ryan R. Smith
                                Ryan R. Smith

*Counsel for*
QUALYS INC.