Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
Megan A. Chacon (CA SBN 304912)
chacon@fr.com
K. Nicole Williams (CA SBN 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070 /Fax: (858) 678-5099

Robert P. Courtney (CA SBN 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Phone: (612) 335-5070 /Fax: (612) 288-9696

Proshanto Mukherji (*pro hac vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax (617) 542-8906

Aamir A. Kazi (*Pro hac vice*)
kazi@fr.com
Lawrence R. Jarvis (*Pro hac vice*)
jarvis@fr.com
Fish and Richardson P.C.
1180 Peachtree Street Ne 21st Floor
Atlanta, GA 30309
Phone: (404) 879-7238/ Fax: 404-892-5002

**Attorneys for Plaintiff**
**FINJAN, LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| FINJAN, LLC, a Delaware Limited Liability Company, <br><br> Plaintiff, <br> v. <br> QUALYS INC., a Delaware Corporation, <br><br> Defendant. | Case No. 4:18-cv-07229-YGR (TSH) <br><br> **LETTER TO THE HONORABLE YVONNE GONZALEZ ROGERS FROM FINJAN LLC REGARDING QUALYS INC.'S LETTER REQUESTING A PRE-FILING CONFERENCE FOR ITS SUMMARY JUDGMENT MOTION** |

**FISH.**
FISH & RICHARDSON

Fish & Richardson P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130

858 678 5070 main
858 678 5099 fax

**Jason W. Wolff**
Principal
wolff@fr.com
858 678 4719  direct

1   March 22, 2021

2   *VIA CM/ECF*

3   The Honorable Yvonne Gonzalez Rogers
    United States District Court
4   for the Northern District of California
    1301 Clay Street
5   Oakland, CA 94612

6
    Re:    *Finjan LLC v. Qualys Inc.*,
7           CAND Case No. 4:18-cv-07229-YGR

8   Dear Judge Gonzalez Rogers:

9
    Plaintiff Finjan LLC ("Finjan") respectfully submits this letter brief in response to Qualys Inc.'s
10  Letter Requesting a Pre-Filing Conference for its Summary Judgment Motion as filed with the
    court on March 17, 2021 (Dkt. 172).

11
    **Liability—'408 Patent.** The relevant limitations of the '408 Patent describe how a system scans
12  content (such as a website), builds a "parse tree" based on that scan (including, for example, the
    content that has been scanned), and then detects issues in what it has scanned (such as potential
13  malware). Qualys asks the Court to resolve factual disputes relating to these limitations.

14
    For the "dynamically building" a parse tree "while said receiving receives the incoming stream"
15  limitation, Finjan's expert (Dr. Medvidovic) analyzed source code, Qualys documentation, and
    deposition testimony to identify a parse tree structure (here, scan results stored in XML, or
16  alternatively, the data that is used to create that XML) that is built *during* a scan.[1] E.g., Med. Rep.
    ¶¶ 276-283; 296-299. Qualys's expert disagrees, stating that the data structure is built *after* the
17  incoming stream is scanned. Qualys's expert (Dr. Rubin) cites no evidence to support his
    conclusion, but even if he did, this is a classic dispute of fact—and not appropriate for summary
18  judgment. Rubin Tr. 211:2-24 (when asked if he could point to any "source code or technical
    documentation to corroborate" his opinion, identifying only "[deposition] transcripts of the
19  engineers, as well my conversations with them.")

20
    Qualys's argument for the "dynamically detecting" limitation is similarly flawed. Although
21  Qualys now says that the accused products do not perform "detection" *while* "building" a data
    structure from the scan results, the evidence shows otherwise. Med. Rep. ¶ 303 (emphasizing the
22  "real time" nature of Qualys's products). In fact, Qualys's documentation states that crawling (i.e.,
23

24  ────────────────
    [1] Qualys incorrectly states that Finjan did not timely disclose its infringement theory. Finjan
25  disclosed all of its infringement theories. *See generaly* Finjan Opp. re Qualys Mtn to Strike (ECF
    No. 163-3). Undercutting Qualys's argument is the fact that its own expert analyzed Finjan's
26  contentions and expert report and identified only two places where he contended that Finjan's
    expert opined on theories not disclosed in Finjan's contentions—neither of which is at issue for
27  this limitation. Rubin Tr. 200:14-205:19 (as an example: "[Q] But at least upon the analysis you
    conducted in preparing your report, you didn't identify any other theories, correct, that were
28  outside of Finjan's infringement contentions, and in Dr. Medvidovic's report? A. I don't recall any
    other than the two that I pointed out in my report.").



The Honorable Yvonne Gonzalez Rogers
March 22, 2021

scanning, which results in the claimed "building") and testing (i.e., the claimed "detecting") occur in parallel: "As compared to the other levels, more crawling and testing requests are run in parallel and the delay between requests sent to the web application is shorter." Med. Rep. ¶ 319 (citing Scan Bandwidth (Web Application Scan) [QUALYS00534616].). On this record, there is at least a dispute of material fact and Qualys's argument and motion is futile.

Finally, Qualys's last argument for the '408 Patent appears to be the following: (1) those of skill in the art make a categorical distinction between vulnerabilities in code and an "indicator" of a "potential exploit"; and (2) Qualys's products identify the former and not the latter. For one thing, even Qualys's expert disagrees with Qualys's premise, referring to the two as "intertwined" and stating that "[i]n some respects, the only difference between a code quality problem and a vulnerability to a malicious virus is the intent of the person who creates or exploits the problem." Decl. of Dr. Rubin, Ex. 1002 to IPR2016-0967 ¶¶ 103-104. Additionally, both sides' experts cited actions that the Qualys products take to identify potential exploits. *See* Med. Rep. ¶ 237 ("Forty-five percent of the vulnerabilities tracked are designated the highest level of severity by their vendors in terms of potential destruction, complexity, and liability to customers' networks. Attacks that exploit vulnerabilities at these levels allow intruders to easily gain control of the host, which may lead to compromising security of the entire network"); *e.g.,* Rubin Reb. at 1072 (identifying the "exploitability" of a particular vulnerability and the specific types of exploits, such as malware, that take advantage of those exploits). Qualys now appears to disagree with these facts, but the Court cannot resolve this disagreement at summary judgment.

**Liability—'844 and '494 Patents.** Qualys ignores ample evidence of "Downloadables" and a "destination computer" in the accused product. To the extent Qualys is arguing that what Finjan's expert has identified with respect to each limitation is a limitation, that is squarely a dispute of fact. Dr. Cole gives a clear example of a Downloadable: "For something to be a downloadable, if we go back to the Court's claim construction, it's an executable application program which is downloaded from a source computer and run on a destination [computer]. So if the clients are accessing a server, and they're downloading it, it becomes a downloadable." Cole Tr. at 67:18-24. And Dr. Cole identifies numerous types of files in his report that qualify as Downloadables in the Qualys system. *See, e.g.*, Cole Rep. at ¶ 421 (Internet Explorer), ¶ 433 (Cross-Site Scripting (XSS)), ¶ 652 (SQL Injections), and ¶ 405 (Windows TCP/IP Remote Code Execution and Denial of Service). That Qualys's expert disagrees that these are Downloadables is insufficient for summary judgment. Qualys's argument that executable applications are not downloaded or run on Qualys scanners misses the mark, because there is no requirement in the claims that this occurs: "when the [Qualys] scanner connects to the asset it's scanning, when it makes that request, that request is that act of receiving that downloadable to perform the analysis." Cole Tr. at 128:9-18. As to the destination computer, Finjan's expert opines that it "would be any of the clients that would be accessing that server typically after a vulnerability scan is performed." *Id.* at 68:9-18. Again, that Qualys's expert disagrees (*see, e.g.*, Stubblebine Reb. at ¶ 159) is insufficient for summary judgment.

**Damages—Foreign Sales.** The portion of Qualys' letter regarding overseas sales is a redux of its motion to strike (D.I. 158), and the Court should reject it for the reasons in Finjan's opposition brief (D.I. 164). Qualys also fails to recognize that there is, at the least, a material fact question about the manner in which Qualys' *domestic* infringement—particularly in view of expert

Finjan Admin Mot to File Under Seal
Case No. 4:18-cv-07229-YGR (TSH)



The Honorable Yvonne Gonzalez Rogers
March 22, 2021

opinions from Drs. Cole and Medvidovic that domestic infringements which populate "Qualys' 'Knowledge Base' of security issues and vulnerabilities" with "new vulnerability signatures" are necessary for Qualys' products to have value anywhere in the world, including overseas. The Federal Circuit has held that where domestic infringement is the cause of overseas sales, as it is here, it is "irrelevant" that some of the sales are to foreign customers. *R.R. Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1519 (Fed. Cir. 1984) (holding that where domestic infringement made the overseas sales possible, "[w]hether the [goods] were sold in the U.S. or elsewhere is . . . irrelevant, and no error occurred in including [overseas sales]" in the royalty base). Qualys' statement that there is "not any factual dispute that all of these predicate domestic acts are missing" is incorrect, at least because both Dr. Cole and Dr. Medvidovic expressly identified the predicate domestic acts, and showed how they lead to overseas sales. The Court should not permit Qualys' to seek summary judgment where such fact issues exist.

**Damages—'844 and '494 Patents.**  Qualys' attack on pre-expiration notice of infringement contravenes the record and the law. Finjan wrote to Qualys on November 12, 2015, claiming infringement and inviting Qualys to take a license. Finjan wrote, "[W]e believe one or more of Finjan's patents reads on Qualys' Cloud Platform. We believe[,] however, a licensing arrangement can be reached."  (D.I. 1-23)  It attached a table identifying which Finjan patents read on which Qualys products, which identified Qualys' "Vulnerability Management" product as infringing both the '844 and '494 Patents.  (*Id.* at 9.) The Federal Circuit has held this is all § 287 requires. "To serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer. The letter must ***communicate a charge of infringement of specific patents by a specific product or group of products.***" *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) (emphasis added). Indeed, the infringement notice in *Funai*—the only controlling authority in Qualys' letter brief—read simply "We confirmed Your [specific products] that was infringed [*sic*] at least our patents as follows: [list of six U.S. patent numbers]." *Id.* at 1372–73. The law requires no more; Qualys is unable to argue otherwise. *See also Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994) (actual notice requires only "affirmative communication of a specific charge of infringement by a specific accused product"); 7 Chisum on Patents § 20.03[7][c][iv] (2020 ed.) ("[T]he notice need not contain a detailed statement or an explication of the patent owner's theory concerning infringement."). Because pre-suit notice for the '844 and '494 Patents amply satisfied the requirements of § 287, including under the sole controlling authority Qualys cites, the Court should not permit Qualys to move for summary judgment.

**Willfulness—'731 and '408 Patents.** Qualys errs when it states that there was no pre-suit notice to Qualys pertaining to these patents. On September 12, 2018 (i.e., before the complaint) , Finjan had a virtual meeting with Qualys to discuss Qualys' infringement, attended by Qualys General Counsel Bruce Posey. At that meeting, Qualys presented a slide deck identifying Qualys' infringement of both the '408 Patent and the '731 Patent. Because Qualys' sole basis for seeking leave to move for summary judgment is its assertion that it is "undisputed that Finjan provided no pre-suit notice letter or other notice to Qualys pertaining to the '731 and '408 patents," Ltr. 3, and because that assertion is demonstrably incorrect, the Court should not permit Qualys to move for summary judgment on this issue.

Finjan Admin Mot to File Under Seal
Case No. 4:18-cv-07229-YGR (TSH)



The Honorable Yvonne Gonzalez Rogers
March 22, 2021

Respectfully Submitted,

*/s/ Jason W. Wolff*

Jason W. Wolff

cc:  All Counsel of Record (via email)

Finjan Admin Mot to File Under Seal
Case No. 4:18-cv-07229-YGR (TSH)



The Honorable Yvonne Gonzalez Rogers
March 22, 2021

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 7, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail and regular mail.

*/s/ Jason W. Wolff*
Jason W. Wolff