EDWARD G. POPLAWSKI (SBN 113590)
epoplawski@wsgr.com
OLIVIA M. KIM (SBN 228382)
okim@wsgr.com
TALIN GORDNIA (SBN 274213)
tgordnia@wsgr.com
STEPHANIE C. CHENG (SBN 319856)
stephanie.cheng@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
Facsimile: (866) 974-7329

RYAN R. SMITH (SBN 229323)
rsmith@wsgr.com
CHRISTOPHER D. MAYS (SBN 266510)
cmays@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 493-6811

*Attorneys for Defendant*
QUALYS INC.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| FINJAN LLC | CASE NO.:  4:18-cv-07229-YGR (TSH) |
| Plaintiff, | **DEFENDANT QUALYS INC.'S RENEWED MOTION TO STRIKE PORTIONS OF PLAINTIFF FINJAN LLC'S INFRINGEMENT EXPERT REPORTS** |
| v. | |
| QUALYS INC., | |
| Defendant. | **Judge: Hon. Yvonne Gonzalez Rogers** |
| | **Date: Tuesday, June 8, 2021** |
| | **Time: 2:00pm** |
| | **Location: Zoom Teleconference[1]** |

[1] Per the Court's Notice regarding Civil Law and Motion Calendars and its Order at D.I. 48.

1

**NOTICE OF MOTION AND MOTION**

2        PLEASE TAKE NOTICE that on Tuesday, June 8, 2021 at 2:00pm or as soon thereafter

3   as this matter may be heard before Judge Gonzalez Rogers of the United States District Court for

4   the Northern District of California via Zoom video conference and/or in Courtroom 1, 4th Floor,

5   of 1301 Clay Street in Oakland, California (per the Court's March 12, 2020 Order (D.I. 48) and its

6   Notice regarding Civil Law and Motion Calendars), defendant Qualys Inc. ("Qualys") will and

7   hereby does renew its motion to strike portions of plaintiff Finjan LLC's ("Finjan") expert report

8   of Dr. Nenad Medvidovic.

9

**STATEMENT OF ISSUES AND RELIEF REQUESTED**

10        Qualys seeks an order striking portions of the "Expert Report of Nenad Medvidovic, Ph.D."

11   ("Medvidovic Report") Medvidovic's expert report proffers a theory for the '408 Patent's

12   "receiving an incoming stream of program code" that is entirely different from the theory Finjan

13   disclosed in its Local Patent Rule Contentions.  This is Qualys's second motion on this subject; on

14   April 5, 2021, the Court issued an Order (D.I. 188) granting in part and denying in part Finjan's

15   motion.  With respect to the issue of the "receiving" limitation, the Court denied Qualys's motion

16   "without prejudice to renewal should Qualys demonstrate that vulnerability scanning is not 'based'

17   on requests for content by the client device."  D.I. 188 at 7.  Qualys now renews that part of its

18   motion to make the showing requested by the Court.[2]

19        Qualys therefore requests that the Court strike Paragraphs 184-185 (to the extent discussing

20   the vulnerability scan theory of infringement) and 186-196 of the Medvidovic Report.[3]

21

22

23

24

25

26

27        [2] Qualys incorporates by reference the parties' prior briefing on this issue.  *See* D.I. 156-4 at 12-13; D.I. 163-3 at 12-13; and D.I. 166 at 7-8.

28        [3] Citations to "Ex. XX" or "Exhibit XX" refer to the exhibits to the Declaration of Christopher D. Mays, filed concurrently with this Motion.

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.     INTRODUCTION**

3        In denying without prejudice Qualys's first Motion to Strike Portions of Plaintiff Finjan

4    LLC's Infringement and Damages Expert Reports, D.I. 156-4 ("1st MTS"), the Court noted that

5    Finjan's infringement contentions disclosed a single theory for the '408 Patent's "receiving…"

6    limitation. *See* D.I. 188 at 7.  Namely, that receipt of an incoming stream of program code is based

7    on a client device's request for content.  *See id.*  Qualys now renews its motion to strike because

8    the vulnerability scans accused in Dr. Medvidovic's expert report are **<u>not</u>** based on client devices'

9    requests for content.

10       Finjan's expert (Dr. Medvidovic) offers no opinion in his report that any vulnerability scan

11   occurs based on any client device requesting content.  Dr. Medvidovic's report (and documents he

12   cites) shows that vulnerability scans happen "constantly," "continuously," and "automatically."

13   Indeed, Dr. Medvidovic acknowledges that it is Qualys's ***scanners*** (not client devices) that make

14   content requests during a scan and that Qualys's Cloud Agents (which are alternatives to a scanner

15   for collecting scan data) collect and send data to the Qualys Cloud Platform for a vulnerability

16   scan without ever being prompted to do so.  Thus, there is no credible dispute that Medvidovic's

17   infringement theory has no relationship to any client device making a request for content.

18   Accordingly, Qualys requests that its renewed Motion be granted.

19   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

20       For the sake of brevity, Qualys incorporates the factual and procedural background from

21   its 1st MTS.  *See* D.I. 156-4 at 2-4.  The 1st MTS argued, *inter alia*, that Dr. Medvidovic offered

22   a different theory of infringement for an element of the asserted claims of the '408 Patent (namely,

23   the "receiving . . . an incoming stream of program code" element)[4] than was disclosed in Finjan's

24   April 19, 2019 Patent L.R. 3-1 infringement contentions.  *See id.* at 12-13.

25       On April 5, 2021, the Court issued an Order on Qualys's 1st MTS.  *See* D.I. 188.  Regarding

26   the Receiving limitation, the Court stated that it "cannot determine that the features described by

27

28   ————————————————

     [4] Qualys will hereafter refer to this as the "Receiving" limitation.

Dr. Medvidovic do not involve a client device requesting content from any source computer." *Id.*
at 7. The Court denied the 1st MTS on this issue but granted leave to renew the motion "should
Qualys demonstrate that vulnerability scanning is not 'based' on requests for content by the client
device." Qualys therefore renews that portion of its 1st MTS relating to the Receiving limitation
to demonstrate, as discussed below, how Dr. Medvidovic's opinions do not involve vulnerability
scans "based" on requests for content by a client device.

## III.    ARGUMENT

### A.    Client Devices are End User Devices that Request Content.

Dr. Medvidovic himself provided a "technology background" explaining the meaning of
"client devices" and "content requests." *See* Ex. 13 ("Medvidovic Report") at ¶¶ 44-72.[5] As he
stated,

> When users want to communicate with a website, they may run an application
> program, such as Google Chrome, Safari or Internet Explorer on their
> computing devices, which could be a laptop, desktop, smartphone, tablet, or
> other device.

Ex. 13 at ¶ 45. Dr. Medvidovic referred to a web browser as an example of a client (specifically,
a "web client."). *See id.* at ¶ 48; *see also id.* at ¶ 55 (referring to a "client computer" as the computer
that "sends a request to a server computer to initiate a handshake procedure"). Dr. Medvidovic
explained how a web client requests content by sending a "request" message to a server and
thereafter receiving a "response" message containing that content. *See id.* at ¶¶ 45-48. He also
explained that while other devices (such as gateways) may act as intermediaries that facilitate the
sending and receiving of such messages/content, the client device remains the "endpoint of the
communication" with the server. *See id.* at ¶ 49. Dr. Medvidovic's discussion of "client devices"
is consistent with the Court's June 11, 2020 Claim Construction Order, which construed the term
"web client" for U.S. Patent No. 6,154,844 (a related patent to the '408 Patent) to mean "an
application on the end-user's computer that requests a downloadable from the web server." *See*
D.I. 74 at 20.

---

[5] Although Qualys previously included an excerpt from Dr. Medvidovic's Report in its 1st
MTS, that excerpt did not include certain pages discussed in this renewed Motion. Accordingly,
Qualys submits a new excerpt of Dr. Medvidovic's report with all relevant pages for the Court's
convenience.

Thus, a "client device" refers to an application on some end-user's device and a "content request" refers to a request by that client for some content on a network resource such as a server. But as shown below, vulnerability scanning in the accused products do not involve client devices making such content requests, nor does Dr. Medvidovic offer an opinion to the contrary.

### B.    Dr. Medvidovic's New Infringement Theories Do Not Involve Vulnerability Scanning Based on A Client Device's Content Request.

As articulated in its Infringement Contentions, Finjan's theory requires that a "client device" request content from a source computer and then, based on that request, either the Qualys Cloud or the Appliance Scanners receives that content as part of an incoming stream of computer code before the content is eventually provided to the "client device." *See* D.I. 158-6, Exhibit 5, at 2-4; D.I. 188 at 7.  However, Dr. Medvidovic offers no opinion that any of the accused products perform a vulnerability scan "based on" a client device's request for content.

Rather, his infringement theory is that vulnerability scans occur *independently* from client devices.  As Dr. Medvidovic explains, Qualys's products:  "*constantly collect[]*, assess[] and correlates asset and vulnerability information across customers' cloud instances, on-premises systems and mobile endpoints…"  Ex. 13 at ¶ 90 (*citing* Ex. 14, QUALYS00275578); *see also id.* at ¶ 116.  Constant collection implies an automated operation, not scanning that occurs only based on a client content request.  Indeed, Qualys's documents describe how Qualys's products gather data "automatically," "continuously," and (at least for Cloud Agents) without the need to "schedule" scans.  Ex. 15, QUALYS00112182 at 112183; Ex. 14, QUALYS00275578 at 275585 ("Our easy-to-deploy appliances and lightweight agents automatically beam up to the Qualys Cloud Platform the security and compliance data they're constantly gathering from customers' IT environments) and 275589 (Cloud Agents "work in real-time without the need to schedule scan windows"); Ex. 18 at 62:3-17.  Thus, the product configurations Medvidovic accuses operate "automatically" and "continuously" to collect data, which is inconsistent with the original theory that scans are based on a client device's content request.

Further underscoring that Dr. Medvidovic offers no opinion that any vulnerability scanning occurs based on a client device's request for content, his report shows that vulnerability scans are performed based on *configurations* – such as what devices to scan, which scanners to use for the

scan, and how frequently to perform the scan.  *See* Ex. 13 at ¶ 188 (quoting Qualys engineer testimony that "the scanner engine talks to a system in the customer's network, ***whichever the customer designated to be scanned***, and performs network transactions on it. It basically sends requests and receives responses back.").  This is likewise confirmed in documents describing the operation of the products.  *See* Ex. 16, FINJAN-QUALYS 419612 at 419634-635 (describing how to initiate a vulnerability scan by choosing one or more scan targets ("IPs") and one or more scanners) and 419640 (describing how to set frequency of scans); Ex. 18 at 62:3-17 ("you set up your scheduled scans in the UI.  And then those scans happen periodically, depending on how you have set it up."); Ex. 18 at 62:25-63:6 ("[Y]ou can go in and you can schedule scans.  That's what it does.  And then depending on how you schedule the scans, those scans get triggered, and the scanner does the scanning fand sends the data back up to the platform.").[6]

The Medvidovic Report's discussion of how the accused scanners and Cloud Agents operate further show that his infringement opinions are not based on a client device requesting content.  For example, Dr. Medvidovic opines that for vulnerability scans using Qualys's scanner engine (i.e., the software within the Scanner Appliance and Virtual Scanner that performs vulnerability scanning) the ***scanner itself***—not a client device—makes the content requests.  *See* Ex. 13 at ¶ 186 (stating that the scanner engine "performs various network transactions and collects data from responses to those transactions."); *id.* at ¶ 188 (opining that the scanner engine collects data "by ***initiating a network transaction***, and receiving a response to that transaction."); *id.* (quoting Qualys engineer testimony that the scanner engine "sends requests and receives responses back."); *id.* at ¶ 190 (describing a "CGI check" scan wherein the scanner engine "send[s] a request to a web service, waiting for a response, and interpreting that response.").[7]

Similarly, the Medvidovic Report shows that vulnerability scans involving a Cloud Agent are not based on a client device requesting content because a Cloud Agent is a piece of software

---

[6] Moreover, as discussed in more detail below, vulnerability scanning using Cloud Agents is fully automated and does not even require scheduling by a customer.

[7] Nor would the scanners themselves be properly considered a "client device" as that term is used in the Medvidovic Report, the industry, the Court's Claim Construction Order, as discussed above.

installed on an end-user's computer, but does not receive, send, or process requests for content. *See id.* at ¶¶ 98, 100, 112; Ex. 18 at 62:3-17.  For example, as stated in the Medvidovic Report (and confirmed in Qualys's technical documents and its engineers' deposition testimony), a Cloud Agent simply monitors the files, software, and configuration data of the computer on which it is installed, and then sends metadata about what it sees to the Qualys's Cloud Platform.  *See* Ex. 13 at ¶ 100, 112; *see also* Ex. 17, FINJAN-QUALYS 042509 at 042513 (cloud agents "continuously collect[] metadata); Ex. 15, QUALYS00112182 at 112183 (cloud agents collect information without needing to schedule scans); Ex. 18, Bachwani Dep. Tr. at 62:21-63:11 ("you don't have to schedule the scans because the cloud agent is just collecting the data, sending it up).  This uploading of metadata to the Cloud Platform occurs ***automatically*** whenever the Cloud Agent detects new or changed information (called "delta uploads") to the Cloud Platform, and not based on any request a client device makes for content.  *See* Ex. 17 FINJAN-QUALYS 042509 at 042525 ("The first assessment scan in the cloud takes some time, after that scans complete as soon as new host metadata is uploaded to the platform . . . scans run instantly on the delta uploads (a few kilobytes each).").

Thus, regardless of whether the vulnerability scan uses a scanner or a Cloud Agent, Dr. Medvidovic abandoned the theory from Finjan's infringement Contentions. He now improperly contends that Qualys infringes based on vulnerability scans occurring independent from a client device's request .

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Qualys's motion to strike the opinions of Dr. Nenad Medvidovic regarding the Receiving limitation for vulnerability scans (Paragraphs 184-185 (to the extent discussing vulnerability scans) and 186-196) as being a different theory from the one disclosed in Finjan's infringement contentions.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI

Dated:  May 4, 2021                By:    */s/ Christopher D. Mays*
                                          CHRISTOPHER D. MAYS

                                          *Counsel for*
                                          QUALYS INC.