Juanita R. Brooks (CA SBN 75934)
brooks@fr.com
Roger A. Denning (CA SBN 228998)
denning@fr.com
Jason W. Wolff (CA SBN 215819)
wolff@fr.com
Megan A. Chacon (CA SBN 304912)
chacon@fr.com
K. Nicole Williams (CA SBN 291900)
nwilliams@fr.com
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA 92130
Phone: (858) 678-5070 /Fax: (858) 678-5099

Aamir A. Kazi (*pro hac vice*)
kazi@fr.com
Lawrence R. Jarvis (*pro hac vice*)
jarvis@fr.com
Fish and Richardson P.C.
1180 Peachtree Street Ne 21st Floor
Atlanta, GA 30309
Phone: (404) 879-7238/ Fax: 404-892-5002

Philip W. Goter (*pro hac vice*)
goter@fr.com
Robert P. Courtney (CA SBN 248392)
courtney@fr.com
FISH & RICHARDSON P.C.
3200 RBC Plaza
60 South 6th Street
Minneapolis, MN 55402
Phone: (612) 335-5070 /Fax: (612) 288-9696

Proshanto Mukherji (*pro hac vice*)
mukherji@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Phone: (617) 542-5070/ Fax (617) 542-8906

**Attorneys for Plaintiff
FINJAN LLC**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(OAKLAND DIVISION)

| | |
|---|---|
| FINJAN LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>QUALYS INC., a Delaware Corporation,<br><br>Defendant. | Case No. 4:18-cv-07229-YGR (TSH)<br><br>**FINJAN LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO QUALYS INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>**[REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL]**<br><br>DATE:   July 6, 2021<br>TIME:   2:00 P.M.<br>JUDGE:   Hon. Yvonne Gonzalez Rogers<br>PLACE:   Zoom |

**TABLE OF CONTENTS**

I.   REPLY IN SUPPORT OF FINJAN'S SUMMARY JUDGMENT MOTION ................... 1

    A.   Qualys Has Not Shown that DSAVT Is Authentic or Was Publicly Accessible ...... 1

        1.   Qualys has not shown DSAVT is authentic ................................................. 1

        2.   Qualys has not shown DSAVT was publicly accessible ............................ 2

    B.   Qualys Has Not Shown Mounji and Thomson Are Authentic and Were Publicly
Accessible ........................................................................................................................ 4

        1.   Qualys has not shown Mounji and Thomson are authentic ........................ 4

        2.   Qualys has not shown Mounji and Thomson were publicly accessible ........ 5

        3.   The untimely Stubblebine Declaration does not cure these deficiencies ...... 5

II.   OPPOSITION TO QUALYS'S MOTIONS FOR SUMMARY JUDGMENT ................... 6

    A.   Summary Judgment of Noninfringement for the '408 Patent Is Not Appropriate.... 6

        1.   Qualys's "same computer" argument fails legally ..................................... 7

            a)   The '408 Patent does not expressly require that all claimed steps be
performed by the same computer ..................................................... 7

            b)   Collateral estoppel from the *SonicWall* case does not apply ................ 7

        2.   Qualys's "same computer" argument fails factually ................................. 9

        3.   Qualys's accused products indicate "potential exploits" ...........................11

            a)   Qualys's claim construction argument is untimely and wrong.............11

            b)   Qualys infringes even under its interpretation of "indicators of potential
exploits" ............................................................................................12

        4.   Qualys's accused products "dynamically build" while receiving the
incoming stream ...........................................................................................13

    B.   Summary Judgment is Not Appropriate for the '844 and '494 Patents .................16

        1.   Qualys manipulates the Court's claim constructions.................................16

        2.   Collateral estoppel does not apply ...........................................................18

        3.   Qualys ignores Dr. Cole's opinions and the accused products ..................18

        4.   Disputes of material fact exist between the experts...................................20

II.   OPPOSITION TO QUALYS'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF
NO DAMAGES For the '844 and '494 patents ...............................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Eng'g Corp. v. Bartell Indus.*,
   299 F.3d 1336 (Fed. Cir. 2002) ..........................................................................................7

*Amdocs (Isr.), Ltd. v. Openet Telecom, Inc.*,
   761 F.3d 1329 (Fed. Cir. 2014) ........................................................................................15

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 12-CV-00630-LHK, 2014 WL 252045 (N.D. Cal. Jan. 21, 2014) ................. 12, 18, 21, 22

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
   No. 16-CV-00923-BLF, 2017 WL 6102804 (N.D. Cal. Oct. 10, 2017)....................................8

*Bettcher Indus., Inc. v. Bunzl USA, Inc*.,
   661 F.3d 629 (Fed. Cir. 2011) ..........................................................................................11

*In re Bill of Lading Transms'n & Procs'g Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ...................................................................................22, 23

*Chrimar Systems v. Ruckus Wireless, Inc.*,
   No. 16-cv-00186-SI, 2020 U.S. Dist. LEXIS 136656 (N.D. Cal. July 31, 2020) ...................23

*CNET Networks, Inc. v. Etilize, Inc*.,
   584 F. Supp. 2d 1260 (N.D. Cal. 2008) ...............................................................................2

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009) ........................................................................................12

*Foster v. Adams & Assocs., Inc.*,
   No. 18-CV-02723-JSC, 2020 WL 3639648 (N.D. Cal. July 6, 2020) ......................................1

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
   No. C. 03-1431, 2006 WL 1330001, at *3 (N.D. Cal. May 15, 2006) ......................................2

*Fujifilm Corp. v. Motorola Mobility*,
   2015 WL 757575 (N.D. Cal. Feb. 20, 2015)........................................................................20

*Funai Elec. Co. v. Daewoo Elecs. Corp*.,
   616 F.3d 1357 (Fed. Cir. 2010) ................................................................................6, 22, 23

*Gart v. Logitech, Inc.*,
   254 F.3d 1334 (Fed. Cir. 2001) ........................................................................................22

*IMS Tech., Inc. v. Haas Automation, Inc.*,
   206 F.3d 1422 (Fed. Cir. 2000) .....................................................................................6, 11

*Jackson Jordan, Inc. v. Plasser Am. Corp.*,
   747 F.2d 1567 (Fed. Cir. 1984) ....................................................................................18

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005) .....................................................................................7

*Massachusetts Inst. of Tech. v. Shire Pharms., Inc.*,
   839 F.3d 1111 (Fed. Cir. 2016) ...................................................................................12

*Minks v. Polaris Industries, Inc.*,
   546 F.3d 1364 (Fed. Cir. 2008) ...............................................................................6, 22

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) ...................................................................................23

*Omegaflex, Inc. v. Parker-Hannifin Corp.*,
   243 F. App'x 592 (Fed. Cir. 2007) ................................................................................7

*Ralston Purina Co. v. Far-Mar-Co., Inc.*,
   772 F.2d 1570 (Fed. Cir. 1985) ...................................................................................22

*SRI Int'l v. Internet Sec. Sys.*,
   511 F.3d 1186 (Fed. Cir. 2008) ............................................................................2, 3, 23

*SRI International, Inc. v. Advanced Technology Laboratories, Inc.*,
   127 F.3d 1462 (Fed. Cir. 1997) ...................................................................................23

*STV Asia Ltd. v. PRN Corp.*,
   No. C06-1664 JCS, 2007 WL 521236 (N.D. Cal. Feb. 15, 2007) ...............................18

*TecSec, Inc. v. Int'l Bus. Machines Corp.*,
   731 F.3d 1336 (Fed. Cir. 2013) ...................................................................................18

*Trivascular, Inc. v. Samuels*,
   812 F.3d 1056 (Fed. Cir. 2016) ...................................................................................12

**Statutes**

35 U.S.C. § 112 ¶ 6 ...............................................................................................16, 17

35 U.S.C. § 287 .............................................................................................6, 21, 22, 23

**Other Authorities**

7 Chisum on Patents § 20.03[7][c][iv] (2020 ed.) .......................................................23

Fed. R. Civ. P. 26 ............................................................................................................3

Fed. R. Civ. P. 26(a)(2) ...................................................................................................1

Fed. R. Civ. P. 56(c)(4) ...................................................................................................4

Fed. R. Evid. 703.................................................................................................................................4

# I.     REPLY IN SUPPORT OF FINJAN'S SUMMARY JUDGMENT MOTION

In a tacit admission that it did not timely meet its burden to establish the authenticity and public availability of three prior art references for Qualys's affirmative defenses and counterclaims of invalidity of the '494 and '731 Patents, Qualys has attempted to supplement the record with untimely documents and supplemental reports of two of its paid experts, Dr. Hall-Ellis and Dr. Stubblebine.  These reports are a violation of Fed. R. Civ. P. 26(a)(2), and the reports and untimely documents violate the scheduling order too.  D.I. 78.  They should be stricken or disregarded.  And even if the Court permits the untimely reports and unauthenticated documents and finds the three references are authentic, which Finjan opposes, Qualys still has not come forward with authenticated, corroborating evidence that establishes the references were publicly accessible before the filing of the patents.  Dr. Hall-Ellis's new testimony contradicts her prior sworn testimony on DSAVT and thus cannot generate a fact dispute.  *See Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2020 WL 3639648, at *1 (N.D. Cal. July 6, 2020) ("Under the sham affidavit rule, a 'party cannot create an issue of fact by an affidavit contradicting . . . prior deposition testimony.'").  Moreover, it is nothing but speculation for Dr. Hall-Ellis to say that the MARC record for a reference she has not reviewed is the same as for the reference on which she opined.  Further, that the other two references (Mounji and Thomson) can *now* be found on websites that did not exist *at the time of filing the patents* does not establish that the references were published, indexed, and discoverable in 1997.  We are no closer to knowing exactly when and where the references were published *and indexed in a form that was discoverable to the public* than when Finjan filed its motion.  For these reasons, the reasons below, and those in Finjan's opening brief, Finjan respectfully requests the Court grant its motion.

## A.     Qualys Has Not Shown that DSAVT Is Authentic or Was Publicly Accessible

### 1.     Qualys has not shown DSAVT is authentic

Qualys's first assertion is the DSAVT reference used here is the same as the electronic copy Qualys's litigation counsel, and Dr. Hall-Ellis, obtained from counsel in another other case.

D.I. 195 (Mot.) at p. 20; D.I. 195-3 (Hall-Ellis Decl.) at ¶ 7, *see also* Finjan Fact[1] 1.  This opinion is not in Dr. Hall-Ellis's timely report, and in deposition she testified she had not seen actual book. As such, it is a new opinion that contradicts her deposition testimony.[2]  This "chain of custody" argument, at best, relates back to whatever Qualys's litigation counsel obtained from a different law firm in another case.  That it came from "a law firm representing a defendant" in another case (D.I. 195 (Mot.) at p. 20:20-21) is not a hearsay exception.  The cited Mays Decl. (D.I. 195-5 at ¶ 2), by Qualys's litigation counsel, does not say where Juniper obtained DSAVT so the chain of custody is broken.  No admissible evidence establishes from whom or where DSAVT was originally obtained.  This contrasts with the *Fresenius* case cited by Qualys, where the author of the document testified about its date and authenticity.  *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. C. 03-1431 SBA, 2006 WL 1330001, at *3 (N.D. Cal. May 15, 2006) ("In fact, the PRSM Specification was authenticated by its author, Mr. Ragsdale, during his deposition.").  No witness with personal knowledge has been identified here, and no admissible evidence corroborates the date.  Finjan Fact 1.  As a matter of law, Qualys should not be permitted to delinquently rely on its paid expert with no personal knowledge and no corroborating evidence to testify about the authenticity or date of DSAVT.  *CNET Networks, Inc. v. Etilize, Inc.*, 584 F. Supp. 2d 1260, 1272–73 (N.D. Cal. 2008) ("corroboration is generally required for testimony that is asserted to invalidate a patent.").

## 2.    Qualys has not shown DSAVT was publicly accessible

Not only has Qualys failed to authenticate the DSAVT reference, it has failed to come forward with corroborating evidence to show it was publicly accessible.  *See* Finjan Fact 2.  To establish a document was publicly accessible, Qualys must establish the reference was "disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it."  *SRI Int'l v.*

---

[1] The citation to "Finjan Fact" in the Reply is to Finjan's Response to Qualys's Responsive Separate Statement of Undisputed Material Facts, which is filed herewith.

[2] *See* D.I. 195-43 (Mays Ex. 38, Hall-Ellis Tr.) at 50:5-24 ("A. I told you, I have not seen the book because I cannot get my hands on the book. Q. The British version? A. Any version . . . I can't tell you what they look like. I haven't seen them in person.").

*Internet Sec. Sys.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008).  In *SRI*, a paper by the inventors was placed on a server on the Internet and a link to the paper was sent to a group of reviewers.  *Id.* at 1195.  The "paper was not indexed or catalogued in any meaningful way to enable a person of ordinary skill to locate the paper."  *Id.*  The court held that, while the paper was on the Internet, it was not "publicly accessible."

While all but admitting the alleged corroborating evidence, the MARC record, is not the record for the DSAVT reference relied upon by Dr. Stubblebine, Dr. Hall-Ellis untimely opines, without any personal knowledge or corroborating evidence, that a foreign publication of another version of the DSAVT is substantively the same as the one she opined on.[3]

This is too little, too late.  Dr. Hall-Ellis swore under oath that the MARC record was the record for DSAVT, and that very document was "received, cataloged, and indexed at the Merck, Sharp & Dohme Research Laboratory Library" no later than April 3, 1996.  D.I. 195-39 (Hall-Ellis Rpt.) at ¶ 59.  Yet the cover page, number of pages of the preface (20 vs. 32 pages), and text (222 vs. 208 pages) of DSAVT *do not match* the MARC record.  D.I. 192 (Mot.) at p. 5:7-22; D.I. 192-2 (Hall-Ellis Tr.) at 47:13-49:4.  Dr. Hall-Ellis speculates the document "received, cataloged, and indexed" at the New Jersey library is a U.K. version (D.I. 195-3 (Hall-Ellis Decl.) at ¶ 17), and she then sums the preface and text pages together to show only one page difference and chalks up the difference to paper size (D.I. 195-3 at ¶ 16).  The problem with this speculation is the preface *grew* by 12 pages in the MARC record, while the text pages *shrank* by 14.  Clearly, this is not the same document.  Further, Dr. Hall-Ellis contradicts her prior sworn testimony that the book was "received, cataloged, and indexed" at the library in New Jersey (D.I. 195-39 at ¶¶ 57, 59) with the suggestion that the MARC record is actually from a publication in the U.K.  (D.I. 195-3 at 4:9-12).  Because Qualys did not produce the alleged U.K. version of DSAVT for the MARC record relied upon by Dr. Hall-Ellis, it cannot corroborate her testimony.  *See* Finjan Fact 3.

Lastly, Qualys injects untimely opinions from Dr. Stubblebine too.  Dr. Stubblebine is not identified in Qualys's Fed. R. Civ. P. 26 disclosures as a fact or expert witness on the topics upon

---

[3] Dr. Hall-Ellis admitted she had not seen the document corresponding to the MARC record.  D.I. 195-43 (Mays Ex. 38, Hall-Ellis Tr.) at 50:5-24 (". . . I haven't seen them in person.")

which he now opines, and his timely report offered no such opinion.  To buttress the untimely Stubblebine opinions, more unauthenticated documents are offered from Qualys's litigation counsel in the form of Exhibits 5 (D.I. 195-10) and 28 (D.I. 195-33).  This too is improper.  *See* Fed. R. Civ. P. 56(c)(4) (a declaration must be made on personal knowledge).  Nevertheless, Dr. Stubblebine's opinion does not establish the version of DSAVT he relied upon was publicly accessible.  After the close of fact and expert discovery, Dr. Stubblebine apparently located documents on the Internet (how or at whose direction he does not specify), reviewed a page with information pertaining to the wrong version of DSAVT, and leaps to the conclusion that since he found what he asserts is a later version of DSAVT on the Internet, the earlier version must have been publicly accessible at some earlier time.  D.I. 195-4 (Stubblebine Decl.) at ¶ 4.  *Daubert* issues aside, Qualys is attempting to use its paid expert as a conduit to publish hearsay from one unauthenticated and uncorroborated document to another on a core issue: public accessibility. Qualys cannot use its experts as an end-run around authenticity or corroboration.  Fed. R. Evid. 703.  Finjan requests that the Court strike or disregard the untimely Stubblebine opinions and unauthenticated Mays Exhibits 5 (D.I. 195-10) and 28 (D.I. 195-33).

**B.**    **Qualys Has Not Shown Mounji and Thomson Are Authentic and Were Publicly Accessible**

**1.**    **Qualys has not shown Mounji and Thomson are authentic**

Qualys offered Dr. Hall-Ellis's testimony from her timely report to authenticate Mounji and Thomson.  But that testimony simply confirmed the documents she downloaded from the Internet are the copies produced in the litigation, and repeats that opinion in her untimely report. This circular and uncorroborated confirmation that a downloaded document is the same as what was produced in the litigation does not make it authentic.  Her untimely report does not support their authenticity or the availability of a hearsay exception, nor does it excuse Qualys's failure to corroborate this testimony with admissible evidence from the authors, publishers, or custodians. *See* Finjan Fact 4.

1

     **2.**     **Qualys has not shown Mounji and Thomson were publicly accessible**

2

     That Mounji and Thomson were recently downloaded from a third-party source does not

3

establish or corroborate that they are authentic or were publicly accessible before November 6,

4

1997. *See* Finjan Facts 5-9. Dr. Hall-Ellis's untimely report attempts to bolster the credibility of

5

the post-1997 third party sources, but conspicuously absent is any evidence as to *when* and *where*

6

Mounji and Thomson were *indexed and publicly accessible* by 1997. *See* D.I. 195-3 at ¶¶ 23-25.

7

This is because "these [] repositories were not created for the sole purpose of indexing references

8

and providing dispositive dates for when a reference was published." *Id.* at ¶ 21.

9

     **3.**     **The untimely Stubblebine Declaration does not cure these deficiencies**

10

     As requested above, Dr. Stubblebine's untimely report on the authenticity and public

11

availability of Thomson should be stricken or disregarded, as should Mays Exhibit 35, which is

12

another unauthenticated, untimely document. But even if the Court does not strike or disregard

13

these materials, it is still insufficient for Qualys to corroborate the authenticity and public

14

availability of Thomson.[4] Omitted from Dr. Stubblebine's untimely opinions is that there is no

15

Thomson paper at the alleged link. Dr. Stubblebine says nothing of the nature and reach of the

16

symposium, who was invited to attend, or whether the papers listed were indexed and searchable

17

in 1997. He cannot say because the unauthenticated documents do not say, and he has not

18

demonstrated any personal knowledge of any of these documents or facts.

19

20

21

22

23

24

25

26

27

---

28

[4] The untimely Stubblebine report does not mention Mounji.

FINJAN REPLY ISO MSJ AND
OPPOSITION TO CROSS-MSJ
Case No. 4:18-cv-07229-YGR (TSH)

## II.     OPPOSITION TO QUALYS'S MOTIONS FOR SUMMARY JUDGMENT[5]

### A.     Summary Judgment of Noninfringement for the '408 Patent Is Not Appropriate[6]

For each of the contested limitations for the '408 Patent, Finjan's expert Dr. Medvidovic set forth a reasoned analysis that is supported by facts in the record, including (1) evidence that a single Qualys " ████████ " satisfies the "computer" limitations in the '408 Patent; (2) evidence that Qualys searches for "potential exploits" and indicators of those exploits (such as ████ ████████████████████████ ); and (3) evidence that Qualys's system receives data and immediately stores it in an in-memory structure that satisfies a "parse tree."  Qualys's motion does little to address this evidence, and there is nothing in the record indicating why the evidence Finjan relies upon is irrelevant or inaccurate.  Indeed, Qualys's expert submitted a rebuttal report that disagreed with the conclusions of Finjan's expert—but without anything to substantiate his conclusion other than off-the-record "conversations" with Qualys's engineers and attorneys.  While Qualys is free to dispute the conclusions drawn from this evidence at trial, at summary judgment all facts and inferences must be construed in the light most favorable to the non-movant.  *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000); *see also*

---

[5] Qualys called its motions "cross-motions."  They are not cross-motions because they do not cross Finjan's motion for summary judgment on the same legal issues.  Finjan has moved for leave for additional pages.  If the Court declines to grant it, it may disregard the additional pages in this brief and it is respectfully noted that Finjan opposes Qualys's motions concerning the '844 and '494 Patents based on Finjan's response to Qualys's Separate Statement of Fact.  Finjan also notes the law on notice for damages, where Qualys is incorrect.  Per the Federal Circuit, "Letters that specifically identify a product and offer a license for that product do constitute actual notice."  *Minks v. Polaris Industries, Inc*., 546 F.3d 1364, 1376 (Fed. Cir. 2008).  The only "detail" required by § 287 is detail sufficient to "support an objective understanding that the recipient may be an infringer" and to identify the "specific product or group of products" at issue.  *Funai Elec. Co. v. Daewoo Elecs. Corp*., 616 F.3d 1357, 1373 (Fed. Cir. 2010).

[6] In a footnote, Qualys states that if the Court grants Qualys's "renewed" motion to strike, summary judgment is appropriate for an additional reason.  Even if the Court grants Qualys's "renewed" motion in its entirety, Qualys did not move to strike Finjan's Web Application Scanning theories.  *See* D.I. 194 at p. 5 (seeking to strike "[p]aragraphs 184-185 (to the extent discussing vulnerability scans) and 186-196," but not seeking to strike other paragraphs, such as those relating to Web Application Scanning).  Thus, if Qualys were to somehow prevail on its motion to strike, Finjan disagrees that any further summary judgment would be appropriate.

*Omegaflex, Inc. v. Parker-Hannifin Corp.*, 243 F. App'x 592, 595 (Fed. Cir. 2007).  Because Qualys's entire argument is effectively that its own expert disagrees with the conclusions of Finjan's expert, the Court should deny Qualys's motion.

**1.     Qualys's "same computer" argument fails legally**

Not all of the asserted claims require that the accused functionality be performed by a single computer.  *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (disfavoring importing non-recited limitations into the claims).

**a)     The '408 Patent does not expressly require that all claimed steps be performed by the same computer**

The premise for Qualys's argument is that "[e]ach asserted claim of the '408 patent . . . requires that all claimed steps be performed by or located within the *same* computer."  D.I. 195 (Mot.) at p. 3.  Qualys is simply wrong.  Claim 1 is the only asserted claim that includes "computer" in every limitation.  That is not the case for the remaining asserted claims (22, 23, 35).  Claim 22 refers to a "computer" *only in the preamble*, and the parties agree the preamble is not limiting.  *See* Add'l Facts 31-32[7]; D.I. 195-6 ('408 Pat.) at cl. 22; Exh. 8 (Medvidovic Op.) ¶ 368 ("preamble is not limiting"); Exh. 9 (Rubin Op.) ¶ 261 (Qualys's expert opining that the "preamble is generally not limiting"); *see Allen Eng'g Corp. v. Bartell Indus.,* 299 F.3d 1336, 1346 (Fed. Cir. 2002) ("Generally, the preamble does not limit the claims.").  Claim 23 requires that "a computer" receives information, but it does not require that all subsequent limitations are performed by that same "computer."  *See* Add'l Fact 33; D.I. 195-6 ('408 Pat.) at cl. 23.  And Claim 35 requires a "computer" in only one limitation.  *See* Add'l Fact 34; *Id* at cl. 35.  For this reason, Qualys's "single computer" argument at best applies only to claim 1, and should be denied out of hand for the other claims.

**b)     Collateral estoppel from the *SonicWall* case does not apply**

Rather than focus on the claim language, Qualys cites to the SonicWall case and argues that Finjan is "collaterally estopped from disputing that the '408 Patent must be performed by the

---

[7] The citation to "Fact" or "Add'l Fact" in the Opposition are to Finjan's Responsive Separate Statement of Undisputed Material Facts, and the citation to "Exh" are to the Declaration of Jason W. Wolff ISO, filed herewith.

7

1   same computer." D.I. 195 (Mot.) at p. 4. However, the SonicWall case involved different issues

2   (different asserted claims and different products), and thus, collateral estoppel does not apply.

3        For collateral estoppel to apply, "four conditions must be met: '(1) the issue at stake was

4   identical in both proceedings; (2) the issue was actually litigated and decided in the prior

5   proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was

6   necessary to decide the merits.'" *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 16-CV-00923-BLF,

7   2017 WL 6102804, at *11 (N.D. Cal. Oct. 10, 2017) (*quoting Oyeniran v. Holder*, 672 F.3d 800,

8   806 (9th Cir. 2012)). There are several differences between the SonicWall case and this one, the

9   most relevant of which is that the claims are different across the two cases. Claims 23 and 35,

10  which are asserted here, were ***not*** at issue in SonicWall. *See* Add'l Fact 35; D.I. 195-16 (Ex. 11,

11  Order Granting in Part and Denying In Part Defendant's Motion For Partial Summary Judgment,

12  No. 17-cv-04467-BLF, D.I. 420 (Mar. 5, 2021)) at pp. 19-20. And whileclaims 1 and 22 were at

13  issue in SonicWall, the parties' argument and the Court's rationale was based only on the

14  language in claim 1. *See generally Id*. at 18-24 (not addressing the differences in claims 1 and

15  22); Exh. 10 (Redacted Version of Finjan's Opp. to SonicWall's Mot. for Partial Summary

16  Judgment, No. 17-cv-04467-BLF, D.I. 327-3 (Dec. 21, 2020) at pp. 9-11 (not addressing the

17  differences in claims 1 and 22); Exh. 11 (Redacted Version of SonicWall's Mot. for Partial

18  Summary Judgment, No. 17-cv-04467-BLF, D.I. 320 (Dec. 2, 2020) at pp. 13-16 (not addressing

19  the differences in claims 1 and 22). Neither the parties nor the SonicWall court addressed any

20  claim interpretation issues for claim 22. *Id*. And none of claims 22, 23, or 35 use the phrase

21  "computer" in every limitation similar to claim 1 such that the SonicWall court's interpretation of

22  claim 1 would be applicable.

23        Thus, whether claims 22, 23 and 35 require all steps to be performed by a single

24  "computer" is a new issue–it is not "identical" to the issue in SonicWall. Claim interpretation of

25  those claims was not "actually litigated" and there was no "full and fair opportunity" to litigate

26  that issue. And the interpretation of those claims was not "necessary to decide the merits"

27  (particularly for claims that were not even asserted). Collateral estoppel does not apply.

28

1

## 2.     Qualys's "same computer" argument fails factually

2       Even if estoppel from SonicWall were to apply, it would be of no consequence here

3  because the record evidence indicates that a single device in the Qualys Cloud Platform can

4  infringe the claims of the '408 patent.  *See, e.g.*, Exh. 8 (Medvidovic Op.) ¶¶ 158-161; *see also*

5  Add'l Fact 36.  Dr. Medvidovic opines that, for each of the limitations requiring specific

6  functionality be found in or performed by a "computer" (which would include all of the limitations

7  from claim 1 and limitations (c), (d), and (g) from claim 23),the accused functionality can be

8  found in the ███████████ of the Qualys Cloud Platform and cites exemplary evidence

9  supporting that conclusion.  *See id.* (Medvidovic Op.) ¶ 186 (opining that limitation 1[b] is

10  satisfied because the ██████████████████████████████████████

11  ██████████████████████), ¶¶ 187-189 (including more specific factual analysis of the

12  ███████████████ for limitation 1[b]); ¶ 209 (opining that limitation 1[c] is satisfied because the

13  █████████████████████████████████████); ¶¶ 210-213 (including

14  more specific factual analysis of the ███████████ for limitation 1[c]); ¶ 221 (opining that

15  limitation 1[d] is satisfied by the ██████████); ¶¶ 222-234 (including more specific factual

16  analysis of the ██████████ for limitation 1[d]); ¶ 255 (opining that limitation 1[e] is satisfied

17  by the ██████████████████████████ indicative of an

18  exploit); ¶¶ 256-257 (including more specific factual analysis of the ████████████); ¶ 275

19  (opining that limitation 1[f] is satisfied by the scanner engine); ¶¶ 276-283 (including more

20  specific factual analysis of the ███████████ for limitation 1[f]); ¶ 304 (opining that limitation

21  1[g] is satisfied by the ██████████); ¶¶ 305-310 (including more specific factual analysis of

22  the ██████████ for limitation 1[g]); ¶ 333 (opining that limitation 1[h] is satisfied by the

23  ██████████); ¶¶ 331-332 (citing facts as to how ██████████████████ satisfies

24  limitation 1[h]).

25       The ████████████████████████████████████

26  ██████████ is a single component in the Qualys Cloud Platform.  Indeed, Qualys's engineers refer to

27  the ████████████████████████████████—which is a single device in a network.

28  *See, e.g.,* Exh. 8 (Medvidovic Op.) ¶¶ 99 (referring generally to the functionality of the "scanning

1  engine"); ¶¶ 101-102 (similar); ¶ 162 (similar).  Qualys's documentation even touts the

2  efficiencies of the accused functionality being part of a "single" system.  *See, e.g.*, Exh. 12,

3  QUALYS00355723 at 726 ("Qualys helps organizations streamline and consolidate their security

4  and compliance solutions in a *single platform*."); Exh. 13, QUALYS00606865 ("Discover, assess,

5  prioritize, and patch critical vulnerabilities in real time and across your global hybrid-IT landscape

6  - all from a *single solution*."), *id.* at 866 ("*A single cloud platform* saves organizations save

7  significant resources and the time otherwise required to install multiple agents and consoles[.]"):

8  *see also* Facts 37-39.  Finjan submits that the cited evidence and analysis discloses the relevant

9  functionality at a "computer."

10        At the very least, Finjan's allegations raise a fact issues for the jury to decide.  Exh. 14

11  (Rubin Tr.) 115:24-116:9 (". . . a computer is a device with the ability to take input and output and

12  perform computations.").Indeed, it is Qualys was has *no evidence* supporting its position that the

13  accused functionality is found on different computers in its motion, and it is Qualys's expert who

14  was unable to identify any contrary evidence when asked.  Exh. 14 (Rubin Tr.) 117:4-119:14

15  (identifying ¶ 264 as his opinion related to the "single computer" issue); 187:1-188:3 (unable to

16  identify any evidence supporting his conclusions).

17        Instead, Qualys's argument is based on a misstatement of Finjan's infringement

18  allegations.  Finjan identified three separate aspects of the Qualys Cloud Platform and explained

19  how each, on its own, infringes the claims.  Exh. 8 (Medvidovic Op.) ¶ 159 (identifying three

20  separate theories of infringement); Exh. 15 (Rubin Reb.) ¶ 264 (Qualys's expert acknowledging

21  Finjan's three separate theories); *see also* Add'l Fact 40.  The ███████████ is just one

22  example of Qualys's infringement.  *See* Add'l Fact 41.  For the purpose of its motion, however,

23  Qualys combines Finjan's infringement allegations for the three separate infringing features, as if

24  Finjan had argued that all three were required to show infringement.  D.I. 195 (Mot.) at pp. 3:17-

25  19, 5:2-5 (citing summary paragraphs 185, 262, and 302).  Thus, while it is true that Dr.

26  Medvidovic identifies different aspects of the Qualys system as the claimed "computer," that is

27  because he is identifying three different ways (a different "computer" for each separately accused

28

1    feature) that Qualys products infringe claim 1.  Dr. Medvidovic is *not* opining they are collectively

2    a single computer.

3           Qualys's citations to Dr. Medvidovic's testimony are similarly flawed.  The testimony

4    Qualys cites are about Qualys's offerings generally.  While Dr. Medvidovic testifies consistently

5    that the accused functions collectively were occurring on a Qualys computer (as opposed to a

6    customer owned computer, which appeared to be a disputed issue in the deposition), he was never

7    asked about the implementation of any specific accused functionality.

8           In sum, there are genuine issues of material fact in the record indicating that Qualys's

9    Cloud Platform satisfies the asserted claims, even if the Court holds that all steps of the claim

10   must be performed by one computer.  Those fact disputes should be decided by the jury, and

11   summary judgment is not appropriate.  *See IMS Tech., Inc.*, 206 F.3d at 1429.

12                    **3.      Qualys's accused products indicate "potential exploits"**

13          The claims require detecting "indicators of potential exploits . . ." (or "indicating the

14   presence of potential exploits" in claim 22).  D.I. 195-6 ('408 Patent) at cls. 1, 22, 23 and 35.  This

15   phrase was not construed by the Court, thus the plain and ordinary meaning applies.  And Qualys

16   does not dispute that under the plain and ordinary meaning, Finjan has set forth sufficient evidence

17   to substantiate its infringement allegations.  Instead, Qualys appears to be arguing that "indicators

18   of potential exploits" should have been construed to exclude a signature-based approach, and that

19   Qualys does not infringe under this unidentified construction.  Qualys's belated claim construction

20   argument should be rejected, but even under Qualys's interpretation, the products still infringe.

21                    **a)      Qualys's claim construction argument is untimely and wrong**

22          The basis for Qualys's prosecution history disclaimer argument are statements made by

23   Finjan's experts ***dating back to 2016***.  D.I. 195 (Mot.) at p. 7 (citing Dr. Goodrich's 2017 report in

24   Blue Coat and his 2020 report in Rapid7, and Dr. Medvidovic's 2016 IPR declaration and

25   deposition testimony); *see also* Add'l Fact 42.  The majority of these statements (all except for Dr.

26   Goodrich's report in Rapid7) predate claim construction in this case.  Yet Qualys ***never*** sought to

27   construe the '408 Patent in view of these supposed disclaimers, and even now does not identify

28   what it contends is the proper construction of "indicators of potential exploits."  *See Bettcher*

1  *Indus., Inc. v. Bunzl USA, Inc*., 661 F.3d 629, 640-41 (Fed. Cir. 2011) (holding that party waived

2  opportunity to seek construction for terms not proposed during claim construction process); *see*

3  *also Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *3 (N.D.

4  Cal. Jan. 21, 2014).

5            Even if Qualys did not waive its claim construction argument, Finjan did not disclaim the

6  scope of the phrase "indicators of potential exploits."  "The party seeking to invoke prosecution

7  history disclaimer bears the burden of proving the existence of a 'clear and unmistakable'

8  disclaimer that would have been evident to one skilled in the art."  *Trivascular, Inc. v. Samuels*,

9  812 F.3d 1056, 1063–64 (Fed. Cir. 2016).  None of the statements Qualys identifies satisfies "the

10 high standard for prosecution disclaimer to attach."  *Massachusetts Inst. of Tech. v. Shire Pharms.,*

11 *Inc.*, 839 F.3d 1111, 1120 (Fed. Cir. 2016); *see also Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335,

12 1342 (Fed. Cir. 2009) ("Even if an isolated statement appears to disclaim subject matter, the

13 prosecution history as a whole may demonstrate that the patentee committed no clear and

14 unmistakable disclaimer.").  Dr. Goodrich's statement from Blue Coat and Rapid7 distinguished

15 prior art that searched a database for a list of known viruses.  Dr. Medvidovic's statements are

16 similar.  These statements are simply making the point that searching for a list of ***known*** exploits

17 was not identifying "indicators of ***potential*** exploits."  Thus, even if the cited statements are

18 relevant to prosecution history disclaimer (for example, at least Dr. Goodrich's statements are not

19 part of the '408 Patent intrinsic record and thus, are legally irrelevant to the inquiry), they are not

20 instances of the patentee making a "clear and mistakable" disclaimer.

                  b)       **Qualys infringes even under its interpretation of "indicators of
                          potential exploits"**

21
22            The factual premise for Qualys's motion is that supposedly, "Qualys's Products Perform

23 Only Signature-Based Analysis."  *See, e.g.,* D.I. 195 (Mot.) at p. 9:6-10.  However, the evidence

24 shows the opposite: Qualys's accused products also perform "behavioral analysis" (which is the

25 very thing that Qualys contends Finjan's patents cover after the supposed disclaimer).  *See, e.g.*,

26 Exh. 16 (QUALYS00257792) at 793 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.");  Exh. 17

28

(QUALYS01235879) at 886 ("███████████████████████████████████

███████████████████████████"); Ex. 18 (QUALYS01065909) ("***Behavioral Analysis***

identifies malware based on a web site's behavior. Our service tests the web site's behavior . . ."");

*see also* Add'l Facts 43-45.  To be clear, Finjan believes that the distinction between "behavioral

analysis" and "signature based analysis" is irrelevant to this motion, but it is important to note that

Qualys's admissions undermine the very premise of Qualys's motion.

With respect to the claim language at issue here, the record includes sufficient evidence to

support Finjan's infringement argument.  Finjan's expert analyzed technical documentation and

deposition testimony and explained how that evidence shows infringement.  For example, Qualys

maintains a database of vulnerabilities called ███████.  Ex. 8 (Medvidovic Op.) ¶ 230.  The

information in that database is not limited to identifying *known* exploits, but rather, includes

checks for vulnerabilities that are indicators for *potential* exploits (such as ███████████████

████████████████████.)  *Id.* ¶¶ 231-232.  In fact, Qualys's technical documentation

quantifies these *potential* exploits, calculating an "exploitability" value for each.  Ex. 15 (Rubin

Reb.) at Appendix L (QUALYS-RUBIN1774- QUALYS-RUBIN1778) (identifying the

"exploitability" of a particular vulnerability and the specific types of exploits, such as malware,

that take advantage of those exploits); *see also* Add'l Fact 46.

Thus, there are genuine issues of material fact that preclude summary judgment.

### 4.     Qualys's accused products "dynamically build" while receiving the incoming stream

As Qualys notes, the asserted claims have three relevant steps: (1) "receiving incoming

content," (2) "dynamically building," and (3) "dynamically detecting."[8]  Qualys argues that Finjan

---

[8] Qualys's motion confuses the issue by raising an incorrect and irrelevant claim construction. Qualys argues that these three steps "must overlap," but Qualys's argument is a misreading of the plain language.  D.I. 195 (Mot.) at p. 10.  The claims require temporal overlap between the first and second steps ("receiving incoming content" while "dynamically building") and separately require temporal overlap between the second and third steps ("dynamically building" while "dynamically detecting").  There is no requirement of temporal overlap in the first step ("receiving incoming content") and the third step ("dynamically detecting").  None of the cited statements from the file history or IPR are relevant to this inquiry.  Thus, even though the disputed issues raised in Qualys's motion do not turn on the amount of temporal overlap between the first and third steps, Finjan disagrees with Qualys's recitation of these limitations.

1    has failed to show an overlap between the first two steps ("receiving incoming content" and

2    "dynamically building").  Yet Finjan's expert (Dr. Medvidovic) analyzed source code, Qualys

3    documentation, and deposition testimony to identify a parse tree structure (here, ██████████

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████.  *See generally* Exh. 8 (Medvidovic Op.) ¶¶ 262-266, 275-290, 293-299; *see*

6    *also* Add'l Fact 47.

7            Dr. Medvidovic first cites evidence showing two examples of a parse tree built while data

8    is being received: █████████████████████████████████████████████████████.

9    (*Id.* ¶¶ 279-280.)  The ████████████████████████████████████ by a Qualys

10   scanner.  (*Id.* ¶¶ 276-277.) ██████████████████████████████████████████████

11   ████████████████████████████.  *Id.* ¶¶ 278-279.  Both data structures ██████████

12   ████████████████.  *Id.*  As Qualys's engineer notes, this process of █████████████

13   ██████████████████████████████████████████████

14   █████████████████████████████████████e.  *Id.* ¶¶ 282-283.

15           Qualys's Web Application Scanning uses the same ████████████████████

16   ██████████, and thus the above arguments apply to it.  *See, e.g.*, Exh. 19 (Kruse Tr.) at 8:6-21, 135:5-

17   17; *see also* Exh. 20 (QUALYS02019776) at 9784 (referring to ████████████████).  In addition,

18   Web Application Scanning use "parallelization."  Exh. 8 (Medvidovic Op.) ¶¶ 295-299 (citing

19   additional technical documents and source code relevant to Web Application Scanning).

20   "Parallelization" refers to the process of performing multiple activities, including scanning and

21   analyzing the scan, in parallel.  For example, Qualys's documents state that while a WAS ██████

22   █████████████████████████████████████████  *Id.* ¶¶ 296-297.  As

23   explained by Dr. Medvidovic, ████████████████████████████████████████████

24   ████████████████████████████, it means that the parse tree was built while

25   other data is being received.  *Id.*  Thus, Dr. Medvidovic concludes that the "dynamically building,

26   by the computer while said receiving receives the incoming stream" limitation is satisfied.  Further

27   supporting his opinions, Dr. Medvidovic references screenshots showing that the Qualys product

28

1  reports **partial** scan results, which again is an indicator that the data structure storing the scan

2  results (the parse tree) is built while data is received.  *Id.* ¶ 290.

3       The evidence Finjan relies upon includes technical documents, source code and deposition

4  testimony.  *See, e.g.,* Exh. 8 (Medvidovic Op.) ¶ 284 (citing to technical documents and source

5  code); ¶ 285 (citing the ███████████████████████████); *see also* Add'l Fact 49.  Each

6  item corroborates Finjan's infringement theory, and it is entirely reasonable to conclude

7  infringement from this evidence.  Qualys attempts to discredit the testimony from its engineer as

8  only concerning ██████████ but in both the Qualys products and the '408 Patent, ███████

9  ███████████████████████████.  *Id.* (citing testimony that ███████████████████

10  ███████████████████████████"); D.I. 195-6 ('408 Pat.) at cl.

11  1 (requiring the building of a "parse tree" from incoming data that was parsed); *see also* Add'l

12  Fact 48.  To the extent Qualys now tries to identify some intervening step between "receiving  . .

13  ." data and parsing it, there is nothing in the record evidence substantiating that statement.

14       In fact, although Qualys's expert offers competing conclusions, he was not able to point to

15  any contrary evidence supporting those conclusions other than off the record "conversations" with

16  Qualys engineers.  Exh. 15 (Rubin Reb.) ¶ 263 (Qualys's expert opining on the "dynamically

17  building" limitation), ¶¶ 276-277, 281 (Qualys's expert opining on "parallelization"), ¶ 299

18  (Qualys's expert opining on Qualys's support for "real-time" processing); Exh. 14 (Rubin Tr.)

19  146:14-147:4 (Qualys's expert unable to point to any corroborating evidence to support his

20  conclusions in paragraph 263), 188:5-190:21, 192:14-193:2 (Qualys's expert unable to point to

21  any corroborating evidence to support his conclusions in paragraphs 276-277); 193:3-19.  Even in

22  its motion, not even one of Qualys's purported "undisputed facts" actually goes to how Qualys's

23  products operate.  *See* Facts 10-15.  Qualys's attorney argument asking the Court to interpret

24  disputed factual evidence in the light most favorable to Qualys is improper at the summary

25  judgment stage—and particularly here where there is nothing in the record to support Qualys's

26  interpretation or refute Finjan's.  *Amdocs (Isr.), Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329,

27  1341-43 (Fed. Cir. 2014) (reversing grant of summary judgment of noninfringement after

28

FINJAN REPLY ISO MSJ AND
OPPOSITION TO CROSS-MSJ
Case No. 4:18-cv-07229-YGR (TSH)

1    determining the district court erred by concluding that there was "no evidence" of infringement

2    despite patentee presenting documentary evidence supporting its allegations).

3          **B.      Summary Judgment is Not Appropriate for the '844 and '494 Patents**

4                 **1.      Qualys manipulates the Court's claim constructions**

5          Qualys is correct that the parties agreed at claim construction that the '844 Patent requires

6    that the "inspector" receive an "executable application program, which is downloaded from a

7    source computer and run on the destination computer."  However, contrary to Qualys's framing of

8    the issues (D.I. 195 (Mot.) at p. 14), the construction of "Downloadable" and the requirement of

9    an "inspector" are not the issues upon which it moves for summary judgment.  Rather, the issue is

10   what is and is not "receiving" "an executable application program."  The disputes between the

11   parties' experts as to the evidence surrounding the application of those terms in the infringement

12   theories requires denial of Qualys's motion for summary judgment.

13         Finjan and its expert have faithfully applied the parties' agreed construction of

14   "Downloadable" and the Court's determination that "35 U.S.C. § 112 ¶ 6 does not apply" to the

15   term "receiver."  D.I. 74 at 26.  These patents teach that a "Downloadable is an executable

16   application program, which is downloaded from a source computer and run on the destination

17   computer."  D.I. 195-7 ('844 Pat.) at 1:44-47.  The patent further teaches that "[a] Downloadable

18   is typically requested by an ongoing process such as by an Internet browser or web client."  *Id.* at

19   1:47-49.  "Examples of Downloadables include Java™ applets designed for use in the Java™

20   distributing environment developed by Sun Microsystems, Inc., JavaScript™ scripts also

21   developed by Sun Microsystems, Inc., ActiveX™ controls designed for use in the ActiveX™

22   distributing environment developed by the Microsoft Corporation, and Visual Basic also

23   developed by the Microsoft Corporation.  Downloadables may also include plugins, which add to

24   the functionality of an already existing application program."  *Id.* at 1:49-57.  Thus, the patents

25   describe that an executable application program includes items requested by a web browser or web

26   client and include a variety of scripts and plugins.

27

28

Qualys, on the other hand, has interpreted the parties' agreed construction of "Downloadable" such that it is irreconcilable with the '844 and '494 Patents. And it is that misguided interpretation that is the basis for its motion.

For instance, Qualys's expert, Dr. Stubblebine, has excluded the disclosed and claimed embodiments in his opinions. While Dr. Stubblebine acknowledges that the '844 Patent provides the examples of Downloadables listed above (Java™ applets, JavaScript™ scripts, ActiveX™ controls, and Visual Basic scripts (Exh. 21 (Stubblebine Reb.) at p. 17, fn3), he opines that these examples are not Downloadables because they do not "include the executable application needed to run the content on the computer." *Id.* In other words, the ***web browser*** is the Downloadable that must be received by the inspector according to Qualys: "Under the Court's construction, these example [sic] would also include the executable application needed to run the content on the computer." *Id.* Nowhere do the patents teach that the Downloadable includes the environment in which the Downloadable is to run. Yet, Qualys then uses this flawed interpretation to exclude the disclosed and claimed examples of Downloadables from the agreed construction. Exh. 21 (Stubblebine Reb.) at ¶¶ 54, 229 (JavaScript is not a Downloadable); ¶ 128 (applets are not Downloadables); ¶ 224 (ActiveX is not a Downloadable); ¶¶ 233-234 (VisualBasic script is not a Downloadable). Claiming that, "there's some tension between the agreed construction of 'downloadable' and what's written in the patent," (Exh. 22 (Stubblebine Tr.) at 33:24-34:9), Dr. Stubblebine provides additional misinterpretations. For example, he opines that Downloadables must be "self-contained" and must "perform a function for a user," (Exh. 21 (Stubblebine Reb.) at ¶ 58 ("Examples include email, web browser, and word processing programs.")), and a Downloadable must be executed by an operating system (i.e., not with a web browser), (*id*. at ¶ 69 ("A POSA would not consider HTML to be 'an executable application program' since it cannot be executed by an OS.")).

Similarly, Qualys has adopted its own construction of "receiver" and bases its motion for summary judgment upon it. The Court previously determined that receiver was not a means-plus-function claim in response to Qualys's argument that it was indefinite under § 112 ¶ 6. D.I. 74. However, Qualys never argued for any construction of that term. Add'l Fact 50. Dr. Stubblebine

1  now opines that, "In my view, a POSA would understand 'receiver' to constitute hardware since it

2  is a component of a 'system' claim." Exh. 21 (Stubblebine Reb.) at ¶ 74.  This is unsupported by

3  the patents and it is legally flawed since a system claim can include hardware components,

4  software components, or both.  *E.g.*, *STV Asia Ltd. v. PRN Corp.*, No. C06-1664 JCS, 2007 WL

5  521236, at *10-11 (N.D. Cal. Feb. 15, 2007).

6      Qualys's unilateral reinterpretation of the claims is erroneous, and it pervades Qualys's

7  arguments such that they should be denied for this reason alone.  *See Apple, Inc. v. Samsung*

8  *Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *3 (N.D. Cal. Jan. 21, 2014) ("If

9  [Qualys] wanted to tee up summary judgment positions based on particular constructions, they

10  'could (and should) have sought . . . constructions to those effects.'" (quoting *ePlus, Inc. v.*

11  *Lawson Software, Inc.*, 700 F.3d 509, 520 (Fed. Cir. 2012))).

12          **2.     Collateral estoppel does not apply**

13      Qualys admits that, "[t]he term receiving was not construed but does have a plain and

14  ordinary meaning." D.I. 195 (Mot.) at p. 14.  Yet Qualys argues that Finjan is collaterally

15  estopped from applying any understanding of the plain and ordinary meaning that conflicts with

16  Qualys's, which it defines for the first time in its briefing.  Qualys points to the *SonicWall*

17  summary judgment order in support, but the term "receiving" was not construed there.  *See* Exh.

18  23 (*SonicWall* Joint Claim Construction Statement (5:17-cv-04467-BLF N.D. Cal., D.I. 80));

19  Add'l Fact 51.  Collateral estoppel cannot attach to limit the meaning of an unconstrued term.

20  *TecSec, Inc. v. Int'l Bus. Machines Corp.*, 731 F.3d 1336, 1344 (Fed. Cir. 2013) ("For collateral

21  estoppel to apply to a court's claim construction, the construction 'had to be the reason for the

22  loss,' *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1577 (Fed. Cir. 1984), a

23  conclusion that does not apply here.").

24          **3.     Qualys ignores Dr. Cole's opinions and the accused products**

25      Qualys attempts to avoid Dr. Cole's opinions by focusing on its narrow applications of the

26  terms "receiver," "inspector," "receiving," and the agreed construction of "Downloadable."

27  Qualys oversimplifies and obfuscates the factual issues about what an inspector is and what a

28  receiver is, claiming "

1   ██████████████████████████." D.I. 195 (Mot.) at p. 15.  However, Dr. Cole identifies much

2   more than that in his report.[9]  Qualys also claims that Dr. Cole never describes how, in Qualys's

3   limited view, an "inspector" and "receiver" engage in "receiving" "Downloadables."  *Id.*  In so

4   arguing, Qualys applies yet another definition of "Downloadables, which must be ***executable***

5   ***software applications*,**" (*id.*), and redefines the agreed construction, as described above.

6        In contrast, Dr. Cole applies the plain and ordinary meaning of the terms "inspector,"

7   "receiver," "receiving," and the agreed construction of "Downloadable."  Dr. Cole opines "VM

8   includes an inspector or inspector system (e.g., ██████████████████) whereby Downloadables

9   (e.g., executable application programs scanned by VM in search of vulnerabilities) are received",

10  (Exh. 24 (Cole Op.) at ¶¶ 329, 1199; *id.* at ¶¶ 332, 1202 (CA), ¶¶ 333, 1203 (WAS)) and provides

11  numerous examples of an inspector receiving a Downloadable: "████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████."

14  Exh. 24 (Cole Op.) at ¶ 1232; *see also* ¶¶ 1233-46.  Dr. Cole identifies other types of received

15  Downloadables as well: "back doors, Trojan horses, brute force attacks, CGI, databases, DNS,

16  Bind, e-commerce Applications, FTP, firewalls, general remote services, hardware and network

17  appliances, information/directory services, SMB/Netbios Windows, file sharing, SMTP and Mail

18  applications, SNMP, TCP/IP, web servers, X-Windows."  (*Id.* at ¶ 1245.)

19        Further, Dr. Cole explains how Downloadables are received by Cloud Agents associated

20  with VM: "████████████████████████████████████████████

21  _____

22  [9] For the '844 Patent, summary examples include: "VM includes an inspector or inspector system
    (e.g., VM Scanning Engine)" (Exh. 24 (Cole Op.) at ¶ 329); VM in combination with CM includes

23  an inspector or inspector system "(e.g., ████████████████████████████████████

24  ████████)" (*id.* at ¶ 330); "VM combined with TP includes an inspector or inspector system (e.g.,
    ████████████████████████████████████) (*id.* at ¶ 331); and "VM combined with

25  CA includes an inspector or inspector system (e.g., ████████████████████████████
    ████████████████) (*id.* at ¶ 332); "WAS includes an inspector or inspector system (e.g.,

26  ████████████████████)" (*id.* at ¶ 333).  For the '494 Patent, summary examples include: VM, VM

27  + CM, VM + TP, VM + CA are "systems for managing Downloadables which include a receiver
    (e.g., network interface and corresponding proxy software, VM, Qualys scanner (either external,
    internal, physical or virtual))" (*id.* at ¶¶ 1199-1202); and "WAS is a system for managing

28  Downloadables which includes a receiver (e.g., network interface and corresponding proxy
    software, WAS, Qualys scanner (either external, internal, physical or virtual))" (*id.* at ¶ 1203).

1 ████████████████████████████████████████████

2 █████████████████████████████████████████████████"

Exh. 24 (Cole Op.) at ¶ 361.  Qualys skews Dr. Cole's opinions by citing a cherry-picked snippet

of Dr. Cole's deposition testimony.  D.I. 195 (Mot.) at p. 15.  In fact, Dr. Cole opines that Cloud

Agents receive Downloadables:  "███████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

███████"  Exh. 25 (Cole Tr.) at 133:2-4, 13-14, 22-25 (in full at 132:23-134:15).  And

contrary to Qualys's arguments (Mot. at p. 16), Dr. Cole opines the accused products receive

"incoming" Downloadables in that the Downloadables are received before they are made

available: ████████████████████████████████████████████

████████████████████████████████████████████

██████████████"  Exh. 25 (Cole Tr.) at 91:21-25; 91:3-95:10.

### 4.     Disputes of material fact exist between the experts

Setting aside Qualys's arguments based on never-before-proposed claim constructions, the

record demonstrates vigorous factual disagreements between the experts on the application of the

claims to these facts.  Qualys's posture here resembles that of Motorola in *Fujifilm Corp. v.*

*Motorola Mobility*, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015) (denying summary judgment of

non-infringement on numerous patents).  There, as here, "[t]he bulk of [Qualys's] noninfringement

arguments rest on claim construction positions that were not raised during the claim construction

process in this case."  *Id.* at *4.  And there, as here, the time for claim construction has long past.

*Id.* at *5-6 (district courts "are not obligated to rule on such arguments when raised for the first

time in summary judgment briefs.").  Even though they are untimely, these disputes regarding

plain and ordinary meaning of "receiving"/"receiver" and the interpretation of the agreed

construction of "Downloadable" do not require further construction, and can be resolved by the

jury.  *Id.* at *19 ("In light of the specification's repeated descriptions of the claimed invention . . . ,

a juror could reasonably find that the plain and ordinary meaning of claim 1 reads onto the

1  accused products."); *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL

2  252045, at *5 (N.D. Cal. Jan. 21, 2014) ("[T]he Court will view the parties' disputes through the

3  lens of whether a reasonable jury, armed with the Court's claim construction as to certain terms

4  and an instruction that the plain and ordinary meaning controls as to others, could or would

5  necessarily conclude that the asserted claim reads on an accused device.").  Because Finjan and

6  Qualys offer competing evidence and Finjan offers reasonable interpretations of that evidence,

7  genuine issues of material fact preclude summary judgment.

8  **II.  OPPOSITION TO QUALYS'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO DAMAGES FOR THE '844 AND '494 PATENTS**

9         Qualys's contention that Finjan cannot establish § 287 notice for the '844 and '494 Patents

10 is based on a mistaken

11 interpretation of the law the

12 Court should reject.[10]  The fact

13 record overwhelmingly

14 indicates that Finjan carried its

15 § 287 notice burden, at least

16 via Finjan's 2015 letter to

| Patent Number | Patent Title | Representative Products |
|---|---|---|
| 8,677,494 | Malicious Mobile Code Runtime Monitoring System and Methods | Qualys' Cloud Platform including, but not limited to: • Malware Detection (MD) • Vulnerability Management (VM) solutions. |
| 6,154,844 | System and Method for Attaching a Downloadable Security Profile to a Downloadable | Qualys' Cloud Platform including, but not limited to: • Malware Detection (MD) • Vulnerability Management (VM) solutions. |

17 Qualys raising the '494 and '844 Patents.  Qualys concedes, as it must, the 2015 letter's existence,

18 and that the letter urged, "[S]everal of [Finjan's] patents read on several products offered by

19 Qualys[.]."  D.I. 195 (Mot.) at p. 18; *see also* D.I. 195-38 (Ex. 33, Ltr. to Qualys) at p. 4.  Qualys

20 does not dispute that the 2015 letter contended that Qualys "has exposure" under various Finjan

21 patents, including the '844 and '494 Patents.  D.I. 195-38 (Ex. 33, Ltr to Qualys) at p. 7.  Qualys

22 also concedes that the letter concluded with a table (reproduced above) *specifically identifying* the

23 Qualys products facing exposure under the '844 and '494 Patents.  D.I. 195-38 (Ex. 33, Ltr to

24 Qualys) at p. 9.  As the excerpt shows, the 2015 letter identified "Vulnerability Management"

25 product as creating exposure for Qualys under the '494 and '844 patents.  *Id.*  Though the letter

26

27 [10] Though styled as seeking "partial summary judgment of no damages," Qualys's notice
28 arguments relate only to the '844 and '494 Patents.  The '408 and '731 Patents, which expired substantially later, are unaffected.

FINJAN REPLY ISO MSJ AND
OPPOSITION TO CROSS-MSJ
Case No. 4:18-cv-07229-YGR (TSH)

1   invited Qualys to enter into "good faith licensing discussions," it specifically stated Finjan's

2   willingness to "seek enforcement of our patents through litigation[.]"  *Id.* at 4.

3        Qualys disputes none of these facts.  Its motion is based on a contention that the

4   disclosures above "fail[ed] to provide enough detail" to meet § 287's standard.  D.I. 195 (Mot.) at

5   p. 19.  Qualys's contention, however, is contravened by controlling authority from the Federal

6   Circuit.  The only "detail" required by § 287 is detail sufficient to "support an objective

7   understanding that the recipient may be an infringer" and to identify the "specific product or group

8   of products" at issue.  *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir.

9   2010).

10       Qualys identifies two "details" as purportedly lacking from the 2015 letter, but neither

11  supports summary judgment.  First, Qualys complains that the 2015 letter does not use the term

12  "infringement" *in haec verba*, but instead uses terms like "potential exposure" and invites Qualys

13  to take a license for the affected products.  D.I. 195 (Mot.) at p. 18.  Qualys's suggestion that §

14  287 notice requires use of the word "infringement" is mistaken.  Per the Federal Circuit, "Letters

15  that specifically identify a product and offer a license for that product ***do constitute actual notice***."

16  *Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1376 (Fed. Cir. 2008) (emphasis added); *see also*

17  *Ralston Purina Co. v. Far-Mar-Co., Inc.*, 772 F.2d 1570, 1577 (Fed. Cir. 1985) ("The offering of

18  a license is actual notice.").  The statutory requirement of actual notice "does not mean the

19  patentee must make an 'unqualified charge of infringement.'"  *Gart v. Logitech, Inc.*, 254 F.3d

20  1334, 1345–46 (Fed. Cir. 2001) (internal citation omitted).  There is not, and has never been, a

21  requirement that notice letters use the word "infringement," nor that they take a wholly adversarial

22  approach.  A conciliatory, negotiation-focused approach is sufficient so long as the notice

23  specifically identifies both the patent and the product that purportedly practices that patent, as

24  Finjan's letter does.

25       Second, Qualys suggests that the law requires identification of "specific patent claims

26  [that] are infringed by any specific product."  D.I. 195 (Mot.) at pp. 18-19.  Not so.  The Federal

27  Circuit has repeatedly held that § 287's actual notice requirement is satisfied by notice of a ***patent***,

28  not identification of claims within a patent.  In *Funai Electric Co. v. Daewoo Electronics Corp.*,

1   616 F.3d 1357 (Fed. Cir. 2010), actual notice was established by a letter reading simply, "We

2   believe that your products infringe one or more of the aforementioned our patents [*sic*]," followed

3   by a recitation of patent numbers and two accused products.  616 F.3d at 1372–73.  No

4   identification of specific claims was required.  Notice of patents, but not claims, was also held

5   sufficient in *SRI International, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462,

6   1470 (Fed. Cir. 1997) (holding charge of infringement by "one or more claims" sufficient).  *SRI*

7   noted, "the requirement of actual notice . . . is designed to assure that the recipient knew of the

8   adverse patent"—not specific claims therein—"during the period in which liability accrues[.]"  *Id.*

9   Finjan's letter to Qualys more than satisfied that standard.

10          Though Finjan cited such authority during letter briefing, Qualys's motion ignores all of it,

11  citing instead only the non-binding case *Chrimar Systems v. Ruckus Wireless, Inc.*, No. 16-cv-

12  00186-SI, 2020 U.S. Dist. LEXIS 136656 (N.D. Cal. July 31, 2020).  *Chrimar* is off point.  The

13  notice *Chrimar* held deficient involved "68 patent claims and 98 products."  2020 U.S. Dist.

14  LEXIS 136656, at *20.  Finjan's letter to Qualys charges just two products under two patents, and

15  offers to provide claim charts.  D.I. 195-38 (Ex. 33, Ltr to Qualys) at p. 7.  In any event, no

16  appellate authority adopts *Chrimar*'s rationale that notice standards vary based on the number of

17  accused products and/or the number of claims in the patents cited.  That rationale is irreconcilable

18  with both *Funai* and *SRI*, making it non-controlling here.  *Chrimar* is also incompatible with §

19  287's instruction that the filing of a complaint—which does not "require a plaintiff to plead facts

20  establishing that each element of an asserted claim is met," *see Nalco Co. v. Chem-Mod, LLC*, 883

21  F.3d 1337, 1350 (Fed. Cir. 2018)—establishes notice.[11]  35 U.S.C. § 287.  *Chrimar* also

22  contravenes prevailing authority in other courts.  *See generally* 7 Chisum on Patents

23  § 20.03[7][c][iv] (2020 ed.) ("[N]otice need not contain a detailed statement or an explication of

24  the patent owner's theory concerning infringement." (collecting authority)).  The Court should

25  decline to be guided by *Chrimar*, and should deny Qualys's notice motion.

26

27

28
_____
[11] *See also In re Bill of Lading Transms'n & Procs'g Sys. Patent Litig.*, 681 F.3d 1323, 1335 (Fed. Cir. 2012) ("[A] plaintiff need not even identify [in its Complaint] which claims it asserts are being infringed.").

FINJAN REPLY ISO MSJ AND
OPPOSITION TO CROSS-MSJ
Case No. 4:18-cv-07229-YGR (TSH)

1

2   Dated: June 1, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FISH & RICHARDSON P.C.

/s/ Jason W. Wolff
Jason W. Wolff

Attorneys for Plaintiff
**FINJAN LLC**